**No. 22-15961**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

Donald Trump *et al.*,

*Plaintiffs-Appellants*,

v.

Twitter, Inc., and Jack Dorsey,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:21-cv-08378-JD
Hon. James Donato

_____

**OPENING BRIEF OF APPELLANT NAOMI WOLF**

_____

Scott J. Street (Cal. Bar No. 258962)
JW HOWARD/ATTORNEYS, LTD.
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

*Attorneys for Appellant Naomi Wolf*

## DISCLOSURE STATEMENT

Rule 26.1 of the Federal Rules of Appellate Procedure does not require the filing of a Disclosure Statement here.

Date: November 11, 2022

JW HOWARD/ATTORNEYS, LTD.

*s/ Scott J. Street*
Scott J. Street

*Attorneys for Appellant Naomi Wolf*

i

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………..1

JURISDICTIONAL STATEMENT…………………………………...3

STATUTORY AND CONSTITUTIONAL PROVISIONS………..…..3

ISSUE PRESENTED………………………………………………….3

STATEMENT OF THE CASE………………………………………..3

SUMMARY OF THE ARGUMENT…………………………………7

STANDARD OF REVIEW……………………………………...…..8

ARGUMENT…………………………………………………………9

      A.    The Complaint Alleged Coordination Between Twitter and the
            Federal Government that Could Constitute State Action…………...9

      B.    The Complaint Alleged the Type of Encouragement that Courts
            Have Found to Turn Private Action into State Action………..........16

      C.    The Court Should Reverse the District Court's Order or Issue a
            Limited Remand So It Can Consider Dr. Wolf's Rule 60 Motion…21

CONCLUSION………………………………………………………..23

STATEMENT OF RELATED CASES………………………………….24

CERTIFICATE OF COMPLIANCE……………………………………25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)……………………………..22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………8

*Blum v. Yaretsky*, 457 U.S. 991 (1982)…………………………………………..17

*Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Co.*,

    827 F.2d 1291 (9th Cir.1987)………………………………………………20

*Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909

    (N.D. Cal. 2021)…………………………………………………………..12, 17

*Donald Trump et al. v. YouTube et al.*, No. 1:21-cv-22445 (S.D. Fl.)……………1

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004)……………………...8

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986)………………………………..23

*Federal Agency of News, LLC v. Facebook, Inc.*,

    432 F. Supp. 3d 1107 (N.D. Cal. 2020)…………………………………………13

*Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir. 1982)…………11, 12

*GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.*, No. C 09-5886 SBA,

    2010 WL 1460275 (N.D. Cal. Apr. 7, 2010)………...…………………….22

*Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983)……………………………9-12

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)…………………..20-21

*Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000)………………10, 12, 15, 16

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003)……………………………....…9

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)……………………………9, 19

*Manhattan Cmty. Access Corp. v. Halleck*, -- U.S. --, 139 S. Ct. 1921 (2019)……9

*Mathis v. Pacific Gas & Electric Company*, 891 F.2d 1429 (9th Cir. 1989)….…..17

*Mathis v. Pac. Gas & Elec. Co.*, 975 F.3d 498 (9th Cir, 1996)………………….. 17

*Mendia v. Garcia*, 874 F.3d 1118 (9th Cir. 2017)…………………………………7

*Missouri et al. v. Biden et al.*, No. 3:22-cv-01213-TAD-KDM

(W.D. La. Oct. 21, 2022)……………………………………………………7

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972)……………………………...19

*NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022)…………………...15, 20

*O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022)………………..13-16

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742

(9th Cir. 2020)..........................................................................10, 12, 16, 17

*RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556 (C.D. Cal. 2005)……...21

*Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022)…………………8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)…………………………………………8

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826

(9th Cir. 1999)……………………………………………………18-20, 22

*Turner v. Apple, Inc.*, No. 5:20-CV-07495-EJD, 2022 WL 445755

(N.D. Cal. Feb. 14, 2022)…………………………………………………..22

**<u>Statutes</u>**

Fed. Rule Civ. Proc. Rule 12……………………………………………...…5, 8

**<u>Other</u>**

Article:  Morgan W. Tovey, *Dial-A-Porn and the First Amendment: The State Action Loophole*, 40 Fed. Communications L.J. 267 (1988)………..……………..22

U.S. CONST. amend. I…………………………………………………………….3

# INTRODUCTION

Last month, Louisiana-based federal judge Terry A. Doughty ordered that senior executive branch officials turn over documents and sit for depositions in a case brought by the Louisiana and Missouri Attorneys General. The case is quickly uncovering the federal government's efforts to collude with Big Tech to censor statements about COVID-19 that the government did not want people to hear.

This case involves a similar challenge. It was initiated by former President Donald Trump and, in its earlier stages, focused on Twitter's unprecedented decision to ban the former president from its platform. The case later expanded to include people who were censored and banned from Twitter for saying certain things about COVID-19. The plaintiffs included Dr. Naomi Wolf, a well-known journalist and author who asked questions about the safety of the COVID-19 vaccines, especially for women, and who was subsequently censored and removed from Twitter.

Among its claims, the amended complaint alleged that Twitter violated Appellants' First Amendment rights because government officials worked with, and coerced, Twitter to censor certain statements about certain subjects, including information about COVID-19 that the government did not want people to hear. The amended complaint included detailed allegations, based primarily on public statements, about how Twitter worked with government officials, including the

White House and the Centers for Disease Control, to identify and censor that information. At the pleading stage, those allegations state a claim that Twitter engaged in state action under the close nexus, joint action, and government compulsion tests, three of the tests this Court has recognized to identify when a private party like Twitter can be sued for violating the Constitution.

The District Court found otherwise. In doing so, it violated settled rules of judicial review at the pleading stage. It did not accept the amended complaint's allegations as true and liberally construe them in Appellants' favor to ask whether there was any chance, however remote, the Appellants might prevail. The District Court ignored the detailed allegations about Twitter's partnership with the executive branch. It described the complaint as hinging on statements made by Democratic Party legislators. Those statements focused mainly on the effort to remove Trump from Twitter. They did not relate to the government's efforts to censor dissenting COVID views made by people like Dr. Wolf.

The District Court's failure to address the amended complaint's allegations of coordination—indeed, a partnership—between the executive branch and Twitter is the type of obvious error that justifies summary reversal. That will moot Dr. Wolf's pending Rule 60 motion and allow her to file an amended complaint that includes information about the joint action that led Twitter to censor and ban her from its platform.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered its order dismissing the case on May 6, 2022, and it entered final judgment on June 7, 2022. Excerpts of Record ("ER") 2, 4. [1] Appellants filed their notice of appeal on June 27, 2022. ER 382. The notice was timely filed. Fed. R. App. P. 4(a)(1)(A).

## STATUTORY AND CONSTITUTIONAL PROVISIONS

The First Amendment to the Constitution provides, in relevant part, that "Congress shall make no law … abridging the freedom of speech …."

## ISSUE PRESENTED

Whether, accepting its factual allegations as true and liberally construing the facts in Appellants' favor, the amended complaint stated a plausible claim that Twitter acted in concert with government officials to silence Appellants' speech, thus violating the First Amendment to the United States Constitution.

## STATEMENT OF THE CASE

This case was filed on July 7, 2021, in Florida. The amended complaint was filed on July 7, 2021. ER 325.

---

[1] Dr. Wolf cites to the ER that is being filed by the other Appellants. Although the amended complaint identified Dr. Wolf as a plaintiff for all claims, her primary interest was in the first claim for relief under the First Amendment. Therefore, this brief focuses on that issue. The other Appellants are raising arguments about the other claims. Dr. Wolf joins in those arguments.

The amended complaint alleged four claims, two under Florida law and two under federal law, including the First Amendment claim discussed in this brief. That claim, the first count in the amended complaint, alleged that Twitter violated Appellants' First Amendment rights by working with government officials to silence Appellants for saying things about COVID-19 that the government did not want people to hear. ER 362-365 (¶¶ 168-187). In this vein, the complaint specifically alleged that Twitter had engaged in state action. For example, the complaint alleged that "Defendants' censorship is being done under the authority, oversight, and coercion of the federal government and its officials in cooperation with Twitter and other social media companies and their agents." ER 363 (¶ 176).

This was not an isolated allegation, as earlier parts of the complaint provided context for this allegation of cooperation between Twitter and the executive branch of the federal government. For example, the complaint alleged that "[t]he CDC has publicly stated that it works with 'social media partners,' including Twitter, to 'curb the spread of vaccine misinformation.'" ER 343 (¶ 78). It alleged that "Twitter's censorship (*i.e.*, flagging, censoring, suspending, shadow banning, etc.) of Users who engaged in speech with a different opinion regarding the COVID-19 virus and treatment advanced by Dr. Fauci and the CDC was a coordinated interaction between Defendants and a specific government actor, Dr. Fauci, and Executive Branch agencies, including the Department of Health and Human

Services, the CDC, and the current administration, to constrain free speech." ER 345 (¶ 87). It quoted comments from senior officials like former White House press secretary Jen Psaki about how the executive branch worked directly with Twitter and other social media companies to censor people who said something about COVID that the government disagreed with. ER 346-348 (¶ 96); *see also* ER 348-349 (¶ 97, describing similar comments by Surgeon General).

Despite these detailed allegations, which had to be accepted as true at the pleading stage, Twitter moved to dismiss the case for failure to state a claim under Rule 12(b)(6). Dist. Ct. ECF 138. The Court dismissed the case in its entirety on May 6, 2022. ER 4. Among other things, it concluded that the complaint could not state a First Amendment claim against Twitter because Twitter is a private company and because the District Court did not believe the amended complaint alleged facts sufficient to hold Twitter liable under the joint state action doctrine. The court described the amended complaint as "merely offer[ing] a grab-bag of allegations to the effect that some Democratic members of Congress wanted Mr. Trump, and the views he espoused, to be banned from Twitter because such content and views were contrary to those legislators' preferred points of view." ER 9 (cleaned up). The District Court said these allegations fell far short of "a rule of decision for which the State is responsible." *Id.* (cleaned up).

Appellants declined to file a second amended complaint and instead appealed the District Court's decision. ER 382.

Two months ago, the non-profit legal group America First Legal Foundation ("AFLF") released emails it obtained from the federal government pursuant to a FOIA request. Among them was an email from a CDC official named Carol Crawford to a Twitter employee named Todd O'Boyle. Dist. Ct. ECF 177, at p. 6. In the email, dated May 10, 2021, Ms. Crawford pointed out to Mr. O'Boyle "two issues that we are seeing a great deal of misinfo about—vaccine shedding and microchips. The below are just some example points." *Id.* Her chart listed a tweet from Dr. Wolf about potential adverse effects from the COVID vaccines in women that Twitter subsequently blocked. *Id.* at pp. 6-9. Ms. Crawford copied an official from the Census Bureau and mentioned a "BOLO COVID misinformation meeting" that she said the executive branch was "inviting all tech platforms" to. *Id.* at p. 6.

Additional emails obtained by AFLF refer to these "misinformation" meetings taking place between executive branch officials and social media companies, including Twitter, throughout 2021. Dist. Ct. ECF 177.

This evidence may be part of a pattern. Former *New York Times* reporter Alex Berenson also sued Twitter after it censored his posts and eventually blocked him from the platform. During that lawsuit, he obtained evidence that White House

6

officials, including White House COVID-19 czar Andy Slavitt, explicitly sought to censor and remove him from the social media platforms. *Id.* at pp. 37-40. The Louisiana and Missouri Attorneys General have released similar information in their case, leading the court in that matter to order the oral depositions of Dr. Fauci, White House strategists Rob Flaherty and Andrew Slavitt, former White House press secretary Jennifer Psaki and others, including the Surgeon General. ECF 90, *Missouri et al. v. Biden et al.*, No. 3:22-cv-01213-TAD-KDM (W.D. La. Oct. 21, 2022).

With the newly discovered evidence, Dr. Wolf sought an indicative ruling from the District Court under Rule 60 of the Federal Rules of Civil Procedure. Dist. Ct. ECF 176; *see also Mendia v. Garcia*, 874 F.3d 1118, 1121-22 (9th Cir. 2017) (describing process for seeking such relief during appeal). That motion was filed on August 26, 2022, and has been fully briefed, but the District Court has not ruled on it yet.

## SUMMARY OF THE ARGUMENT

The District Court erred in dismissing the amended complaint. Although Twitter is a private company, the amended complaint alleged that it worked with the federal government to identify and silence viewpoints that the government did not agree with and did not want people to hear. This claim was based on detailed factual allegations that, accepted as true and liberally construed in Appellants'

favor, stated a plausible claim to relief under the state-action doctrine. The District Court may eventually rule a different way on the merits, but the merits are not at issue yet. The amended complaint met Rule 8's low pleading standard. It should have proceeded to discovery.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). In so doing, "we must take as true the operative complaint's well-pleaded allegations, including any such allegations that rely on the incorporation of documents attached to the complaint, and we draw all reasonable inferences in favor of [the plaintiffs]." *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022).

This is a low standard. "A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief …" *Edwards*, 356 F.3d at 1061 (quotations omitted). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (noting that "a well-pleaded complaint may proceed even

8

if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" (quotations omitted)).

## ARGUMENT

The Court should reverse the judgment of dismissal because, accepting the amended complaint's allegations as true, it is plausible that Twitter censored and removed Dr. Wolf from its platform because that is what the federal government wanted and demanded that it do, a potential violation of the First Amendment.

### A. The Complaint Alleged Coordination Between Twitter and the Federal Government that Could Constitute State Action.

A "private entity is not ordinarily constrained by the First Amendment …." *Manhattan Cmty. Access Corp. v. Halleck*, -- U.S. --, 139 S. Ct. 1921, 1930 (2019). But it may be sued for violating a person's constitutional rights under certain circumstances. This Court recognizes "at least four different criteria, or tests, used to identify [such] state action: (1) public function; (2) joint action; (3) government compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (cleaned up). Although those are the most common tests used, the Court has also emphasized that "there is no specific formula for defining state action." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (quotations omitted). The analysis is "necessarily fact-bound …." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).

9

The close nexus and joint action tests both apply here. They "may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of State itself, or where the State has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (cleaned up). For example, in *Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000), this Court found potential state action where, construing the facts in the plaintiff's favor, a private doctor "and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves." Thus, the private doctor could potentially be a state actor under the close nexus or joint action theories. *Id.* at 575-76. The Court reversed a grant of summary judgment for the defendant.

Similarly, in *Rawson*, this Court found that private health care workers could potentially be held liable as state actors because a "county prosecutor played an outsized role in the duration of [the plaintiff's] detention, particularly during the pendency of [his] jury trial …." 975 F.3d at 754. It also reversed a grant of summary judgment for the private parties. *Id.* at 757. In *Howerton,* 708 F.2d at 385, the Court found potential joint action between a landlord and police officers

based on their joint and repeated efforts to evict one of the landlord's tenants. It reversed an order dismissing the complaint. And in *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982), the Court found a private towing company to be a state actor when it acts "at the behest of a police officer …." (It decided the case for the defense on other grounds.)

In each of these cases, this Court examined the facts in the light most favorable to the plaintiff and it "examined [those facts] in their totality." *Howerton*, 708 F.2d at 384. Doing that here, one finds facts sufficient to state a plausible claim that Twitter worked with the federal government to identify messages to censor. For example, the complaint alleged that legislators coerced Twitter to "ban" Appellants and others "who tweeted content and views contrary to those legislators' preferred points of view or risk losing the immunity and competitive protections of Section 230 granted by Congress, along with the tens of billions of dollars of market share that came with it." ER 338 (¶ 60). But that was not all. The complaint also alleged that Twitter worked with the CDC and other federal officials to censor statements about COVID-19 that the government did not want people to hear. ER 343-352 (¶¶ 78-104). As the complaint summarized: "Twitter functions as an agent of the Executive Branch in censoring uploads of the Plaintiff, and/or the Putative Class Members, regarding COVID-19." ER 351 (¶ 100).

The District Court did not address these numerous allegations of joint action, which have been corroborated by the emails released in August, one of which was sent between White House officials and Twitter executives and stated that "White House Staff will be briefed by Twitter on vaccine misinfo … and ways the White House (and our COVID experts) can partner in product work." Dist. Ct. ECF 180 at p. 37. A partnership between Twitter and the executive branch about identifying and censoring certain information is the type of explicit coordination that this Court has said could satisfy the state action doctrine in *Rawson*, *Jensen*, *Howerton* and *Goichman*, among other cases.

The Facebook cases that Twitter relied on below do not change that possibility. In *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 930 (N.D. Cal. 2021), the court dismissed the complaint in part because it had not "alleged that the government was actually involved in the decisions to label CHD's posts as 'false' or 'misleading,' the decision to put the warning label on CHD's Facebook page, or the decisions to 'demonetize' or 'shadow-ban.'" By contrast, the amended complaint in this case alleged such direct government involvement, and the newly discovered emails show that executive branch officials were involved in Twitter's decision to censor and ban Dr. Wolf; indeed, executive branch officials appear to have been the ones who flagged Dr. Wolf's account for Twitter, in response to Twitter's request that the government officials identify "problematic

12

content" for it to remove. Dist. Ct. ECF 177, at p. 6; *see also* Dist. Ct. ECF 180, at p. 34 (showing that it was CDC and Census officials who identified fertility concerns as something Twitter should censor).

Similarly, in *Federal Agency of News, LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1126 (N.D. Cal. 2020), the court focused on allegations that Facebook provided information about the plaintiffs' account to the government and dismissed the complaint because "case law is unequivocal that supplying information to the government alone does not amount to joint action." The situation here is far different. Twitter did not simply supply information to the government. And it did not merely consult public health officials for advice, like a student would consult an encyclopedia. The complaint alleged (and emails have since confirmed) that Twitter participated in a project with the executive branch of the federal government to identify and censor alleged misinformation about COVID-19. As the amended complaint alleged, and the newly discovered emails show, the government determined what topics this partnership would focus on. ER 348-351 (¶¶ 97-100); Dist. Ct. ECF 180 at p. 34. In fact, the government itself demanded that Twitter censor Dr. Wolf for saying the wrong things. Dist. Ct. ECF 177 at p. 6.

In another case involving Twitter, the plaintiff (O'Handley) alleged that the company engaged in a conspiracy with California government officials to censor

conservative viewpoints about the 2020 election. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1172 (N.D. Cal. 2022). Twitter argued that it suspended O'Handley's account for violating its "Civic Integrity Policy, which prohibits the posting of 'false or misleading information intended to undermine public confidence in an election or other civic process.'" *Id.* Mr. O'Handley argued that Twitter should be held liable as a state actor under the joint action test, but his complaint identified only "a single [government] message to Twitter, flagging a single O'Handley tweet without directing or even requesting that Twitter take any action in response to the tweet." *Id.* at 1194. The complaint did "not allege that there was any further communication between Twitter and the government about the tweet, or about any other O'Handley tweets—including the February 2021 tweet that prompted Twitter to permanent suspend O'Handley's account for violating its Civic Integrity Policy." *Id.* at 1180-81.

The court in *O'Handley* concluded that "the one-off, one-way communication here does not reflect 'substantial cooperation'" or the "exercise of coercive power" that can satisfy the joint action test. *Id.* at 1181. The amended complaint did allege these things and Dr. Wolf would expand on them, based on the newly discovered emails, if allowed to do so.

Twitter may argue that, although executive branch officials flagged issues to censor for it, it must have made an independent editorial decision to censor Dr.

Wolf and the other Appellants, something it contends it had the right to do. But this Court rejected a similar argument in *Jensen*. 222 F.3d at 575-76. And the Fifth Circuit Court of Appeals recently rejected the argument that social media companies have a First Amendment right to censor people on their platforms. *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 463-65 (5th Cir. 2022). Moreover, unlike in *O'Handley*, nobody knows if Twitter made an independent editorial decision to censor and then ban any of the Appellants because no discovery has been done yet. The newly discovered emails suggest otherwise. Dist. Ct. ECF 182 at pp. 6-7 (explaining why).

There is another important distinction between this case and *O'Handley* that affects this analysis. The district court there found "ample evidence" that Twitter, not the government, decided what content to remove. For example, a Twitter "spreadsheet reflects that when Twitter responded to [the government] about its reports, it described its decision of whether to remove a post, or take no action on it, by referencing its own interpretation of its own Rules. *O'Handley*, 579 F. Supp. 3d at 1183. And, critically, the Twitter spreadsheet did "not show, and the Complaint does not allege, that Twitter consulted or conferred with the government on content decisions." *Id.* That is exactly what the amended complaint alleged, and what the newly discovered evidence shows. The district court in *O'Handley* also made much of the fact "that Twitter took no action on

[government]-reported content in about one-third of the instances of alleged misinformation listed." *Id.* The amended complaint alleged that Twitter removed *everything* the government asked it to remove about alleged COVID-19 misinformation. ER 343-354 (¶¶ 78-112).

Furthermore, unlike in *O'Handley*, Twitter has not identified an independent company policy related to COVID-19 that Appellants violated. The only policy it contends Appellants violated was Twitter's prohibition on vaccine "misinformation." But the amended complaint alleged that, unlike the Civic Integrity Project, Twitter relied entirely on the executive branch of the federal government to decide what was, or was not, vaccine "misinformation" during 2021. *Id.* That shows the consultation and reliance that was missing in *O'Handley*. As in *Jensen* and *Rawson*, Appellants deserve the chance to gather more evidence and prove that executive branch officials played an outsized, if not dispositive, role in Twitter's decision to censor and then ban them from its platform.

### B. The Complaint Alleged the Type of Encouragement that Courts Have Found to Turn Private Action into State Action.

The amended complaint also alleged facts sufficient to state a claim under the governmental compulsion or coercion doctrine.

"Governmental compulsion or coercion may exist where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"

*Rawson*, 975 F.3d at 748 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The Court discussed this state action test in *Mathis v. Pacific Gas & Electric Company*, 891 F.2d 1429 (9th Cir. 1989) ("*Mathis I*"). It stated that "there is no state, or federal, action unless the transfer or discharge is made on the basis of some rule of decision for which the State is responsible." *Id.* at 1432 (quotations omitted). But the Court acknowledged that this is not an easy question to answer. And Mr. Mathis provided some evidence of government coercion, leading the Court to conclude that "we cannot agree with the conclusion that Mathis' allegations of governmental coercion or encouragement are frivolous or wholly without merit." *Id.* at 1433-34. Thus, the Court reversed the trial court's dismissal of the claim. *Id.* at 1434.[2]

The amended complaint alleged similar facts. ER 343-354 (¶¶ 78-112). These allegations, construed liberally in Appellants' favor, show the type of direct and significant encouragement that another court said might satisfy the government compulsion test in a similar context involving a social media company. *Children's Health Defense*, 546 F. Supp. 3d at 932-33. They suggest that Twitter censored and banned Appellants because the executive branch told it to. That is the "rule of

---

[2] Mr. Mathis did get the chance to do discovery, but the Ninth Circuit ruled that the evidence he presented was insufficient under the state action doctrine and that PG&E should have been granted judgment as a matter of law during the trial. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 502-03 (9th Cir. 1996) ("*Mathis II*").

decision" supplied by the government that satisfies the government compulsion test, at least at the pleading stage.

The District Court erred in concluding otherwise. In fact, it focused almost exclusively on the complaint's allegations about pressure exerted on Twitter by Democratic Party legislators. ER 9-11, 14-16. Those allegations related primarily to the de-platforming of former President Trump, not the censoring of people like Dr. Wolf who expressed dissenting views about COVID-19. As to her, the amended complaint alleged that Twitter worked with the executive branch to identify and censor disfavored information about COVID-19. ER 343-354 (¶¶ 78-112). Unlike legislators, executive branch officials have direct regulatory authority over companies like Twitter. Without further discovery, nobody can say to what extent the executive branch officials used that authority, or the threat of that authority, here. Furthermore, drawing reasonable inferences in Appellants' favor, these factual allegations show a campaign of coercion by the executive branch and its congressional allies (in other words, the entire federal government) that, assumed to be true, could satisfy the government compulsion test at the pleading stage.

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999), did not hold otherwise. There a prospective employee (Sutton) could not get a job from a private hospital because he refused to give the hospital his social

security number. He sued, alleging that the hospital's refusal to hire him violated his constitutional and statutory rights. Essentially, Sutton argued that "because the federal government compels every employer to obtain employees' social security numbers, every employer is liable under [federal law] for violating the rights of employees (or applicants) who object on religious grounds to the social-security-number requirement." *Id.* at 836. The Court rejected that argument, finding that "in a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant. Indeed, without some other nexus between the private entity and the government, we would expect that the private defendant is not responsible for the government's compulsion." *Id.* at 838.

The *Sutton* court gave some examples. It noted that, in *Lugar*, the Supreme Court "held that the private defendants who had initiated the attachment process could be liable as state actors for 'participating in that deprivation': '[I]nvoking the aid of state officials to take advantage of state-created attachment procedures' made the private defendants 'willful participant[s] in joint activity with the State or its agents.'" *Id.* at 839 (quoting *Lugar*, 457 U.S. at 942, 941)). It also explained that, in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 177 (1972), the "private defendant was deemed to be acting in concert with the state when it sought the state's help to enforce the defendant's own racially discriminatory bylaws. Once

19

again, the 'something more' required for a finding of governmental action on the part of a private defendant was satisfied when the plaintiff alleged that the private defendant and the state were jointly pursuing an unconstitutional end." *Sutton*, 192 F.3d at 840.

As explained above, that "something more" also exists here. Moreover, *Sutton* distinguished *Mathis* on the grounds that the defendant there was a public utility. "'It may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be state 'acts' than will the acts of an entity lacking these characteristics." *Id.* at 843 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350-51 (1974)). The court distinguished another coercion case, *Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Co.*, 827 F.2d 1291 (9th Cir.1987), on the same ground.[3] That is significant here. Although Twitter may not have a legal monopoly on online discourse, the Fifth Circuit found that it, like Facebook and Google, has an "effective monopoly over its particular niche of online discourse." *NetChoice*, 49 F.4th at 476. Thus, this is the type of situation in which courts have paid closer attention to the inherent nexus between the government and the private entity, recognizing "that acts of a heavily regulated utility with at least something

---

[3] It also emphasized that, in *Carlin*, "the government directed a specific entity to take a specific (allegedly unconstitutional) action against a specific person." *Sutton*, 192 F.3d at 843. That is exactly what the amended complaint alleged here.

of a governmentally protected monopoly will more readily be found to be state 'acts' than will the acts of an entity lacking these characteristics." *Jackson*, 419 U.S. at 350-51.

In any event, all that matters at this stage is that the amended complaint alleged sufficient facts, accepted as true and liberally construed in Appellants' favor, to suggest that the threat of adverse regulatory or legislative action motivated Twitter to censor people like Dr. Wolf for the government. It did.

### C.  The Court Should Reverse the District Court's Order or Issue a Limited Remand So It Can Consider Dr. Wolf's Rule 60 Motion.

The District Court committed numerous errors in its decision to dismiss the amended complaint. The most fundamental, and prejudicial to Dr. Wolf, was its failure to acknowledge the detailed allegations of coordination between Twitter and executive branch officials that were alleged in paragraphs 78 through 112 of the amended complaint. The District Court simply ignored those allegations and instead focused exclusively on the amended complaint's references to legislators' comments. *See* ER 14-15 (finding that alleged misconduct "fits within the normal boundaries of congressional investigation").

That was not proper. When considering a motion to dismiss, "[t]he court must view *all* allegations in the complaint in the light most favorable to the non-movant and must accept *all* material allegations—as well as any reasonable inferences to be drawn from them—as true." *RDF Media Ltd. v. Fox Broad. Co.*,

372 F. Supp. 2d 556, 560 (C.D. Cal. 2005) (emphasis added). That is why this type of motion is "is generally viewed with disfavor and is rarely granted." *Id.* At the pleading stage, the court acts merely as a gatekeeper; it cannot ignore allegations that don't fit its analysis of the case. *See Turner v. Apple, Inc.*, No. 5:20-CV-07495-EJD, 2022 WL 445755, at *6 (N.D. Cal. Feb. 14, 2022) (denying motion to dismiss that ignored allegations that supported plaintiff's theory); *GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.*, No. C 09-5886 SBA, 2010 WL 1460275, at *3 (N.D. Cal. Apr. 7, 2010) (same).

These principles are especially important in First Amendment cases. "The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). The same concerns may not normally exist when private parties regulate speech on their own platforms, but they exist here, given the extensive cooperation between federal executive branch officials and Twitter in which the government told Twitter what information to silence. ER 343-354 (¶¶ 78-112). Indeed, at least one scholar, in a passage quoted by *Sutton*, has concluded that when "important First Amendment interests are at issue, the fact that" the defendant "is a heavily regulated public utility assuming quasi-monopolistic control over the message medium should be accorded significant weight and tip the balance toward state action …." Morgan W. Tovey, *Dial-A-Porn and the First*

22

*Amendment: The State Action Loophole*, 40 Fed. Communications L.J. 267, 289 (1988).

At minimum, Dr. Wolf deserves the opportunity to allege her own complaint based on the newly discovered emails that show how the CDC and other executive branch officials identified her specific comments for censoring. Dist. Ct. ECF 176, 182. That will promote the judicial policy of deciding cases on their merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Since the District Court has not yet ruled on Dr. Wolf's motion for an indicative ruling, the Court should exercise its discretion and remand the case to the District Court for the limited purpose of briefing and argument on Dr. Wolf's planned Rule 60 motion.

## CONCLUSION

For the foregoing reasons, and if the Court addresses this appeal in its entirety, it should reverse the judgment of dismissal and remand the case with instructions to deny Twitter's motion to dismiss and for further proceedings.

Date: November 11, 2022

JW HOWARD/ATTORNEYS, LTD.

*s/ Scott J. Street*
Scott J. Street

*Attorneys for Appellant Naomi Wolf*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 22-15961**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** *s/ Scott J. Street*          **Date:** November 11, 2022

24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 22-15961**

I am the attorney or self-represented party.

**This brief contains 5,421 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Scott J. Street*        **Date:** November 11, 2022