No. 22-15961

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DONALD J. TRUMP, *et al.*,

*Plaintiffs-Appellants,*

*v.*

TWITTER, INC. *et al.*,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee.*

On Appeal from the United States District Court
for the Northern District of California

## BRIEF FOR NETCHOICE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

Ambika Kumar
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
(206) 757-8030
ambikakumar@dwt.com

Carl Mazurek
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 489-8230
carlmazurek@dwt.com

David M. Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street, NW, Ste. 500 East
Washington, DC 20005
(202) 973-4200
davidgossett@dwt.com

Carl M. Szabo
Christopher J. Marchese
Nicole Saad Bembridge
NETCHOICE LITIGATION CENTER
1401 K Street NW, Ste. 502
Washington, DC 20005

*Attorneys for NetChoice LLC*

## CORPORATE DISCLOSURE STATEMENT

NetChoice LLC, d/b/a NetChoice, is a non-profit entity organized under Section 501(c)(6) of the Internal Revenue Code created in and existing under the laws of the District of Columbia. NetChoice is a national trade association of online businesses that share the goal of promoting free speech and free enterprise on the Internet. A list of NetChoice's members is available at https://netchoice.org/about/. NetChoice has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES ................................................... iii

INTEREST OF *AMICUS CURIAE* ............................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................2

ARGUMENT ................................................................4

    I.    Appellants Must Bring Their First Amendment Claim, If At All, Against The Government........................................7

        A.    Claims alleging government coercion of a private party may only be brought against the government.....................................................7

        B.    Appellants' First Amendment claim is based on alleged government coercion of Twitter. .....................12

    II.    Claims A Private Party Acted Consistently With Statements By Members Of Government Do Not Allege State Action Under A Coercion Theory. ..............................15

CONCLUSION ..........................................................23

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu-Jamal v. Nat'l Pub. Radio,*
    1997 WL 527349 (D.D.C. Aug. 21, 1997), *aff'd*, 159 F.3d 635
    (D.C. Cir. 1998) ................................................................................22

*Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff,*
    23 F.4th 1028 (D.C. Cir. 2022)...........................................................22

*Carlin Commc'ns., Inc. v. Mountain States Tel. & Tel. Co.,*
    827 F.2d 1291 (9th Cir. 1987) .....................................................12, 16

*Children's Health Defense v. Facebook Inc.,*
    546 F. Supp. 3d 909 (N.D. Cal. 2021), *appeal docketed sub nom.*
    *Children's Health Defense v. Meta Platforms, Inc.*, No. 21-16210
    (9th Cir. July 21, 2021) ......................................................................21

*Daniels v. Alphabet, Inc.,*
    2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ....................................22

*Doe v. Google, LLC,*
    2022 WL 17077497 (9th Cir. Nov. 18, 2022) ........................ 7, 8, 16, 21

*Florer v. Congregation Pidyon Shevuyim, N.A.,*
    639 F.3d 916 (9th Cir. 2011).............................................................11

*Franklin v. Fox,*
    312 F.3d 423 (9th Cir. 2002)..............................................................11

*Harvey v. Plains Twp. Police Dep't,*
    421 F.3d 185 (3d Cir. 2005) ............................................................8, 11

*Informed Consent Action Network v. YouTube LLC,*
    582 F. Supp. 3d 712 (N.D. Cal. 2022)...............................................22

*Kennedy v. Warren*,
2022 WL 1449678 (W.D. Wash. 2022), *appeal docketed*,
No. 22-35457 (9th Cir. June 9, 2022) .................................................. 22

*Lombard v. Louisiana*,
373 U.S. 267 (1963) .................................................................. 15, 16

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) ........................................................................ 6

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ................................................................. 4, 5

*Mathis v. Pacific Gas & Electric Co.*,
891 F.2d 1429 (9th Cir. 1989) ........................................................ 11

*Missouri v. Biden*,
2023 WL 2578260 (W.D. La. Mar. 20, 2023) ................................... 14

*Naoko Ohno v. Yuko Yasuma*,
723 F.3d 984 (9th Cir. 2013) ............................................................ 6

*NetChoice, LLC v. Atty. Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022), *pets. for cert. docketed*,
Nos. 22-277 (Sept. 23, 2022), 22-393 (Oct. 26, 2022) ..................... 4, 9

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom.*
*O'Handley v. Weber*, 2023 WL 2443073 (9th Cir. Mar. 10, 2023) .. 9, 10

*O'Handley v. Weber*,
2023 WL 2443073 (9th Cir. Mar. 10, 2023) ................................ 5, 6, 21

*Rawson v. Recovery Innovations, Inc.*,
975 F.3d 742 (9th Cir. 2020) ............................................................ 6

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) ................................................... *passim*

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) .......................................................... 10

*Zhang v. Baidu.com Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014) ..................................................... 9

## Constitutional Provisions

U.S. Const., amend. I .................................................................. *passim*

## Statutes

47 U.S.C. § 230 .......................................................................... *passim*

## Other Authorities

Br. of NetChoice *et al.* as *amici curiae*, *Changizi v. Dep't of Health & Human Servs.*, Dec. 5, 2022 (6th Cir. No 22-3573), https://netchoice.org/wp-content/uploads/2022/12/NetChoice_Changizi_Filed-12-5-22.pdf ............................................................ 1, 6

Will Duffield, *Jawboning against Speech: How Government Bullying Shapes the Rules of Social Media*, CATO INSTITUTE, POLICY ANALYSIS NO. 934 (Sept. 12, 2022), https://www.cato.org/policy-analysis/jawboning-against-speech ........................................ 19

Shirin Ghaffary, *Facebook deleted a Trump post that falsely claimed the flu can be more deadly than Covid-19*, VOX (Oct. 6, 2020), https://www.vox.com/recode/2020/10/6/21504307/facebook-deleted-trump-post-flu-deadly-covid-19-twitter ................ 18

Bill Hagerty, *Goodbye Section 230, Hello Liberty*, BILL HAGERTY U.S. SENATOR FOR TENNESSEE (Apr. 27, 2021), available at https:// www.hagerty.senate.gov/op-eds/2021/04/27/hagerty-op-ed-goodbye-section-230-hello-liberty/ ................................................. 18

Makena Kelly, *Rep. Marjorie Taylor Greene throws support behind Section 230 repeal bill*, THE VERGE (Apr. 28, 2022), https://www.theverge.com/2022/4/28/23046880/elon-musk-twitter-marjorie-taylor-greene-section-230-repeal-hagerty .............. 18

Genevieve Lakier, *Informal Government Coercion and The Problem of 'Jawboning,'* LAWFARE (July 26, 2021), https://www.lawfareblog.com/informal-government-coercion-and-problem-jawboning ..................................................................... 17

*Senator Hawley Introduces Legislation to Amend Section 230 Immunity for Big Tech Companies*, JOSH HAWLEY U.S. SENATOR FOR MISSOURI (June 19, 2019), https://www.hawley.senate.gov/senator-hawley-introduces-legislation-amend-section-230-immunity-big-tech-companies .......... 19

## INTEREST OF *AMICUS CURIAE*

NetChoice is a national trade association of online businesses that works to protect free expression and promote free enterprise online. To this end, NetChoice is actively engaged in litigation and advocacy to challenge efforts to undermine these principles.

NetChoice is particularly concerned about the application of fundamental First Amendment principles to online speech. The First Amendment prohibits the government from censoring, compelling, or otherwise abridging private speech, and protects social media services' decisions about what user content to publish. NetChoice has recently filed other briefs to address the importance of private companies' First Amendment right to exercise editorial discretion over what speech to disseminate and how, and the importance of preventing government "jawboning"—government efforts to influence decisions made by social media services about what user content to publish. *See, e.g.*, Br. of NetChoice *et al.* as *amici curiae*, *Changizi v. Dep't of Health & Human Servs.*, Dec. 5, 2022 (6th Cir. No 22-3573) (pending).[1] NetChoice believes

---

[1] Available at https://netchoice.org/wp-content/uploads/2022/12/Net Choice_Changizi_Filed-12-5-22.pdf.

that government jawboning should be constrained—but equally important, that the appropriate target for any challenge to government jawboning should be the government, not the private entity that was subjected to government pressure. This case is thus of significant interest to NetChoice and its members.[2]

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal arises from alleged government efforts to limit the ability of a social media service to make independent choices about the content it displays and disseminates on its privately owned website. In particular, appellants allege that statements by government officials urging Twitter to suspend or moderate appellants' accounts constituted sufficient coercion to transform Twitter's content moderation decisions into state action. But appellants' lawsuit relies on a theory of First Amendment liability that is contrary to law and threatens to unduly broaden the liability of private actors for government decisions. The district court correctly dismissed the lawsuit.

---

[2] *Amicus curiae* NetChoice states that no counsel for a party authored this brief in whole or in part, and no person other than *amicus* or its counsel made a monetary contribution to the brief's preparation or submission. Counsel for all parties have consented to the filing of this brief.

First, to the extent appellants allege that governmental coercion resulted in deprivation of their constitutional rights—because the government ordered Twitter to remove their speech—the appropriate target for appellants' lawsuit is not Twitter, but the government entities or officials responsible for that coercion. Allowing those users to sue Twitter, the social media company that the government allegedly coerced, would hold a private entity liable for decisions in which—by appellants' own theory—it had no say. Both Ninth Circuit precedent and prudential considerations foreclose such a result.

Second, even setting aside this insurmountable bar to appellants' lawsuit, appellants' coercion theory fails on the merits. Accepting the allegations of the Amended Complaint as true, appellants have failed to raise even a plausible inference that Twitter's actions resulted from government coercion sufficient to transform those actions into state action. Appellants focus almost entirely on the statements of individual legislators, who publicly urged social media companies to take actions such as those Twitter took, and who proposed legislative or regulatory changes affecting social media companies. But those comments and

proposals were far from the sorts of directly coercive efforts necessary to transform private conduct into state action.

NetChoice does not condone political attempts to meddle in private companies' content moderation decisions. To the contrary, the government has no business interfering with these decisions, which the First Amendment protects. And if the government's actions rise to the level of coercion, the courts should hold the government responsible. But there is no legal or policy justification to extend the state action doctrine to hold Twitter or other social media companies liable in situations where they are coerced by the government.

## ARGUMENT

The First Amendment "prohibits only *governmental* abridgment of speech," not "*private* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citations omitted); *see also NetChoice, LLC v. Atty. Gen., Fla.*, 34 F.4th 1196, 1204 (11th Cir. 2022) ("[Social media] platforms are private enterprises, not governmental (or even quasi-governmental) entities."), *pets. for cert. docketed*, Nos. 22-277 (Sept. 23, 2022), 22-393 (Oct. 26, 2022). As the Supreme Court explained, "when a private entity provides a forum for speech, the private entity is

not ordinarily constrained by the First Amendment" and "may thus exercise editorial discretion over the speech and speakers in the forum." *Halleck,* 139 S. Ct. at 1930; *see also O'Handley v. Weber*, 2023 WL 2443073, at *4 (9th Cir. Mar. 10, 2023) ("As a private company, Twitter is not ordinarily subject to the Constitution's constraints.") (citation omitted). Twitter therefore has the right to publish, remove, or prioritize content on its website however it wants. If users do not like those decisions, they can use other social media services.

There is, however, a limit to this principle: In "a few limited circumstances," a court may find that a private party's action counts *as* the action of the government, *i.e.*, "state action." *Halleck,* 139 S. Ct. at 1928. But this happens only in a narrow range of situations, to "protect[] a robust sphere of individual liberty." *Id.*; *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) ("Only in rare circumstances can a private party be viewed as a 'state actor.'") (citation omitted).

The Ninth Circuit has recognized four circumstances under which a private party's action may constitute state action: (1) the party performs a "public function" that is "both traditionally and exclusively

5

governmental"; (2) the party engages in "joint action" with the government, in which its interdependence with the government renders it a joint participant in the enterprise; (3) the party's action results from "governmental compulsion or coercion"; and (4) there is a close "nexus" between the private party and the government, the parameters of which are similar to the "joint action" test. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747-48 (9th Cir. 2020) (citations and internal quotation marks omitted).[3]

Here, appellants' claims were properly dismissed. First, even if a private party's conduct could satisfy one of these tests, where the state action allegedly results from government coercion—a circumstance in which the private party was, by definition, forced to act—the private party cannot and should not be held liable for the result. Because Twitter's alleged censorship was by appellants' own theory coerced by the

---

[3] The courts have not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)); *see also Weber*, 2023 WL 2443073, at *5-6 (considering questions of government coercion and encouragement under governmental nexus test) (citation omitted); *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 n.13 (9th Cir. 2013) (explaining that governmental nexus test is largely subsumed within joint action test).

government, the government, not Twitter, is the proper defendant. *See* Part I, *infra.* Second, the actions about which appellants complain in any event simply do not amount to coercion. *See* Part II, *infra.*

## I. Appellants Must Bring Their First Amendment Claim, If At All, Against The Government.

### A. Claims alleging government coercion of a private party may only be brought against the government.

Appellants' First Amendment claim against Twitter fails because appellants have sued the wrong defendant. The law is clear that even if a given action by a private party qualifies as state action, that does not mean that the private party is liable. Rather, in many instances the appropriate course is for the plaintiff to sue *the government.* And in particular, this Court has repeatedly held that where a plaintiff alleges that a private party's actions constitute state action under a theory that the government compelled the private party to act as it did, the plaintiff may only bring claims against the government for those actions.

In *Doe v. Google, LLC*, for example, this Court addressed allegations that YouTube and Google "either conspired with the federal government, or were compelled by the federal government, to take down [the plaintiffs'] video content." 2022 WL 17077497, at *2-4 (9th Cir. Nov.

18, 2022). Like appellants here, the plaintiffs claimed that the defendants' actions constituted state action and violated the plaintiffs' First Amendment rights. *Id.* This Court affirmed dismissal on multiple grounds—including, as relevant here, that a "fundamental problem with Appellants' compulsion theory is that the state-action doctrine only allows plaintiffs to hold the *government* liable for a private entity's conduct and does not support a claim against the private entity itself." *Id.* at *2 (citations omitted).

Similarly, in *Sutton*, this Court explained that where the government coerces a private party to take action, "*the government* cannot escape liability," but that, "without some other nexus between the private entity and the government, we would expect that the private defendant is *not* responsible for the government's compulsion." 192 F.3d at 838. "[O]nly the state actor, and not the private party, should be held liable for the constitutional violation that resulted from the state compulsion." *Id.* (citation omitted). The Third Circuit has reached the same conclusion. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 196 (3d Cir. 2005) (private party could not be held liable for actions resulting from government compulsion).

The logic behind refusing to assign liability to private parties coerced by the government for any resulting constitutional violation is straightforward: "A private party in such a case is left with no choice of his own and consequently should not be deemed liable." *Sutton*, 192 F.3d at 838 (citation and internal quotation marks omitted). And this principle applies with particular force to cases, like this one, that target private actors' own exercise of First Amendment rights (here, content moderation decisions). As a district court in this Circuit recently explained, "[l]ike a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-87 (N.D. Cal. 2022), *aff'd on other grounds sub nom. O'Handley v. Weber*, 2023 WL 2443073 (9th Cir. Mar. 10, 2023) (collecting cases).[4]

---

[4] *See also NetChoice*, 34 F.4th at 1200 (finding it "substantially likely that social-media companies['] … 'content-moderation' decisions constitute protected exercises of editorial judgment"); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437-43 (S.D.N.Y. 2014) ("[T]o hold [a website] liable for ... a conscious decision to design its search-engine algorithms to favor certain expression on core political subjects over other expression on those same political subjects" would "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.").

In other words, to the extent the government coerces social media services to moderate users' content in a specific way, it infringes on the services' First Amendment rights, and the platforms are *themselves* the victims—rather than the perpetrators—of the state action in question. *See, e.g.*, *Padilla*, 579 F. Supp. 3d at 1186-87; *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (First Amendment protects an online bulletin board's decision "to publish, withdraw, postpone or alter content"). To be sure, the government might in certain instances have a defense to a First Amendment claim brought by the service, or by the user whose online speech was moderated. But as this Court's precedents establish, users must bring an action against the government in this instance, not against the platform that was coerced into moderating the users' content.

Under the same logic, plaintiffs cannot escape the bar on actions against private parties simply by recasting their coercion allegations under a joint action or governmental nexus theory. There is no clear demarcation between the coercion test and the joint action or governmental nexus theories. *See supra* note 3. But generally, for a private entity's actions to constitute state action under the joint action or

governmental nexus test, it must have *willingly* participated in the government's conduct.[5] As the Third Circuit has explained, if the private entity's cooperation with the government was brought about by coercion from the government, participation in the government's conduct is not "willful." *See Harvey*, 421 F.3d at 195-96 (party operating on government orders did not act "willfully," and therefore was not engaged in joint action). So even if a joint action or governmental nexus theory could proceed against the government in instances involving coercion, the private party in such a case is "left with no choice of his own and should not be deemed liable." *Sutton*, 192 F.3d at 838 (citation and internal quotation marks omitted).[6]

---

[5] *See, e.g., Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ("A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'") (citation omitted); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 927 (9th Cir. 2011) ("The joint action test is not satisfied absent willful joint participation, like [a] conspiracy.").

[6] *Mathis v. Pacific Gas & Electric Co.*, 891 F.2d 1429 (9th Cir. 1989), in which plaintiff's claim that a public utility coordinated closely with the government to regulate drug testing of employees was held to sufficiently allege state action, is not to the contrary. As this Court has since explained, *Mathis* is distinguishable from cases alleging coercion of private parties by the fact the defendant was a public utility, and plaintiff alleged it was a "*willful* participant[]" in the state activity in question.

**B.** **Appellants' First Amendment claim is based on alleged government coercion of Twitter.**

Regardless of the label appellants affix to their theory, their First Amendment claim boils down to the allegation that Twitter suspended their accounts as a result of pressure from various members of the federal government. They may not bring that claim against Twitter.

Taking the allegations of the Amended Complaint at face value, Twitter's only demonstration of its supposed joint endeavor with the government consists of content moderation decisions beginning in January 2020 that accorded with the stated policy preferences of various agencies and officials of the federal government. 3-ER-343-54 (AC ¶¶ 78-112). Critically, appellants claim that Twitter made these decisions in the shadow of a government campaign of threats and pressure dating from at least April 2019. *See* 3-ER-335-38 (AC ¶¶ 51-60); 3-ER-342 (AC ¶ 75); 3-ER-352 (AC ¶105); 3-ER-362-63 (AC ¶¶ 172-76); *see also* Trump Br. at 56 (claiming joint action occurred because Twitter moderated

---

*Sutton*, 192 F.3d at 842-3. Twitter is not a public utility, and there is not even an allegation that its participation in the government's alleged scheme was willful. *See also id.* (distinguishing *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987), on the basis that it involved claims against public utility).

conservative content "in response to social and political pressure" from legislators); Wolf Br. at 11 (claiming joint action existed because "legislators coerced Twitter to 'ban' Appellants and others," prompting Twitter to do so). Appellants cannot and do not point to any benefit that Twitter received for its alleged participation in the scheme, which appellants claim was aimed at serving the interests of various members of government. *See*, *e.g.*, 3-ER-353 (AC ¶ 109) (alleging representatives of the federal government "contacted Twitter to implement the *government's* goals") (emphasis added); 3-ER-363 (AC ¶ 177) (alleging representatives of federal government "us[ed] Twitter to coerce enforcement of censorship and prior restraint [*sic*] against political opponents"); Trump Br. at 55 (alleging former Twitter CEO Jack Dorsey "committed to implement Democratic legislators' censorship program"); Wolf Br. at 9 (claiming "Twitter censored and removed Dr. Wolf from its platform because that is what the federal government wanted and demanded that it do").

In other words, even crediting appellants' claims, appellants' fundamental assertion is that Twitter made editorial decisions under coercion from various government officials; its actions were anything but

13

willing. Rather, under appellants' theory, Twitter was deprived of its right to determine what content it displays on its privately owned website by various government actors who compelled it to censor content as those government actors wished.

Appellants' theory of liability would place private actors like Twitter in the impossible position of facing threats if they refuse to accede to government requests, while also shouldering liability for the consequences of those actions. This Court, like others, has long recognized the unfairness of such a result and has required claims alleging state action under a coercion theory to be brought against the government itself. *See supra* Part I.A. The Court should reaffirm this sound principle here and reject appellants' efforts to sidestep it by dressing up their claims under alternative theories.

Barring appellants' claims against Twitter would not leave them without recourse: They could still sue the government officials they allege were responsible for the complained-of campaign to coerce Twitter in its content moderation decisions. *See*, *e.g.*, *Missouri v. Biden*, 2023 WL 2578260 (W.D. La. Mar. 20, 2023) (denying motion to dismiss lawsuit against government officials who allegedly coerced social media

platforms to suppress certain users' views). To the extent appellants believe legislators compelled Twitter to take actions that violated appellants' First Amendment rights, it is against those officials that they should proceed.

## II. Claims A Private Party Acted Consistently With Statements By Members Of Government Do Not Allege State Action Under A Coercion Theory.

Appellants' case suffers from another fundamental flaw. Even if a lawsuit could *ever* be brought against Twitter for content moderation decisions made as a result of government coercion (*but see* Part I, *supra*), this is not that case. The cases finding government coercion sufficient to turn a private party's actions into state action have involved threats far more direct and immediate than those at issue here.

In *Lombard v. Louisiana*, for example, the Supreme Court held that a private restaurant's decision to call the police in response to a sit-in by customers of different races constituted state action. 373 U.S. 267 (1963). Its decision (to vacate a criminal conviction) was based on the fact that both the mayor and the superintendent of police had threatened prosecution for violations of the state's racial segregation laws, and the restaurant manager acted "in obedience to the directive of the city

officials." *Id.* at 270-73. Similarly, in *Carlin Communications*, the telephone company's denial of service to plaintiff was held to constitute state action where the deputy county attorney threatened to prosecute the phone company if it continued to carry plaintiff's messaging service. 827 F.2d at 1295.[7]

Here, by contrast, appellants' allegations are based on statements of individual members of Congress and of the Executive Branch. *See* 3-ER-335-37 (AC ¶ 55). But statements expressing individual government officials' views about private entities' actions and proposing possible legislative or regulatory solutions lack the force of law and cannot, without more, constitute coercion for purposes of the state action doctrine. *See Google*, 2022 WL 17077497 at *6 ("[T]hose events, like the acts that are more specifically directed at YouTube—for example, Speaker Pelosi's and Representative Schiff's comments—lack force of law, rendering them incapable of coercing YouTube to do much of anything.").

---

[7] The plaintiff in *Carlin* sought only injunctive relief—and the state's coercive actions were held to constitute an unlawful prior restraint—and thus the case does not raise the issues addressed in Part I.

Politicians of all stripes regularly express their opinions regarding the actions of private parties, and lend their views force by linking them to prospective legislation or regulation. The content moderation practices of social media have in recent years been the subject of particularly intense disputes. *See generally* Genevieve Lakier, *Informal Government Coercion and The Problem of 'Jawboning,'* LAWFARE (July 26, 2021) (explaining trend of government officials using informal means to pressure social media companies).[8]

This case illustrates the dynamic perfectly. While appellants accuse politicians of pressuring Twitter to ***censor*** their accounts by threatening to restrict or remove social media services' protections under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, numerous other politicians—including former President Trump, the lead plaintiff in this action—have invoked the specter of repealing Section 230 to pressure platforms like Twitter to ***restore*** their accounts or otherwise display certain content.

---

[8] Available at https://www.lawfareblog.com/informal-government-coercion-and-problem-jawboning.

While still in office, former President Trump responded to decisions by Facebook and Twitter to moderate his posts by tweeting "REPEAL SECTION 230!!!" *See* Shirin Ghaffary, *Facebook deleted a Trump post that falsely claimed the flu can be more deadly than Covid-19*, VOX (Oct. 6, 2020).[9] Similarly, after Twitter suspended Representative Marjorie Taylor Greene's personal account for spreading COVID-19 misinformation, she introduced legislation to abolish Section 230. *See* Makena Kelly, *Rep. Marjorie Taylor Greene throws support behind Section 230 repeal bill*, THE VERGE (Apr. 28, 2022).[10] Other examples abound of politicians taking concrete legislative steps to repeal Section 230 in an effort to compel Twitter and other social media platforms to provide a platform for viewpoints that they contend were being censored.[11]

---

[9] Available at https://www.vox.com/recode/2020/10/6/21504307/facebook-deleted-trump-post-flu-deadly-covid-19-twitter.

[10] Available at https://www.theverge.com/2022/4/28/23046880/elon-musk-twitter-marjorie-taylor-greene-section-230-repeal-hagerty.

[11] *See*, *e.g.*, Bill Hagerty, *Goodbye Section 230, Hello Liberty*, BILL HAGERTY U.S. SENATOR FOR TENNESSEE (Apr. 27, 2021) (op-ed by Sen. Bill Hagerty in Wall Street Journal, explaining his introduction of bill to repeal Section 230, in response to alleged decisions by Twitter and other social media platforms to "suppress" certain content), available at https://

But none of these exhortations carries the force of law; they are just politicians engaging in the political process. And precisely because statements of the sort to which appellants point are so ubiquitous, appellants' theory of coercion risks placing companies in an untenable position in which *any* action they take—because it aligns with a view expressed by *some* group of politicians—could be treated as state action. *See generally* Will Duffield, *Jawboning against Speech: How Government Bullying Shapes the Rules of Social Media*, CATO INSTITUTE, POLICY ANALYSIS No. 934 (Sept. 12, 2022) ("The back-and-forth tussle between removal demands, must-carry demands, and demands to ignore must-carry demands makes platform policy a political football.").[12] Here, for example, various government officials made directly contradictory

---

www.hagerty.senate.gov/op-eds/2021/04/27/hagerty-op-ed-goodbye-section-230-hello-liberty/; *Senator Hawley Introduces Legislation to Amend Section 230 Immunity for Big Tech Companies*, JOSH HAWLEY U.S. SENATOR FOR MISSOURI (June 19, 2019) (announcing Sen. Josh Hawley's introduction of bill to restrict Section 230 immunity for large tech companies, in response to companies' alleged "decisions to censor viewpoints they disagree with"), available at https://www.hawley.senate.gov/senator-hawley-introduces-legislation-amend-section-230-immunity-big-tech-companies.

[12] Available at https://www.cato.org/policy-analysis/jawboning-against-speech.

requests to Twitter—alternately to suspend former President Trump's account or to require Twitter to display and disseminate it—all backed by the same threats to limit or repeal Section 230 protections. As a result, both a decision by Twitter to restore former President Trump's account and a decision to continue suspension of his account would equally plausibly (or implausibly) constitute state action.

Some amount of targeted congressional jawboning could theoretically amount to coercion; but this is far from any such hypothetical case. Appellants' theory of coercion would encourage potential plaintiffs seeking to allege state action by social media services to scour the legislative record and reverse-engineer a claim by matching content moderation decisions to government officials' statements. Indeed, given the intensity of debate over content curation, it is a virtual certainty that such a plaintiff would be able to find statements by officials that happened to align with the decision in question. The functional result of this approach would be to strip social media services of their First Amendment right to determine the content on their own platforms, and to expose them to liability for their independent editorial decisions.

The approach urged by appellants would broaden the state action doctrine far beyond its purposefully narrow confines and largely collapse the distinction between government and private action for any company unfortunate enough to be caught in the crossfire of a political disagreement. Courts, including this one, have recognized the danger posed by such an expansive conception of the state action doctrine, and have uniformly rejected the increasingly frequent claims that media entities are state actors just because their content moderation decisions happen to align with statements by government officials. *See Weber*, 2023 WL 2443073 at *7 (affirming dismissal of claim against Twitter because plaintiff did not plausibly allege that Twitter's actions were taken to further government's alleged censorship goals rather than its own content policies).[13]

---

[13] *See also*, *e.g.*, *Google*, 2022 WL 17077497 at *2-3 (no state action under either compulsion or joint action theory based on allegations YouTube terminated or suspended plaintiffs' channels following public pressure from members of federal government, including threats to remove Section 230 protection); *Children's Health Defense v. Facebook Inc.*, 546 F. Supp. 3d 909, 927-33 (N.D. Cal. 2021) (no state action by Facebook under joint action or coercion theory for content moderation decisions, where Representative Adam Schiff allegedly pressured Facebook to combat vaccine misinformation, including by threatening repeal of Section 230), *appeal docketed sub nom. Children's Health Defense v. Meta*

This case demonstrates the wisdom of these decisions. The Court should follow them here by holding that Twitter's actions do not rise to the level of state action simply because they accord with the public statements of government actors.

---

*Platforms, Inc.*, No. 21-16210 (9th Cir. July 21, 2021); *Informed Consent Action Network v. YouTube LLC*, 582 F. Supp. 3d 712, 718-24 (N.D. Cal. 2022) (no state action by YouTube under either joint action or coercion theory for content moderation decisions, where members of Congress allegedly pressured YouTube to combat misinformation related to elections, the census, and COVID-19, including by threatening repeal of Section 230); *Daniels v. Alphabet, Inc.*, 2021 WL 1222166, at *6-7 (N.D. Cal. Mar. 31, 2021) (no state action under either joint action or coercion theory for content moderation decisions pertaining to plaintiff's YouTube account, where members of Congress allegedly pressured defendants to combat COVID-19 misinformation, including by threatening repeal of Section 230); *Abu-Jamal v. Nat'l Pub. Radio*, 1997 WL 527349, at *6-7 (D.D.C. Aug. 21, 1997) (no state action under coercion theory where government actors allegedly pressured NPR not to air plaintiff's comments, including by threatening to restrict NPR's funds), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998); *Kennedy v. Warren*, 2022 WL 1449678, at *4-5 (W.D. Wash. 2022) (no state action under coercion theory where Senator Elizabeth Warren allegedly pressured Amazon to suppress plaintiff's book on the COVID-19 vaccine by means of a public letter claiming that Amazon's promotion of the book constituted "peddling misinformation," and was "potentially unlawful"), *appeal docketed*, No. 22-35457 (9th Cir. June 9, 2022); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1033-35 (D.C. Cir. 2022) (dismissing for failure to allege causation claim asserting that technology companies including Google, Facebook, and Amazon "deplatformed" plaintiffs in response to encouragement by Representative Schiff to combat vaccine misinformation, backed by threats to repeal Section 230).

## CONCLUSION

This Court should use this opportunity to reaffirm the principle that where government actors allegedly coerce private entities to do their bidding, claims for any resulting injuries may be brought against the government. Separately, this Court should follow the growing number of decisions that have rejected the theory that the editorial decisions of media entities are transformed into state action by the mere fact they are consistent with the expressed views of some government officials.

Respectfully submitted,

Ambika Kumar
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
(206) 757-8030
ambikakumar@dwt.com

Carl Mazurek
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 489-8230
carlmazurek@dwt.com

s/ David M. Gossett
David M. Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street, NW, Ste. 500 East
Washington, DC 20005
(202) 973-4200
davidgossett@dwt.com

Carl M. Szabo
Christopher J. Marchese
Nicole Saad Bembridge
NETCHOICE LITIGATION CENTER
1401 K Street NW, Ste. 502
Washington, DC 20005

March 22, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s): 22-15961**

I am the attorney or self-represented party.

**This brief contains 4,572 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** ___ s/ *David M. Gossett* ___ **Date:** March 22, 2023