**Case No. 22-15961**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, the Forty-Fifth President of the United States;
LINDA CUADROS; AMERICAN CONSERVATIVE UNION; RAFAEL BARBOSA;
DOMINICK LATELLA; WAYNE ALLYN ROOT; NAOMI WOLF,
*Plaintiffs-Appellants,*

v.

TWITTER, INC.; JACK DORSEY,
*Defendants-Appellees,*

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

*Appeal from the United States District Court for the Northern District of California (San Francisco),
Case No. 3:21-cv-08378-JD · The Honorable James Donato, District Judge*

## APPELLANTS' SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

JOHN P. COALE
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
alex@kozinski.com

ANDREI POPOVICI
MARIE L. FIALA
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Facsimile:  (650) 530-9990
andrei@apatent.com
marie@apatent.com

*Attorneys for Plaintiffs-Appellants,
Donald J. Trump, the Forty-fifth President of the United States;
Linda Cuadros; American Conservative Union; Rafael Barbosa;
Dominick Latella; Wayne Allyn Root*

**Additional Counsel Listed on Signature Page**

 

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

    I.    The Evidence Submitted for Judicial Notice ........................................2

        A.    The Twitter Files ............................................................2

        B.    Musk's Tweets ...............................................................6

        C.    Congressional Testimony ................................................8

    II.    The Submitted Exhibits Are Judicially Noticeable. ...........................10

        A.    Legal Standards for Judicial Notice .........................................10

        B.    Both the Disclosure and Contents of the Twitter Files Are Judicially Noticeable. ..............................................11

        C.    Musk's Tweets Are Party Admissions. ....................................14

        D.    Congressional Testimony Is Noticeable as an Official Government Record. .................................................15

    III.    The Exhibits Are Highly Relevant to Issues in This Case. .................16

CONCLUSION .................................................................................16

i

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Arizona Libertarian Party v. Reagan*,
798 F.3d 723 (9th Cir. 2015)..........................................................................15

*Bryant v. Carleson*,
444 F.2d 353 (9th Cir. 1971)..........................................................................10

*Dudum v. Arntz*,
640 F.3d 1098 (9th Cir. 2011)........................................................................15

*Echo Acceptance Corp. v. Household Retail Servs., Inc.*,
267 F.3d 1068 (10th Cir. 2001)......................................................................13

*Hernandez v. Wells Fargo & Co.*,
2019 WL 3017657 (N.D. Cal. Jul. 10, 2019) ...............................................14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
906 F.2d 432 (9th Cir. 1990)..........................................................................14

*Mavrix Photographs, LLC v. Lifejournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017)........................................................................12

*Mueller v. Abdnor*,
972 F.2d 931 (8th Cir. 1992)..........................................................................13

*Rashid v. BMW of North America, LLC*,
2020 WL 5640734 (S.D. Cal. Sept. 22, 2020)...............................................14

*Robinson v. Salazar*,
838 F.Supp.2d 1006 (E.D. Cal. 2012) ...........................................................14

*Rojas v. Federal Aviation Admin.*,
927 F.3d 1046 (9th Cir. 2019)........................................................................15

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006)........................................................................15

*United States v. Lowell*,
649 F.2d 950 (3d Cir. 1981)...........................................................................10

*United States v. Pang*,
362 F.3d 1187 (9th Cir. 2004)........................................................................13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)..........................................................................15

ii

*United States v. Rosenow*,
  50 F.4th 715 (9th Cir. 2022) ........................................................................ 9

*Vitt v. Apple Computer, Inc.*,
  2007 WL 9662403 (C.D. Cal. Mar. 12, 2007) ............................................. 12

**RULES**

Circuit Rule 27-1 ................................................................................................ 1

Fed. R. Civ. Proc. 11 ...................................................................................... 2, 4

Fed. R. Civ. Proc. 12 ......................................................................................... 4

Fed. R. of Evid. 201 ........................................................................... 1, 10, 11, 12

**OTHER AUTHORITIES**

*Elon Musk promotes release of internal Twitter documents rehashing
  platform's block of Hunter Biden story*, NBC News (Dec. 2, 2022),
  https://www.nbcnews.com/tech/tech-news/elon-musk-promotes-
  release-internal-twitter-documents-rehashing-platfo-rcna59897 ................. 11

*Musk releases "Twitter Files" about platform's inner workings*, CNN Business
  (Dec. 3, 2022), https://edition.cnn.com/videos/business/2022/12/03/smr-
  musk-taibbi-twitter-files.cnn ........................................................................ 11

Phillip Hamburger, *Is Social-Media Censorship a Crime?*, WALL ST. J.,
  Dec. 14, 2022 ................................................................................................. 1

RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006) ........................................ 12

*The real revelation from the 'Twitter Files': Content moderation is messy*,
  CNN (Dec. 14, 2022), https://www.cnn.com/2022/12/14/tech/twitter-
  files-content-moderation/index.html ............................................................ 11

*Twitter Files: What they are and why they matter*, CBS News (Dec. 14,
  2022), https://www.cbsnews.com/news/twitter-files-matt-taibbi-bari-
  weiss-michael-shellenberger-elon-musk/ ..................................................... 11

*Twitter Files*, WIKIPEDIA (last updated Mar. 12, 2023),
  https://en.wikipedia.org/wiki/Twitter_Files#cite_note-:16-4 ....................... 11

*What the Twitter Files Reveal About Free Speech and Social Media*,
  THE NEW YORKER (Jan. 11, 2023) ................................................................ 11

## INTRODUCTION

Elon Musk's acquisition of Twitter on October 27, 2022 gutted Twitter's defense of this action. One month after buying the company, Musk made a stunning announcement: "The Twitter Files on free speech suppression soon to be published on Twitter itself. The public deserves to know what really happened…."[1] MOOT_SMJN-2 (ellipsis in original). Over the next several weeks, Musk released to six journalists—who in turn posted on Twitter— voluminous secret Twitter communications with numerous federal officials, including law enforcement agents, showing that Twitter and the government worked hand in glove to suppress constitutionally protected speech. In the words of one eminent constitutional scholar, this "gov-tech partnership" is "the most massive system of censorship in the nation's history." Phillip Hamburger, *Is Social-Media Censorship a Crime?*, WALL ST. J., Dec. 14, 2022, at A17.

Pursuant to Federal Rule of Evidence 201 and Circuit Rule 27-1, Plaintiffs seek judicial notice of (1) the fact that Musk and his designated journalists publicly released the Twitter Files, (2) the content (not the truth) of the included statements, (3) Musk's own tweets commenting on what he had uncovered since taking over

---

[1] Excerpts from the Twitter Files, Elon Musk's tweets that accompanied their release, and testimony from congressional hearings are attached to the Declaration of Marie L. Fiala in Support of Appellants' Response in Opposition to Appellees' Suggestion of Mootness and Appellants' Supplemental Motion for Judicial Notice ("Fiala Decl.") and are cited as "MOOT_SMJN-xx."

1

the company, and (4) excerpts of testimony given before a recent congressional

hearing convened to take evidence regarding the Twitter Files.[2]  The materials

released thus far show that the District Court's conclusion that Twitter acted alone

in making content moderation decisions, 1-ER-10, 14, was demonstrably wrong.

They also give the lie to Twitter's assertions that it acted independently from the

government and, *inter alia*, raise issues regarding defense counsel's compliance

with Fed. R. Civ. Proc. 11.  *See infra* at 3 & n.3.  The Twitter Files, supplemented

by Musk's tweets and the congressional testimony, leave no doubt that the

judgment must be reversed, and the case remanded for discovery into the full

extent of this clandestine and unlawful partnership between the government and

Twitter.  In these unique circumstances, declining to consider this new information

would work a grave miscarriage of justice.

Defendants oppose the motion and will file an opposition brief.

## ARGUMENT

## I.    The Evidence Submitted for Judicial Notice

### A.    The Twitter Files

The facts leading to the filing of this motion are unprecedented.  After entry

of judgment in this case, Twitter was acquired by Elon Musk, who promptly threw

___

[2] Hearing on the Weaponization of the Federal Government on the Twitter Files: Hearing before H. Select Subcommittee on the Weaponization of the Federal Government, 118th Cong. (Mar. 9 & 30, 2023) ("Mar. 2023 Hearing").

2

open Twitter's internal documents for review and publication by a select group of journalists. Fiala Decl. ¶ 3; MOOT_SMJN-2, 4, 6. In a series of tweets known as the "Twitter Files," these journalists published extensive evidence confirming that, when Twitter censored the Plaintiffs, it did so at the behest of and in close collusion with multiple government entities, including the Senate Select Committee on Intelligence, State Department, Treasury, HHS, Pentagon, FBI, CIA, NSA, DHS, and the Office of the Director of National Intelligence. MOOT_SMJN-10, 12, 16, 78, 80, 86-90, 92, 100, 204-05. Twitter's own documents demonstrate that it was a state actor when undertaking and implementing its censorship campaign.

These disclosures show that Twitter was subjected to mounting censorship pressure from the legislative and executive branches, both before and after the 2020 election. Twitter's "content moderation" decisions were prompted by specific instructions from legislators, executive branch officials, and law enforcement and intelligence agencies. Not only was this information suppressed, but Twitter actively denied in its district court filings that any such coordinated activity had occurred, and otherwise contradicted key facts that appear in the

Twitter Files.[3]  Had Twitter not concealed this evidence before judgment was entered, Plaintiffs easily would have satisfied the District Court's inquiry under Rule 12(b)(6)—even under the District Court's mistaken theory that law enforcement involvement is a prerequisite for finding state action (1-ER-14-16)—and their claims would have proceeded to discovery.

The internal documents released in the Twitter Files show, among other things, that censorship requests poured into Twitter from multiple agencies and scores of government officials.  MOOT_SMJN-10, 12, 16, 26, 78, 80, 86-90, 92, 204-05.  Twitter executives met weekly with the FBI, DHS, and the Office of the Director of National Intelligence.  MOOT_SMJN-12, 16, 51-55, 100-01.  The FBI's Foreign Influence Task Force (FITF) and the San Francisco FBI office became conduits for mountains of content moderation requests, overwhelming Twitter with lists of hundreds of "problem" accounts.  MOOT_SMJN-18, 22, 24,

---

[3] Rule 11 imposes an obligation on counsel to conduct a reasonable inquiry and certify that denials of factual contentions are warranted on the evidence.  Fed. R. Civ. P. 11(b)(3), (4).  Even a cursory inquiry would have revealed that Twitter's denials that it acted in close concert with the government were contrary to the evidence.  *See, e.g.*, Twitter Mot. to Dismiss (Dkt. 138) at 1-2 (asserting that Twitter censored content based on its own content moderation policies); Twitter Opp. to Mot. for Prelim. Inj. (Dkt. 139) at 15, 23 (Twitter banned Plaintiff Trump for violating its rules; there was no government demand that Twitter take a particular action to ban content); Twitter Reply ISO Mot. to Dismiss (Dkt. 147) at 6 ("Twitter *does not coordinate* with other entities when making content moderation decisions.") (emphasis in original).

46-47, 49-50, 56-59, 72, 74, 80, 82, 100, 213, 223-25.  Among other things, the FBI and Twitter worked closely to discredit the Hunter Biden laptop story before the 2020 election.  MOOT_SMJN-6, 10, 12, 19-20, 40, 42, 74.  Agents from FBI field offices and headquarters were dedicated to doing keyword searches for supposed "violations."  MOOT_SMJN-175.  Twitter also received "an astonishing variety of requests from officials asking for individuals they didn't like to be banned."  MOOT_SMJN-94.  There were so many government requests that Twitter employees had to improvise a system for prioritizing them.  MOOT_SMJN-32-34, 59, 76.  To facilitate processing these requests, the FBI arranged for Top Secret security clearances for Twitter executives and paid Twitter millions of dollars for its staff time.  MOOT_SMJN-30, 36, 38, 173.

As detailed in the First Amendment Complaint ("FAC"), the Biden White House and other Executive Branch officials also pressured Defendants and other SMPs to censor content that deviated from the party line.  *See* Plaintiffs' Opening Brief at 10-17.  These officials made their displeasure known when Twitter's enforcement fell short of their expectations.  For example, in December 2022, Twitter's Head of U.S. Public Policy summarized the company's meetings with the Biden White House, writing that "the Biden Team was not satisfied with Twitter's enforcement approach, as they wanted Twitter to do more and to deplatform

5

several accounts," further describing the interaction as "very angry in nature"—
clear evidence of coercion. MOOT_SMJN-183.

### B. Musk's Tweets

Musk's own tweets commenting on the Twitter Files confirm the extent to
which Twitter was in cahoots with the government:

- "Government paid Twitter millions of dollars to censor info from the public." MOOT_SMJN-30.

- "US govt agency [within the State Department] demanded suspension of 250k accounts, including journalists & Canadian officials!" MOOT_SMJN-84.

- Responding to a Twitter user's tweet stating, "Twitter was basically an FBI subsidiary …," Musk tweeted "**True**." MOOT_SMJN-151 (emphasis added).

- "*Every* social media company is engaged in heavy censorship, with significant involvement of and, at times, explicit direction of the government." MOOT_SMJN-149.

- Responding to a Twitter File tweet stating "By 2020, requests from connected actors to delete tweets were routine. One executive would write to another: 'More to review from the Biden team.' The reply would

come back: 'Handled,'" Musk tweeted, "If this isn't a violation of the Constitution's First Amendment, what is?" MOOT_SMJN-155.

- "Twitter acting by itself to suppress free speech is not a 1st amendment violation, but acting under orders from the government to suppress free speech, with no judicial review, is." MOOT_SMJN-157.

- Responding to a Twitter user's tweet asking "[W]ere any political candidates—either in the US or elsewhere—subject to shadowbanning while they were running for office or seeking re-election?," Musk tweeted "Yes." MOOT_SMJN-159.

- Responding to a Twitter user's tweet stating, "one bizarre element of the twitter story, it's pretty clear at this point the 'trust and safety' team was effectively running the entire company," Musk responded, "Absolutely! The real CEO was the head of 'Trust and Safety.'" MOOT_SMJN-161.

- Responding to a Twitter user's tweet stating, "i think it's kinda not cool for the government to bribe social media companies into censoring specific content," Musk tweeted, "Your tax dollars at work …." MOOT_SMJN-171 (ellipsis in original).

- Responding to a Twitter user's tweet stating, "Twitter prioritized the censorship of non-illegal speech over the removal of child sexual abuse material at scale," Must tweeted "Exactly correct." MOOT_SMJN-163.

7

- Responding to a Twitter user's tweet stating, "Yoel Roth [Twitter's Head of Trust & Safety], meeting with FBI weekly, and his little censorship minions absolutely degraded Twitter into little more than a full-on Democratic Party activist machine, all while lying to the public about its function," Musk tweeted "There is no question that Twitter operated as a Democratic Party activist machine."  MOOT_SMJN-165.

- Responding to a Twitter user's tweet stating "@Twitter Files show Twitter activist employees, without basis, suppressed and censored the President of the United States … in the days before the 2020 election. This is damning evidence of election interference," Musk tweeted, "Unequivocally true.  The evidence is clear and voluminous." MOOT_SMJN-167.

- "I'm fine with Trump not tweeting.  The important thing is that Twitter correct a grave mistake in banning his account, **despite no violation of the law or terms of service**."  MOOT_SMJN-245 (emphasis added).

- "Twitter is both a social media company and a crime scene." MOOT_SMJN-169.

## C.    Congressional Testimony

In March 2023, the House Select Subcommittee on the Weaponization of the Federal Government held hearings on the Twitter Files and information obtained in

8

discovery by the Attorneys General for Missouri and Louisiana in a lawsuit against 67 government defendants who allegedly had coerced or colluded with social media platforms to suppress disfavored speakers and viewpoints. *State of Missouri v. Biden*, No. 22-cv-1213-TAD-KDM (W.D. La.). Among the witnesses called to testify were two of the journalists who had reviewed Twitter's internal files and published them on the platform, and the Special Assistant Attorney General for the Louisiana Department of Justice who is litigation counsel in *Missouri v. Biden*. Excerpts from their testimony are attached to the accompanying declaration. Fiala Decl. ¶¶ 63-66; MOOT_SMJN-202-39.

\* \* \* \* \*

By itself, this evidence would overwhelmingly defeat a motion to dismiss. *See, e.g., United States v. Rosenow*, 50 F.4th 715, 733 (9th Cir. 2022) (state action claim can be stated if plaintiff can plausibly allege "active participation or encouragement" by government agents). Taken together with the First Amended Complaint's ("FAC") allegations and previously submitted judicially noticeable facts, there can be no doubt that Plaintiffs have pleaded a viable claim that should be allowed to proceed.

**II.    The Submitted Exhibits Are Judicially Noticeable.**

**A.    Legal Standards for Judicial Notice**

Unsurprisingly, the courts have not addressed requests for judicial notice in circumstances identical to those presented here.  But Federal Rule of Evidence 201(b) prescribes general standards for granting judicial notice, not categories of specific noticeable documents.  A court may judicially notice information that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Judicial notice of properly presented materials is mandatory.  A court "***must*** take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2) (emphasis added).  New developments in a case are especially appropriate for appellate judicial notice.  *See, e.g., United States v. Lowell*, 649 F.2d 950, 966 n.26 (3d Cir. 1981) (normal rule limiting appeal to existing record "is subject to the right of an appellate court in a proper case to take judicial notice of new developments not considered by the lower court."); *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) ("[W]e take judicial notice of a number of developments since the taking of this appeal … since such circumstances may affect our consideration of the various issues presented.").

10

**B.** **Both the Disclosure and Contents of the Twitter Files Are Judicially Noticeable.**

Rule 201's conditions for taking judicial notice of the fact that the Twitter Files were released, as well as what they contain, are satisfied. First, Musk's release of the Twitter Files was widely reported, and that fact is "generally known within the … court's territorial jurisdiction." National media outlets ranging from CBS News to CNN to NBC News to The New Yorker published stories on the topic.[4] There is even a Wikipedia page detailing the Twitter Files story.[5]

Second, the authenticity of this information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Musk announced and endorsed each release of the Twitter Files. MOOT_SMJN-4, 8, 14,

---

[4] *See Elon Musk promotes release of internal Twitter documents rehashing platform's block of Hunter Biden story*, NBC News (Dec. 2, 2022), https://www.nbcnews.com/tech/tech-news/elon-musk-promotes-release-internal-twitter-documents-rehashing-platfo-rcna59897; *Musk releases "Twitter Files" about platform's inner workings*, CNN Business (Dec. 3, 2022), https://edition.cnn.com/videos/business/2022/12/03/smr-musk-taibbi-twitter-files.cnn; *Twitter Files: What they are and why they matter*, CBS News (Dec. 14, 2022), https://www.cbsnews.com/news/twitter-files-matt-taibbi-bari-weiss-michael-shellenberger-elon-musk/; *The real revelation from the 'Twitter Files': Content moderation is messy*, CNN (Dec. 14, 2022), https://www.cnn.com/2022/12/14/tech/twitter-files-content-moderation/index.html; *What the Twitter Files Reveal About Free Speech and Social Media*, THE NEW YORKER (Jan. 11, 2023).

[5] *Twitter Files*, WIKIPEDIA (last updated Mar. 12, 2023), https://en.wikipedia.org/wiki/Twitter_Files#cite_note-:16-4.

30, 44, 83, 96, 153. The six journalists who posted the content were hand-picked by Musk and acted as his agents for this purpose.[6] All this material was published on Twitter; its existence and content can be readily ascertained by checking the Twitter website at the links provided in the Fiala Declaration. The source materials copied in the Twitter Files are Twitter's own internal documents, and Twitter can easily verify their accuracy. It is inconceivable that Twitter's lawyers would contradict Musk's public statements by disputing the Twitter Files' authenticity. *See, e.g., Vitt v. Apple Computer, Inc.*, 2007 WL 9662403, at *2 (C.D. Cal. Mar. 12, 2007) (taking judicial notice of statements on defendant's website; "As such, it is difficult to believe that Defendant intends to argue any of the alleged statements was not made."). Because these facts can be readily ascertained from sources whose accuracy (as to those facts) cannot be reasonably questioned, the judicial notice standards are satisfied. Fed. R. Evid. 201(b)(2).

---

[6] An agency relationship arises "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Musk's granting a handful of journalists access to Twitter's "free speech suppression" files and allowing them to publish material from those files on Twitter, coupled with Musk's explicit endorsements of the Twitter Files tweets, arguably made the journalists his agents for these limited purposes. *See, e.g., Mavrix Photographs, LLC v. Lifejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (reasonable jurors could conclude that agency relationship existed between social media platform and volunteer "moderators" who reviewed posts to ensure compliance with platform's rules).

Plaintiffs seek judicial notice of the Twitter Files' content for the fact that it exists, not for the truth of the matters stated. Federal officials' instructions to censor speech comprise *verbal acts*—statements that carry legal significance independent of the truth or falsity of the matters asserted therein. "[O]ut-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay. They are considered 'verbal acts.'" *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). A "verbal act" is a statement that "itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992); *see also Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (verbal acts doctrine applies where "legal consequences flow from the fact that the words were said").

When the FBI's national office sent a list of 25 Twitter accounts that "warrant additional action due to the accounts being utilized to spread misinformation about the upcoming election" to Assistant Special Agent in Charge Elvis Chan of the FBI's San Francisco Field Office (MOOT_SMJN-22), the sender's veracity did not matter. When ASAC Chan in turn emailed Twitter requesting censorship of those user accounts (MOOT_SMJN-24), his truthfulness was not at issue. These government requests to censor disfavored speech have independent legal significance because they occurred, and their occurrence cannot

13

reasonably be disputed. *See Robinson v. Salazar*, 838 F.Supp.2d 1006, 1031 n.11 (E.D. Cal. 2012) (court took judicial notice of correspondence with defendant for the fact that correspondence occurred).

### C.      Musk's Tweets Are Party Admissions.

Just like the Twitter Files, Musk's tweets are judicially noticeable for the content of his statements. In addition, the fact that Musk is Twitter's owner and CEO makes his statements party admissions. "[A] statement made by a party's agent or servant may be introduced against that party if it concerns a matter within the scope of the agency or employment and was made during the existence of the relationship." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458 (9th Cir. 1990). As such, Musk's tweets are noticeable for their truth. "[P]arty admissions may be judicially noticed for the truth of the matter if requested by the opposing party." *Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, at *5 (N.D. Cal. Jul. 10, 2019); *see also Rashid v. BMW of North America, LLC*, 2020 WL 5640734, at *2 (S.D. Cal. Sept. 22, 2020) (taking judicial notice of statements in auto leasing application as party admissions).

**D.  Congressional Testimony Is Noticeable as an Official Government Record.**

The testimony given at the March 2023 Hearing is posted on the official House Judiciary Committee website.  Fiala Decl. ¶¶ 63-66; MOOT_SMJN-60, 61, 62.  Facts contained in public records are considered appropriate subjects of judicial notice, including the records and reports of administrative bodies.  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *United States v. Ritchie,* 342 F.3d 903, 909 (9th Cir. 2003).  The Court "may take judicial notice of publicly available congressional records, including transcripts of congressional hearings."  *Rojas v. Federal Aviation Admin.*, 927 F.3d 1046, 1051 n.1 (9th Cir. 2019).  The Court also may take notice of "official information posted on a governmental website, the accuracy of which [is] undisputed."  *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015); *Dudum v. Arntz*, 640 F.3d 1098, 1101 n. 6 (9th Cir. 2011) (same).

Defendants cannot credibly argue to the contrary.  They also asked this Court to take notice of testimony given before a House of Representatives committee hearing.  See Defendants-Appellees' Unopposed Motion for Judicial Notice at 3-5 & Ex. A.

## III.  The Exhibits Are Highly Relevant to Issues in This Case.

The relevance of the judicial notice exhibits is apparent on their face.  These materials directly substantiate Plaintiffs' allegation that government actors coerced, encouraged, and acted jointly with Defendants to censor Plaintiffs' protected speech in violation of the First Amendment.  These are the central issues in Plaintiffs' appeal from the District Court's dismissal of the First Amendment claim on the ground that Plaintiffs have not plausibly alleged state action.  Defendants had in their possession all along evidence that would have satisfied any pleading standard and kept it hidden—it only became available to Plaintiffs though an unprecedented voluntary disclosure from Defendants' own files.  This information strongly reinforces the plausibility of Plaintiffs' First Amendment claim and the need for discovery to elicit further corroborating evidence.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their supplemental motion for judicial notice.

Date: May 5, 2023          LAW OFFICE OF ANDREI D. POPOVICI, P.C.

*s/ Marie L. Fiala*
Marie L. Fiala
*Attorneys for Appellants*
*Donald J. Trump, American Conservative*
*Union, Rafael Barbosa, Linda Cuadros,*
*Dominick Latella, and Wayne Allyn Root*

16

JOHN P. COALE
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

RICHARD POLK LAWSON
GARDNER BREWER HUDSON
400 North Ashley Drive
Suite 1100
Tampa, FL 33602
Telephone: (813) 221-9600
Facsimile: (813) 221-9611
Email: rlawson@gardnerbrewer.com

JOHN Q. KELLY
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Telephone: (203) 896-4504
Email: jqkelly@fercolaw.com

ALEX KOZINSKI
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Email: alex@kozinski.com

FRANK C. DUDENHEFER, JR.
THE DUDENHEFER LAW FIRM L.L.C.
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

MICHAEL J. JONES
RYAN TOUGIAS
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number(s): No. 22-15961**

I am the attorney for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root.

**This brief contains 3,351 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Fed. R. App. P. 27(d)(2) and the page limit of Cir. R. 27-1(1).

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signatur**e: *s/ Marie L. Fiala*           **Date:** May 5, 2023