**Case No. 22-15961**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, the Forty-Fifth President of the United States;
LINDA CUADROS; AMERICAN CONSERVATIVE UNION; RAFAEL BARBOSA;
DOMINICK LATELLA; WAYNE ALLYN ROOT; NAOMI WOLF,
*Plaintiffs-Appellants,*

v.

TWITTER, INC.; JACK DORSEY,
*Defendants-Appellees,*

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

---

*Appeal from the United States District Court for the Northern District of California (San Francisco),
Case No. 3:21-cv-08378-JD · The Honorable James Donato, District Judge*

## APPELLANTS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' SUGGESTION OF MOOTNESS

JOHN P. COALE
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
alex@kozinski.com

ANDREI POPOVICI
MARIE L. FIALA
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Facsimile: (650) 530-9990
andrei@apatent.com
marie@apatent.com

*Attorneys for Plaintiffs-Appellants,
Donald J. Trump, the Forty-fifth President of the United States;
Linda Cuadros; American Conservative Union; Rafael Barbosa;
Dominick Latella; Wayne Allyn Root*

**Additional Counsel Listed on Signature Page**

 

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

PROCEDURAL BACKGROUND.....................................................................3

ARGUMENT ..................................................................................................3

    I.    The Voluntary Cessation Doctrine....................................................3

        A.    The Mere Fact That a Defendant Voluntarily Ceased the
Challenged Conduct Does Not Render a Case Moot................3

        B.    Defendants Face a "Formidable Burden" in Establishing
Mootness. .....................................................................5

    II.    Evidentiary Defects ........................................................................6

        A.    Defendants Have Presented Twitter's Content Moderation
Practices in a False Light. ..............................................6

        B.    Defendants' Evidentiary Showing Has Failed.........................10

            1.    The Extent to Which This Lawsuit Factored into
Twitter's Decision to Reinstate Plaintiffs' Accounts .....10

            2.    Whether Twitter Has Ceased the Other Censorship
Practices Alleged in the FAC .........................................12

            3.    Whether Twitter's Previous Practices Can "Reasonably
Be Expected to Recur" ...................................................13

CONCLUSION..............................................................................................16

# TABLE OF AUTHORITIES

## CASES Page(s)

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ............................................................................5

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ............................................5, 10, 13

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) .........................................................4

*Brach v. Newsom*,
  6 F.4th 904 (9th Cir. 2021) ..............................................................5

*City News & Novelty, Inc., v. City of Waukesha*,
  531 U.S. 278 (2001) ..........................................................................4

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ..........................................................................5

*Coral Constr. Co. v. King County*,
  941 F.2d 910 (9th Cir.1991) ...........................................................14

*Fikre v. FBI*,
  904 F.3d 1033 (9th Cir. 2018) .........................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ..............................................................4, 5, 13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
  906 F.2d 432 (9th Cir. 1990) ...........................................................7

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
  567 U.S. 298 (2012) ..........................................................................4

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) ...........................................4, 5, 10, 11

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ...........................................................5

*Rosemere Neighborhood Ass'n v. U.S. Env. Protection Agency*,
  581 F.3d 1169 (9th Cir. 2009) .........................................................6

*Wall v. Wade*,
    741 F.3d 492 (4th Cir. 2014)..........................................................................4, 11

**STATUTES**

Fed. R. Evid. 801 ...........................................................................................11

**OTHER AUTHORITIES**

*Hunter Biden finally admits infamous laptop is his as he pleads for criminal
probe*, THE NEW YORK POST (Feb. 1, 2023),
https://nypost.com/2023/02/01/hunter-biden-admits-infamous-laptop-is-his-
in-plea-for-probe/. ..........................................................................................15

## INTRODUCTION

Defendants' Suggestion of Mootness asserts that certain Plaintiffs' claims are moot because their access to the Twitter platform has been reinstated. The gist of the argument is that Twitter originally exercised its independent business judgment in closing Plaintiffs' accounts and recently voluntarily reinstated them pursuant to "a new policy by new management." Brief for Appellees Twitter, Inc. and Jack Dorsey ("Def. Br.") at 22. Therefore, Defendants say—with no factual support—there is no possibility that the challenged conduct will reoccur.[1]

The representations made in Defendants' briefing are not credible, casting doubt on the veracity of their entire submission. Twitter asserts that it banned Plaintiffs from its platform pursuant to its "editorial decision that it no longer wished to disseminate Plaintiffs' content," Def. Br. at 1, and because Plaintiffs had "violated the Twitter Rules." Def. Br. at 5. Those statements are contradicted by recently released secret Twitter communications with numerous federal officials, including law enforcement agents, showing that Twitter and the government worked hand in glove to suppress constitutionally protected speech for political

---

[1] Defendants' mootness argument is directed at Plaintiffs Donald J. Trump, Linda Cuadros, and Wayne Allyn Root, and separately represented Plaintiff Naomi Wolf. Plaintiffs American Conservative Union's, Rafael Barbosa's, and Dominick Latella's claims are unaffected by the Suggestion. The Suggestion refers the Court to Defendants' principal brief, which devotes six pages to arguing mootness. *See* Def. Br. at 18-23.

ends. The "Twitter Files," which were made public after Elon Musk acquired Twitter in October 2022, show that Twitter's decisions to ban thousands of users from the Twitter platform were made in response to specific instructions from legislators and multiple government agencies.[2] These revelations undermine the credibility of Defendants' representations—particularly that the disputed conduct is unlikely to reoccur—and highlight the risk that Twitter will again cave to or join with government official's censorship agenda, especially as the 2024 election cycle gears up.

Moreover, the Suggestion fails for lack of proof. Counsel's declaration in support of the Suggestion shows only that the four Plaintiffs' Twitter accounts have been reinstated "pursuant to" an online poll and an "amnesty program," which is not described. Holtzblatt Decl., Exs. B and D. Defendants supply no evidence on key elements of the mootness analysis, including the extent to which the existence of this litigation played into Twitter's decision to reinstate the accounts; whether Twitter has ceased using other means of censorship alleged in the First Amended Complaint ("FAC"), including "shadow banning," adjusting algorithms to suppress or de-emphasize speakers or messages, and flagging or

---

[2] Excerpts from the Twitter Files, Elon Musk's tweets that commented on their contents, and a recent congressional hearing investigating the Twitter Files are attached to the Declaration of Marie L. Fiala in Support of Appellants' Response in Opposition to Appellees' Suggestion of Mootness and Appellants' Supplemental Motion for Judicial Notice and are cited as "MOOT_SMJN-xx."

placing warning labels on content (3-ER-327, 354-61, 365, 367-68, 375); and facts establishing that Twitter's violations will not reoccur in the future. Most striking is Defendants' failure to provide a declaration from Elon Musk attesting to the purported changes he has made to Twitter's content moderation policies or his intentions going forward. Given that Musk is the client here, such a declaration should have been easily procured. Its absence speaks louder than the conclusory assertions made in Defendants' brief.

## PROCEDURAL BACKGROUND

Defendants rely on the fact that the District Court denied separately represented Plaintiff Naomi Wolf's Rule 60(b) motion for an indicative ruling on the ground that Ms. Wolf's claim had been mooted by the reinstatement of her Twitter account. Def. Br. at 15. The Plaintiffs on whose behalf this response is filed did not participate in Ms. Wolf's motion.

## ARGUMENT

### I. The Voluntary Cessation Doctrine

#### A. The Mere Fact That a Defendant Voluntarily Ceased the Challenged Conduct Does Not Render a Case Moot.

Defendants submit that the affected Plaintiffs' claims became moot because Twitter reinstated their accounts after Elon Musk bought the company. That is not the law. "The voluntary cessation of challenged conduct ordinarily does not render a case moot because a dismissal for mootness would permit a resumption of the

challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012); *see also City News & Novelty, Inc., v. City of Waukesha*, 531 U.S. 278, 284 (2001) ("[V]oluntary cessation of a challenged practice ***rarely moots*** a federal case ….) (emphasis added). A claim of mootness is viewed with particular suspicion in situations where a defendant voluntarily deprives a plaintiff of his or her stake in the litigation. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (internal quotation marks omitted); *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) ("[V]oluntary cessation of challenged conduct does not necessarily render a case moot because, if the case were dismissed as moot, the defendant would be free to resume the conduct.").

That defendant made the change after a complaint challenging the conduct was filed "strongly indicates that the change was at least somewhat related to the … pending lawsuit." *Wall v. Wade*, 741 F.3d 492, 498 n.8 (4th Cir. 2014); *see also Porter v. Clarke*, 852 F.3d 358, 364 n.3 (4th Cir. 2017) (when policy changes were made only after case was initiated and after defendants' "vigorous resistance to changes," the relationship to litigation was established and voluntary cessation

4

exception applied). And cessation of the disputed activity need only be "at least somewhat related to the pending litigation for the voluntary cessation exception to apply." *Id*.

**B. Defendants Face a "Formidable Burden" in Establishing Mootness.**

Voluntary cessation of a challenged practice can yield mootness *only if a "stringent" standard is met*: "A case might become moot if subsequent events made it **absolutely clear** that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189) (emphasis added).

The party asserting mootness bears the "formidable burden" of establishing this element. *Friends of the Earth*, 528 U.S. at 190. *See also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (same); *Brach v. Newsom*, 6 F.4th 904, 919 (9th Cir. 2021) (same); *Rosebrock*, 745 F.3d at 971 (same). The Supreme Court has held that a defendant satisfies this heavy burden when, for example, it enters into an "unconditional and irrevocable" agreement that prohibits it from returning to the challenged conduct. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013); *see also Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (defendant may satisfy this heavy burden by "persuading court that 'the change in its behavior is "**entrenched**" or "**permanent**."'") (citing *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018))

(emphasis added). Defendants have not alleged *any* agreement not to repeat their wrongful conduct, much less an irrevocable one. Indeed, nothing they have said to the Court precludes them from permanently suspending Plaintiffs' accounts anytime Musk, or whoever owns Twitter in the future, chooses to do so.

Defendants turn the burden of proving mootness on its head, arguing that Plaintiffs have presented "no evidence that the challenged conduct will reoccur." Def. Br. at 22. But it is Defendants who bear the burden of proving that the conduct will *not* reoccur, not Plaintiffs' burden to prove the opposite. As explained in *Rosemere Neighborhood Ass'n v. U.S. Env. Protection Agency*, 581 F.3d 1169 (9th Cir. 2009), a defendant's argument that the prospect of reoccurrence is "speculative,"

> impermissibly shifts the burden to [plaintiff] to defeat mootness. As we have stated, it is the EPA that bears the "heavy burden" in this case. The EPA cannot meet this burden solely by claiming that [plaintiff] has not done enough to show likelihood of [reoccurrence]. Rather, the EPA must demonstrate why repetition of the wrongful conduct is highly unlikely. … **The EPA's attempt to reverse this burden is insufficient to show mootness.**

*Id*. at 1173-74 (citations omitted) (emphasis added).

## II.    Evidentiary Defects

### A.    Defendants Have Presented Twitter's Content Moderation Practices in a False Light.

Assessing the likelihood that Defendants' challenged conduct will reoccur requires understanding what motivated it in the first place. Defendants represent

that they censored Plaintiffs' and other users' accounts based on their own "editorial decision," Def. Br. at 1, and reinstated Plaintiffs due to a simple change in "economic/business considerations," *id*. at 20-21, thereby implying that Defendants make content moderation decisions entirely on their own and thus control what happens in the future. The truth is vastly different. In a series of tweets accompanying the Twitter Files' release, Elon Musk admitted that:[3]

- "Government paid Twitter millions of dollars to censor info from the public." MOOT_SMJN-30.

- "US govt agency [within the State Department] demanded suspension of 250k accounts, including journalists & Canadian officials!" MOOT_SMJN-84.

- Responding to a Twitter user's tweet stating, "Twitter was basically an FBI subsidiary …," Musk tweeted "**True**." MOOT_SMJN-151 (emphasis added).

- "Twitter acting by itself to suppress free speech is not a 1st amendment violation, but **acting under orders from the government to suppress**

---

[3] The fact that Musk is Twitter's owner and CEO make these statements binding on Twitter. "[A] statement made by a party's agent or servant may be introduced against that party if it concerns a matter within the scope of the agency or employment and was made during the existence of the relationship." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458 (9th Cir. 1990).

**free speech, with no judicial review, is**." MOOT_SMJN-157 (emphasis added).

- Responding to a Twitter user's tweet asking "**[W]ere any political candidates**—either in the US or elsewhere—**subject to shadowbanning** while they were running for office or seeking re-election?," Musk tweeted "**Yes.**" MOOT_SMJN-159 (emphasis added).

- Responding to a Twitter user's tweet stating "Yoel Roth [Twitter's Head of Trust & Safety], meeting with FBI weekly, and his little censorship minions absolutely degraded Twitter into little more than a full-on Democratic Party activist machine, all while lying to the public about its function," Musk tweeted "**There is no question that Twitter operated as a Democratic Party activist machine.**" MOOT_SMJN-165 (emphasis added).

- Responding to a Twitter user's tweet stating "@Twitter Files show Twitter activist employees, without basis, suppressed and censored the President of the United States … in the days before the 2020 election. **This is damning evidence of election interference**," Musk tweeted, "**Unequivocally true.  The evidence is clear and voluminous.**" MOOT_SMJN-167 (emphasis added).

- "I'm fine with Trump not tweeting. The important thing is that Twitter correct a grave mistake in banning his account, **despite no violation of the law or terms of service**." MOOT_SMJN-245 (emphasis added).

The internal documents released in the Twitter Files show, among other things, that censorship requests poured into Twitter from multiple sources, including the Senate Select Committee on Intelligence, State Department, Treasury, HHS, Pentagon, FBI, CIA, NSA, DHS, virtually every state, and even local police. MOOT_SMJN-10, 12, 16, 78, 80, 86-90, 92, 204-05. Twitter executives met weekly with federal law enforcement, including the FBI, DHS, and the Office of the Director of National Intelligence. MOOT_SMJN-12, 16, 51-55, 100. The FBI acted as a conduit for mountains of content moderation requests, overwhelming Twitter with lists of hundreds of "problem" accounts. MOOT_SMJN-18, 22, 24, 46-47, 49-50, 56-59, 72, 74, 80, 82, 100-01. Among these was "an astonishing variety of requests from officials asking for individuals they didn't like to be banned." MOOT_SMJN-94. There were so many government requests that Twitter employees had to improvise a system for prioritizing them. MOOT_SMJN-32-34, 59, 76. To facilitate processing these requests, the FBI arranged for Top Secret security clearances for Twitter executives and paid Twitter millions of dollars for its staff time. MOOT_SMJN-30, 36, 38, 173. Moreover, Defendants' Terms of Service defense has been

9

eviscerated by Musk's admission that Twitter suspended President Trump's account "despite no violation of the law or terms of service" and by the Twitter Files. MOOT_SMJN-185, 187, 189, 191, 193, 195, 245.

This reality behind Plaintiffs' banishment from the Twitter platform is vastly different from the sanitized picture Defendants' lawyers paint in their brief. Like the proverbial thirteenth chime of the clock, these revelations call into question Defendants' bland assurances that they will toe the line if Plaintiffs' claims are dismissed.

### B. Defendants' Evidentiary Showing Has Failed.

Defendants have submitted no evidence to meet their "heavy burden," *Am. Diabetes Ass'n*, 938 F.3d at 1152, on the following issues, which are central to the mootness determination. As noted above, their failure to present a declaration from Musk, explaining his reasons for reinstating some (but not all) Plaintiffs' accounts and the steps taken to prevent similar abuses in the future, dooms the Suggestion.

### 1. The Extent to Which This Lawsuit Factored into Twitter's Decision to Reinstate Plaintiffs' Accounts

Cessation of the disputed activity needs only be "***somewhat related*** to the pending litigation for the voluntary cessation exception to apply." *Porter*, 852 F.3d at 364 n.3 (emphasis added). Where, as here, the change is made after a complaint challenging the conduct was filed, the timing alone "strongly indicates"

that the change was related to the pending lawsuit. *Wall,* 741 F.3d at 498 n.8 (4th Cir. 2014); *see also Porter*, 852 F.3d at 364 n. 3 (same).

Defendants' factual showing is largely silent on this point. The only evidence on this issue are two brief unsworn tweets by Elon Musk, stating that "Trump will be reinstated" and "Amnesty begins next week."[4] Holtzblatt Decl., Exs. B and D. Defense counsel adds a carefully worded assertion that "Twitter's change[s] …[were] motivated by 'economic/business considerations,'" Def. Br. at 20, from which the word "only" is conspicuously missing. This is thin gruel. Nothing Defendants have presented by way of evidence (as opposed to bald assertions in their briefs) establishes that Musk's decisions were based *solely* (or at all) on a "business judgment" or "new management policy," explains the purported "amnesty" program, or denies that Musk's actions were influenced by this litigation. Since Musk is their client, defense counsel easily could have presented his sworn declaration instead of their speculation about his motives and intentions. That they did not suggests that Musk was unwilling to swear to what his lawyers now claim on his behalf, probably because any such denial would have been implausible. Musk unquestionably knew about this litigation at the time he acquired the company and subsequently implemented the so-called "amnesty

---

[4] While Plaintiffs may rely on Musk's unsworn tweets as adverse party admissions, *see supra* at 7 n.3, Defendants cannot. Fed. R. Evid. 801(d)(2).

program."[5]  Reinstating some of Plaintiffs' Twitter accounts was one obvious means of reducing the company's litigation risk.  Not even in his unsworn tweets has Musk said anything to the contrary.

In summary, there is no record evidence, much less conclusive proof, that Twitter's reinstatement of Plaintiffs' accounts was not "somehow related" to this case, and common-sense counsels otherwise.[6]  Indeed, the failure to present such evidence, when it would have been readily available to the Defendants, establishes the contrary.

### 2. Whether Twitter Has Ceased the Other Censorship Practices Alleged in the FAC

Plaintiffs' claims are not limited to suspension of their accounts.  The FAC alleges that they and other similarly situated users were subjected to censorship by various means, including "shadow banning," adjusting algorithms to suppress or de-emphasize speakers or messages, and flagging or placing warning labels on content.  3-ER-327, 354-61, 365, 367-68, 375.  Defendants' Suggestion says nothing about whether Twitter has halted these disputed practices.

---

[5] That Plaintiffs Barbosa's and Latella's accounts have not been reinstated despite requests to do so—including one request by Barbosa after Plaintiff Trump's account was reinstated—demonstrates that no "general amnesty" policy, Suggestion at 1, has been implemented.  *See* MOOT_SMJN-241, 243.

[6] Even if Defendants were to submit a carefully worded declaration to this effect, Plaintiffs should have the opportunity to take discovery and conduct cross-examination on this issue.

In fact, their submission suggests the contrary. Defendants admit that Plaintiffs seek an injunction ordering Twitter to remove warning labels on and misclassifications of Plaintiffs' content, and to desist from those practices in the future. Def. Br. at 19-20. While Defendants claim that Twitter has extinguished its warning label policy regarding COVID-19, they describe a new substitute in the very next sentence. Instead of a "misleading information" label, the company will now, at its sole discretion, apply a label "add[ing] context to potentially misleading Tweets," Def . Br. at 21, a distinction without a difference. Defendants do not even suggest that this new label will be applied universally, evenhandedly, or pursuant to any objective criteria. Substituting one form of labelling for another equally arbitrary form is hardly meaningful "cessation."

### 3. Whether Twitter's Previous Practices Can "Reasonably Be Expected to Recur"

Twitter also has made no showing that its previous censorship could not "reasonably be expected to recur," let alone making it "absolutely clear," *Friends of the Earth*, 528 U.S. at 189, that "the change in its behavior is 'entrenched' or 'permanent.'" *Am. Diabetes Ass'n*, 938 F.3d at 1152. Nor could such a finding fairly be made at this juncture, when Plaintiffs have had no discovery into Twitter's internal decision-making and are unable to cross-examine any self-serving assertions Twitter might make in its reply brief in support of its Suggestion.

According to Defendants' counsel, Twitter apparently has voluntarily made a "business judgment" and adopted a "different business vision," Suggestion at 2-3, that led to reinstatement of some Plaintiffs' accounts. But counsel is not an officer or even an employee of Twitter; how he can claim this is a mystery. He certainly has no authority to bind Defendants. Twitter remains free to alter its internal policies and decisions at any time; nothing in Defendants' submission prevents it from doing so.[7] For instance, Defendants say that Mr. Trump's account was reinstated based on the outcome of a poll conducted on the Twitter website. Suggestion at 1; Sebhatu Decl., ¶ 3. Not only is this inconsistent with their claim that the reinstatement was the result of a change in policy, it does not preclude Musk from taking another poll where Twitter's users (bolstered by bots)[8] vote to remove Mr. Trump from the platform. The former President's constitutional exercise of free speech should not be left to the caprices of a Twitter poll.

The advent of the 2024 presidential election highlights the risk of reoccurrence. Government direction of Twitter's content moderation reached a

---

[7] An injunctive relief claim is not necessarily mooted even where *a governmental defendant* formally changes a contested statute or ordinance. "[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision." *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir.1991).

[8] A bot is an autonomous program that controls a Twitter account via the Twitter software interface. The bot software may autonomously perform actions such as tweeting, re-tweeting, liking, following, unfollowing, or direct messaging other accounts.

fever pitch in connection with the 2020 presidential election. In the months leading up to the election the FBI and Twitter cooperated extensively to suppress reporting about Hunter Biden's laptop, which contained evidence of his and Joe Biden's shady business dealings with China. MOOT_SMJN-6, 10, 12, 19-20, 40, 42, 74. Despite having been suppressed as "fake news" at the time, the story has since been proven every bit true.[9] Twitter's joint action with the FBI to suppress this story was overtly political, taken to tilt the 2020 election against Plaintiff Donald J. Trump.

Now that Mr. Trump has announced his intention to run again in 2024, there is heightened risk that Twitter's challenged practices will be repeated, especially if Twitter and its Democratic masters believe they once again need to tighten the screws to influence the outcome of the next election. There is no reason to believe that these government agencies stopped regarding Twitter as their censorship lapdog once Musk acquired the company, nor is it reasonable to assume that Twitter will not again bow to government pressure or importuning, particularly coming from law enforcement agencies such as the FBI. Whatever Musk's political leanings or the extent of his good will, he cannot scrutinize every content

---

[9] Hunter Biden has admitted that the laptop was his. *See Hunter Biden finally admits infamous laptop is his as he pleads for criminal probe*, THE NEW YORK POST (Feb. 1, 2023), https://nypost.com/2023/02/01/hunter-biden-admits-infamous-laptop-is-his-in-plea-for-probe/.

moderation decision made by thousands of Twitter employees. And what if Musk decides to sell Twitter or cease operating as its CEO?[10] Only an injunction can protect against future abuses.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Suggestion of Mootness be denied.

Date: May 5, 2023 LAW OFFICE OF ANDREI D. POPOVICI, P.C.

*s/ Marie L. Fiala*
Marie L. Fiala
*Attorneys for Appellants*
*Donald J. Trump, American Conservative*
*Union, Rafael Barbosa, Linda Cuadros,*
*Dominick Latella, and Wayne Allyn Root*

JOHN P. COALE
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Email: alex@kozinski.com

---

[10] Which Musk has announced, once again as a result of a Twitter poll, that he will do as soon as he finds a successor. Musk's tweets creating the poll and announcing his decision appear at:
https://twitter.com/elonmusk/status/1604617643973124097 and
https://twitter.com/elonmusk/status/1605372724800393216.

RICHARD POLK LAWSON
GARDNER BREWER HUDSON
400 North Ashley Drive
Suite 1100
Tampa, FL 33602
Telephone: (813) 221-9600
Facsimile: (813) 221-9611
Email: rlawson@gardnerbrewer.com

JOHN Q. KELLY
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Telephone: (203) 896-4504
Email: jqkelly@fercolaw.com

FRANK C. DUDENHEFER, JR.
THE DUDENHEFER LAW FIRM L.L.C.
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

MICHAEL J. JONES
RYAN TOUGIAS
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number(s): No. 22-15961**

I am the attorney for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root.

**This brief contains 3,523 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Fed. R. App. P. 27(d)(2) and the page limit of Cir. R. 27-1(1).

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [  ] it is a joint brief submitted by separately represented parties;
  [  ] a party or parties are filing a single brief in response to multiple briefs; or
  [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signatur**e: *s/ Marie L. Fiala*          **Date:** May 5, 2023