No. 22-15961

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, et al.,
*Plaintiffs-Appellants*,

v.

TWITTER, INC. AND JACK DORSEY,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California, No. 3:21-cv-08378-JD (Donato, J.)

**APPELLEES TWITTER, INC. AND JACK DORSEY'S
REPLY IN SUPPORT OF THEIR SUGGESTION OF MOOTNESS**

FELICIA H. ELLSWORTH
ZAKI ANWAR
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02190
(617) 526-6000

RISHITA APSANI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

ARI HOLTZBLATT
ALLISON M. SCHULTZ
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue
Washington, DC 20037
(202) 663-6000

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
(650) 858-6000

May 19, 2023

There is no dispute that Twitter has reinstated the accounts of Donald Trump, Linda Cuadros, Wayne Root, and Naomi Wolf and that Twitter has not placed any warning or disclaimer on any of their Tweets. Plaintiffs have thus received the relief they sought. Attempting to avoid this simple truth, Plaintiffs try to move the goalposts, ushering a new set of grievances. Wolf protests that Twitter has yet to apologize for suspending her account or pledge that it will stop censoring her and that she has trouble logging into her account. And the other Plaintiffs take issue with Twitter's use of algorithms generally as well as its new Community Notes feature. But again, Twitter has not taken any content-moderation or de-amplification actions of any sort in regards to the reinstated accounts, and Plaintiffs' Complaint never sought relief for anything else. And, regardless, Plaintiffs have not offered any evidence whatsoever that their novel allegations are the result of government coercion or collusion, the crux of their state-action theories.[1]

Plaintiffs further argue that both the voluntary-cessation and capable-of-repetition-yet-evading-review exceptions to mootness apply, but both exceptions rely upon a reasonable probability that Twitter will suspend Plaintiffs' accounts again. Because reinstatement was due to a bona fide change in business strategy

---

[1] As indicated in the recently filed supplemental corporate disclosure statement, Twitter, Inc. has been merged into X Corp. and no longer exists. For purposes of this litigation, however, Defendants will continue to refer to the corporate entity as "Twitter."

following Elon Musk's acquisition of Twitter, any claim that Twitter will reverse course is purely speculative. Indeed, if the so-called "Twitter Files" demonstrate anything at all, it is that Musk has swiftly and definitively reoriented Twitter's strategic vision, proving yet again that the reinstatement of Plaintiffs' accounts had nothing to do with this lawsuit. The Court should accordingly dismiss the First Amendment claims of Trump, Cuadros, Root, and Wolf.[2]

## ARGUMENT

### A. Plaintiffs Have Received All of the Relief They Sought

Donald Trump, Linda Cuadros, Wayne Root, and Naomi Wolf's First Amendment claims for injunctive relief are moot because they have already received all the relief they sought. Plaintiffs sought "[a]n injunction … ordering Twitter to immediately reinstate the[ir] Twitter accounts." 3-ER-380. They also sought "[a]n injunction … ordering Twitter to remove its warning labels and misclassification of all [their] content … and to desist from any further warnings or classifications." *Id.* But Twitter has since reinstated the accounts of Plaintiffs Trump, Cuadros, Root, and Wolf. *See* Sebhatu Decl. ¶¶3, 5, 7, 9; Holtzblatt Decl. Exs. F, G, H, I. And, since being reinstated, Twitter has affixed no labels to these Plaintiffs' Tweets and

---

[2] On May 12, 2023, Musk announced that NBCUniversal executive Linda Yaccarino will become the new CEO of Twitter, with Musk serving as Executive Chair and Chief Technology Officer. This will not result in a different content-moderation strategy for Twitter, a company that will still be owned by Musk and led by a person chosen by Musk.

has not taken any new content-moderation enforcement actions against their accounts. *See* Sebhatu Decl. ¶¶3, 5, 7, 9.

### B. Plaintiffs Cannot Rely Upon a Claim for Damages or New Prayers of Relief to Preserve Jurisdiction

Plaintiffs do not dispute any of the foregoing facts, which are sufficient to establish mootness. Instead, they marshal a new set of unsubstantiated grievances that lack basis in either the Complaint or in reality.

Appellant Wolf argues that Twitter "has not pledged to stop censoring Dr. Wolf" or "apologized for its past actions." C.A. Dkt. 78 at 5 ("Wolf Opp."). She also claims that she "continues to get locked out of her verified Twitter account" and is "often re-directed" to another account that has "virtually no reach." *Id.* As a threshold matter, Wolf has offered no evidence that any of these alleged problems are the result of government coercion or collusion, as required by her state-action theories. But regardless, Twitter reiterates that it has taken *no* content-moderation or de-amplification actions against Wolf's account since reinstatement.

Moreover, Wolf's Complaint never requested that Twitter apologize to her, make any sort of pledge, or remedy any issues with her login process. Instead, Wolf requested that Twitter reinstate her account and "desist from any further warnings or classifications." 3-ER-380. There is no dispute that Twitter has done exactly that, regardless of what a reason.com article has to say about social media generally. *Contra* Wolf Opp. 7. Because Wolf is no longer threatened with "an actual injury

3

[that is] traceable to the defendant," and that is "'likely to be redressed by a favorable judicial decision,'" her first Amendment claim is moot. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

The same is true for the other named Plaintiffs. They argue that their claims were not limited to reinstatement but also "[being] subjected to censorship by various means" including the use of "algorithms to suppress or de-emphasize speakers or messages." C.A. Dkt. 90 at 12 ("Trump Opp."). But again, Plaintiffs fail to establish that any such actions are the result of government coercion or collusion as is required by their claim. Regardless, Twitter's sworn declaration establishes that it has taken no content-moderation actions of any type against these Plaintiffs either. *See* Sebhatu Decl. ¶¶3, 5, 7, 9. Moreover, as with Wolf's claim, Plaintiffs' prayer for relief only requested that Twitter "immediately reinstate" Plaintiffs' accounts and "remove its warning labels and misclassification" on those accounts, both of which Plaintiffs do not dispute has happened. 3-ER-380.

Finally, Plaintiffs' complaint (Trump. Opp. 13) that Twitter has announced a "new substitute" for its COVID-19 warning-label policy is likewise irrelevant. Plaintiffs do not even suggest that Twitter's new policy has been applied to them and thus the policy cannot constitute an injury sufficient to preserve jurisdiction. And, regardless, Plaintiffs' contention that the policy creates a "distinction without a difference," *id.*, is belied by the record. As Twitter explained, its new Community

4

Notes features is a grassroots initiative to allow *users* to collaboratively add context to potentially misleading Tweets, Holtzblatt Decl. Ex. E, and thus does not simply "[s]ubstitute[e] one form" of top-down content moderation for another, Trump Opp. 13. And Plaintiffs nowhere explain how the actions of Twitter's users can transform Twitter into a state actor.

Wolf's argument (Opp. 5) that her claim "remain[s] ripe" because of *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020), and *Missouri v. Biden*, 2023 WL 2578260, at *28-35 (W.D. La. Mar. 20, 2023), makes little sense. Neither case involved any question of mootness. *Rawson* involved a claim for retrospective damages under §1983, not prospective injunctive relief. 975 F.3d at 746. Here, Wolf's only viable First Amendment claim is for injunctive relief as her tack-on prayer for damages lacks any legal basis whatsoever. *See Egbert v. Boule*, 142 S. Ct. 1793, 1807-1809 (2022); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001). Wolf even concedes that she "focused on her claims for declaratory and prospective relief" given the lack of support for her damages claim, Wolf Opp. 6 n.1, and the other Plaintiffs do not even try to argue that their claims for damages preserve jurisdiction.

Meanwhile, *Missouri* featured broad allegations of a scheme of *continuing* "suppression of certain ideas and viewpoints on social-media platforms." 2023 WL 2578260, at *1. Indeed, the Court underscored that the plaintiffs in the case

5

"allege[d] that they have suffered past *and* ongoing censorship." *Id.* at *18-19 (emphasis in original). Plaintiffs, by contrast, complained about specific, discrete actions: that Twitter had placed labels on their Tweets and then suspended their accounts. Now these Plaintiffs' accounts have been reinstated, without any remaining content-moderation restrictions, and thus there is no live controversy. Moreover, *Missouri* (a case brought against the government, not against a company) did not involve any change of leadership or business strategy. *See id.* at *1. Indeed, there was no discussion of mootness whatsoever.

### C. The Voluntary-Cessation Exception Does Not Apply

Plaintiffs also argue that the voluntary-cessation exception to mootness applies and preserves jurisdiction. But for that exception to apply, the defendant's cessation of the challenged conduct "must have arisen because of the litigation." *Public Utils. Comm'n State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996). When the defendant's cessation is "motivated by economic/business considerations, [and] not this litigation," the voluntary-cessation exception is inapplicable. *Id.* Economic considerations can provide an independent justification for the defendant's behavior and an independent obstacle to reversion—much the same as cases in which "a governmental body change[s] the law," Wolf Opp. 8.

Plaintiffs' accounts were reinstated only after Mr. Musk acquired Twitter and swiftly changed the strategic vision and trajectory of Twitter. Among other things,

6

Musk elected to "no longer enforc[e] the COVID-19 misleading information policy" and announced a new general amnesty policy, pursuant to which several Plaintiffs' accounts were reinstated. Holtzblatt Decl. Exs. C, D. The district court accordingly recognized that these "changes happened only after a new owner acquired Twitter and publicly announced new policies for users and content." SER191. In fact, Wolf herself recognizes that Twitter switched course only "because of a billionaire's purchase." Wolf Opp. 6. Because Twitter's reinstatement of Plaintiffs' accounts was motivated by "economic/business considerations," the voluntary-cessation doctrine does not apply. *See FERC*, 100 F.3d at 1460.

Plaintiffs' suggestion that Twitter "has submitted no evidence" to carry its burden on voluntary cessation is puzzling to say the least. Twitter submitted a sworn declaration from a company official testifying that the accounts of Cuadros, Root, and Wolf were "reinstated pursuant to the amnesty program announced by Elon Musk on November 24, 2022," and that Trump's account was "reinstated pursuant to a 'yes' majority vote on a poll that Elon Musk posted on Twitter." Sebhatu Decl. ¶¶3, 5, 7, 9. Plaintiffs nitpick that that the declarations do not specify that their accounts were reinstated *only* pursuant to those measures, Trump Opp. 11, but that is the clear import of the declaration, which lists no other causal factors. Plaintiffs alternatively argue that Twitter should have presented a declaration from Musk

7

himself, Trump Opp. 10, but provide no explanation for why the evidence Twitter submitted, including a sworn declaration from a company official, does not suffice.

Plaintiffs also go into an extended discussion of the so-called "Twitter Files," which were made public after Musk acquired Twitter and allegedly demonstrate that Twitter's suspension of Plaintiffs' accounts was informed by meetings with the government. Twitter objects to the admissibility of these materials through judicial notice, for reasons explained in its forthcoming opposition to Plaintiffs' motion for judicial notice. But regardless, the materials make no difference. The voluntary-cessation doctrine addresses the defendant's motivations for ceasing the allegedly wrongful conduct, not their motivations for engaging in it in the first place. Thus, for mootness, the relevant question is not why Plaintiffs were *suspended*, but rather why they were *reinstated*. The entire goal of the "Twitter Files" is to bring to light decisions made by past management with which current management disagrees. If anything, the evidence simply confirms that Twitter reinstated Plaintiffs' accounts because of a genuine change in strategic vision and not because of anything to do with this lawsuit.

Plaintiffs' own authorities highlight the contrast between this case and those in which the exception applies. In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, the Governor of Missouri instructed officials "to begin allowing religious organizations to compete for and receive Department grants on the same terms as

8

secular organizations" in response to the very litigation at issue. 582 U.S. 449, 457 n.1 (2017). Because even the State agreed there was "'no clearly effective barrier'" preventing restatement of the old policy, the exception did not apply. *Id.* Here, it was Twitter's genuine change of business strategy that motivated reinstatement of Plaintiffs' accounts and that same strategic plan stands as an independent obstacle to any further suspension. *See Clementine Co. v. Adams*, 2022 WL 4096162, at *3 (S.D.N.Y. Sept. 7, 2022) (rejecting voluntary-cessation argument because a "change in administration" made the discontinued government policy unlikely to recur), *appeal pending*, No. 22-2599 (2d Cir.).

Likewise, in *Knox v. Service Employees International Union*, the defendant union sent a full refund to all class members of certain challenged fees after the Supreme Court granted certiorari. 567 U.S. 298, 307 (2012). The Court found the voluntary-cessation exception applied to "[s]uch postcertiorari maneuvers designed to insulate a decision from review" where it was "not clear why the union would necessarily refrain from collecting similar fees in the future." *Id.* Moreover, there remained "a live controversy as to the adequacy of the [union's] refund notice." *Id.* None of those factors are present here and, unlike here, there was not a change in the union's leadership that explained the change in strategy. *See id.*

*Rosemere Neighborhood Ass'n v. EPA*, simply reiterated that the party seeking to refute the voluntary-cessation exception "must demonstrate why

9

repetition of the wrongful conduct is highly unlikely." 581 F.3d 1169, 1173-1174 (9th Cir. 2009). In that case, the EPA made no such effort to satisfy this standard, simply claiming that the plaintiff had not offered any admissible evidence that it was likely to repeat its conduct. *Id.* So too in *Wall v. Wade*, where the Court relied exclusively upon "defendants' near total failure to provide the Court with information regarding the change" in conduct to apply the exception. 741 F.3d 492, 498 (4th Cir. 2014). Here, of course, Twitter has submitted evidence establishing why the complained-of conduct is unlikely to reoccur.

Finally, in *Porter v. Clarke*, the Fourth Circuit invoked the voluntary-cessation doctrine because of a "requirement that the Corrections Department review the policy governing Plaintiffs' conditions of confinement annually and rewrite that policy no later than three years after the current policy's effective date." 852 F.3d 358, 365 (4th Cir. 2017). In light of that schedule, the Court found that it was "more than a 'mere possibility' that Defendants will alter Plaintiffs' current conditions of confinement." *Id.* Here, there is no requirement that Twitter revisit or change the status of Plaintiffs' accounts and so that case is not instructive.

**D.   The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply**

Finally, Plaintiffs argue that their claim is capable of repetition yet evading review and therefore is not moot. Again, for that exception to apply, among other things, there must be "'a reasonable expectation that the same complaining party

10

will be subject to the same action again.'" *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (per curiam). Yet, there is simply no evidence that the challenged conduct will reoccur: The amnesty that led to Plaintiffs' reinstatement plainly reflects a new policy by new ownership and management. Holtzblatt Decl. Ex. D.

Plaintiffs' baseless assertions that if "circumstances change, Twitter could bring the policy back," Wolf Opp. 6, and that there is "heightened risk that Twitter's challenged practices will be repeated" during election season, Trump Opp. 15, are entirely speculative and insufficient to preserve a live controversy. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam) ("a mere physical or theoretical possibility" of recurrence is insufficient, otherwise "virtually any matter of short duration would be reviewable"). Likewise, Plaintiffs may "'credibly claim[]' that [they] plan[] to publish information … that is critical of the government," Wolf Opp. 8, but there is no evidence whatsoever that their accounts would be suspended or censored for doing so.

Even if Plaintiffs could establish a likelihood of future suspension—which they cannot—this exception applies only when a controversy is "too short to be fully litigated prior to cessation or expiration." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014). The case thus must be of "*inherently* limited duration." *Id.* (emphasis in original). Plaintiffs cannot establish that here. Each Plaintiff's account was suspended for at least 18 months (Sebhatu Decl. ¶¶2-9) and

11

Mr. Trump waited nearly six months before he even filed suit (Sebhatu Decl. ¶2; Dist. Dkt. 1). Moreover, although Plaintiffs filed for a preliminary injunction, they have taken no steps to expedite the litigation and, instead, have repeatedly sought extensions of time. *See, e.g.*, C.A. Dkts. 6, 43, 69, 71; Dist. Dkt. 47. And there is no reason to believe that if any Plaintiff's account is ever suspended again, the length of that suspension would be of such limited duration that it would frustrate judicial review.

That makes this case a far cry from *FEC v. Wisconsin Right to Life, Inc.*, which addressed a campaign advertisement blackout period that was guaranteed to reoccur every two years by law for a short duration of time. 551 U.S. 449, 462 (2007). It is for this reason that, as Wolf herself recognizes, the exception is "often applied in … election-related cases." Wolf Opp. 7. This is not such a case.

## CONCLUSION

The Court should dismiss the First Amendment claims of Plaintiffs Trump, Cuadros, Root, and Wolf as moot.

Respectfully submitted,

s/ *Ari Holtzblatt*

| | |
|---|---|
| FELICIA H. ELLSWORTH | ARI HOLTZBLATT |
| ZAKI ANWAR | ALLISON M. SCHULTZ |
| WILMER CUTLER PICKERING HALE AND DORR LLP | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 60 State Street | 2100 Pennsylvania Avenue |
| Boston, MA 02190 | Washington, DC 20037 |
| (617) 526-6000 | (202) 663-6000 |
| | |
| RISHITA APSANI | THOMAS G. SPRANKLING |
| 7 World Trade Center | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 250 Greenwich Street | 2600 El Camino Real |
| New York, NY 10007 | Suite 400 |
| (212) 230-8800 | Palo Alto, CA 94306 |
| | (650) 858-6000 |

*Attorneys for Defendants X Corp. and Jack Dorsey*

13

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 22-15961**

I am the attorney for Defendants X Corp. ("Twitter") and Jack Dorsey.

**This brief contains 2,799 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this reply complies with the word limit imposed by Ninth Circuit Rule 27-1(1)(d) and Federal Rule of Appellate Procedure 32-3(2).


**Signature** *s/ Ari Holtzblatt*         **Date** May 19, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

s/ *Ari Holtzblatt*
Ari Holtzblatt