**Case No. 22-15961**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, the Forty-Fifth President of the United States;
LINDA CUADROS; AMERICAN CONSERVATIVE UNION; RAFAEL BARBOSA;
DOMINICK LATELLA; WAYNE ALLYN ROOT; NAOMI WOLF,
*Plaintiffs-Appellants,*

v.

TWITTER, INC.; JACK DORSEY,
*Defendants-Appellees,*

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

*Appeal from the United States District Court for the Northern District of California (San Francisco),
Case No. 3:21-cv-08378-JD · The Honorable James Donato, District Judge*

## APPELLANTS' REPLY IN SUPPORT OF
## SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

JOHN P. COALE
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
alex@kozinski.com

ANDREI POPOVICI
MARIE L. FIALA
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Facsimile: (650) 530-9990
andrei@apatent.com
marie@apatent.com

*Attorneys for Plaintiffs-Appellants,
Donald J. Trump, the Forty-fifth President of the United States;
Linda Cuadros; American Conservative Union; Rafael Barbosa;
Dominick Latella; Wayne Allyn Root*

**Additional Counsel Listed on Signature Page**

 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ..............................................................................1

ARGUMENT ......................................................................................3

    I.     This Motion Is Procedurally Proper ......................................3

    II.    The SMJN Exhibits Are Judicially Noticeable ....................4

          A.    Defendants Do Not Question the Exhibits' Authenticity or Accuracy ..................................................................4

          B.    Plaintiffs Ask the Court to Take Notice That Copious Evidence Exists Supporting an Inference of State Action .........5

          C.    Musk's Tweets May Be Noticed for Their Truth .......................7

    III.   The Bulk of Defendants' Arguments Are Improper and Irrelevant .......................................................................9

          A.    Most of the Opposition Brief Constitutes an Unauthorized Merits Sur-Reply ..................................................9

          B.    Defendants' Arguments Regarding the Sufficiency of the Evidence Are Irrelevant ...........................................10

CONCLUSION .................................................................................12

CERTIFICATE OF COMPLIANCE

EXHIBIT A:  Defendants-Appellees' Response to Certain Appellants' Supplemental Motion for Judicial Notice, Filed May 22, 2023

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Adarand Constructors, Inc. v. SlaterEyeglasses*,
    228 F.3d 1147 (10th Cir. 2000)........................................................5

*Casas v. American Airlines, Inc.*,
    304 F.3d 517 (5th Cir. 2002).........................................................10

*Echo Acceptance Corp. v. Household Retail Servs., Inc.*,
    267 F.3d 1068 (10th Cir. 2001)......................................................10

*Henslee v. Union Planters Nat. Bank & Trust Co.*,
    335 U.S. 595 (1949)........................................................................6

*Hernandez v. Wells Fargo & Co.*,
    2019 WL 3017657 (N.D. Cal. Jul. 10, 2019) .................................7

*Nantucket Investors II v. Cal. Fed. Bank*,
    61 F.3d 197 (3rd Cir. 1995) ...........................................................8

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023)........................................................9

*O'Neal v. Donahoe*,
    802 F.Supp.2d 709 (E.D. Va. 2011) ..............................................7

*Princess Cruises, Inc. v. U.S.*,
    397 F.3d 1358 (Fed. Cir. 2005).....................................................10

*Rojas v. Fed. Aviation Admin.*,
    927 F.3d 1046 (9th Cir. 2019)........................................................5

*Ruiz v. Affinity Logistics Corp.*,
    667 F.3d 1318 (9th Cir. 2012)........................................................1

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*,
    711 F.2d 138 (9th Cir. 1983).........................................................10

*Supriyanto v. Bank of New York Mellon*,
    2022 WL 1843132 (C.D. Cal. Apr. 4, 2022)...................................8

*Tompkins v. Cyr*,
    202 F.3d 770 (5th Cir. 2000).........................................................7

*United States v. Feliz*,
    794 F.3d 123 (1st Cir. 2015) .........................................................7

*United States v. Pate*,
    543 F.2d 1148 (5th Cir. 1976)...................................................................7

*USX Corp. v. Liberty Mut. Ins. Co.*,
    444 F.3d 192 (3d Cir. 2006).....................................................................10

*Wray v. Gregory*,
    61 F.3d 1414 (9th Cir. 1995)......................................................................3

## RULES

Fed. R. Civ. P. 12........................................................................................5, 10

Fed. R. Civ. P. 28........................................................................................2, 9

Fed. R. Evid. 201 .......................................................................................3, 4

Fed. R. Evid. 801 ...........................................................................................7

## INTRODUCTION

While this Court normally does not consider matters not presented to the district court, it will do so in limited circumstances, such as to avoid a miscarriage of justice. *See, e.g., Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012). This is such a case. Plaintiffs have submitted hundreds of pages of documents—the vast majority from Twitter's own files—from which a reasonable factfinder could conclude that government officials encouraged, jointly engaged in, or coerced Defendants' censorship. Defendants knew these documents existed during the District Court proceedings yet urged dismissal by falsely representing to the District Court that "Twitter *does not coordinate* with other entities when making content moderation decisions." Twitter Reply ISO Mot. to Dismiss (Dkt. 147) at 6 (emphasis in original). This representation was belied a scant six months later when Elon Musk released the Twitter Files, showing "coordination" in spades. Had Twitter disclosed those materials before judgment was entered, it is inconceivable that Plaintiffs' claims would have been dismissed. The outcome of this case should not turn on an accident of timing. Plaintiffs respectfully ask the Court to grant their Supplemental Motion for Judicial Notice ("SMJN") and consider whether the District Court's judgment can be sustained in light of this newly disclosed information.

Defendants' only argument against taking judicial notice of the SMJN materials is that Plaintiffs seek to establish the truth of matters asserted therein. SJMN Opp. at 2-7. That is simply not true. Plaintiffs only seek judicial notice that (1) Musk and his designated journalists publicly released the Twitter Files, and (2) the information is contained in the Twitter Files, Musk's own tweets, and excerpts of testimony given before a congressional hearing investigating the Twitter Files. SMJN at 2. These statements are offered for the fact that their content exists, not for the truth of the matters asserted.[1]

The bulk of Defendants' brief is actually an unauthorized merits sur-reply. Fifteen pages of Defendants' 22-page submission dispute the arguments made in Plaintiffs' merits Reply Brief, which were neither raised in nor implicated by this motion. Defendants' attempted end-run around Rule 28(c) should not be countenanced.[2] Plaintiffs respectfully request that the Court strike or disregard those portions of Defendants' brief marked in Exhibit A hereto.

---

[1] While Musk's tweets, as party admissions, may be noticed for their truth, their content alone satisfies the purpose for which this motion has been brought. *See infra* at 7-8.

[2] Rule 28(c) provides: "The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed."

## ARGUMENT

## I.    This Motion Is Procedurally Proper.

Defendants opposed Plaintiffs' original motion for judicial notice by arguing that it was improper because Plaintiffs had not filed a motion for indicative ruling in the District Court.  MJN Opp. at 4-5.  Defendants now reverse course and argue that this motion is improper because Plaintiffs *have* moved for an indicative ruling. In the immortal words of Joseph Heller, "That's some catch, that Catch-22."[3]

No such limitations exist.  This Court must take judicial notice of properly presented facts at *any* stage of this proceeding.  Fed. R. Evid. 201(c)(2), (d).  Rule 201 does not make a request for judicial notice contingent on whether a party uses another procedural avenue for placing the proffered information before the court. Defendants' attempt to graft a condition onto Rule 201 would impose a limitation that is nowhere found in the rule.  Courts lack power to alter or adopt requirements inconsistent with those rules.  "If a Federal Rule of Evidence covers a point in dispute, Congress has mandated that such Rule be followed."  *Wray v. Gregory*, 61 F.3d 1414, 1420 (9th Cir. 1995) (concurrence) (citation omitted).

---

[3] Joseph Heller, CATCH-22 (1961).

3

## II.    The SMJN Exhibits Are Judicially Noticeable.

### A.    Defendants Do Not Question the Exhibits' Authenticity or Accuracy.

Rule 201 requires judicial notice to be taken of a fact that can be "readily determined from **sources** whose accuracy cannot **reasonably** be questioned."  That condition is met.  The exhibits mostly consist of hundreds of pages of Twitter's own documents as well as brief commentary by Musk and his agents summarizing what appears in those documents.  The proffered congressional testimony similarly describes what was disclosed in the Twitter Files as well as in the deposition testimony of the FBI agent responsible for coordinating the government-Twitter censorship enterprise.  The authenticity of these documents cannot reasonably be questioned, which is doubtless why Twitter hasn't done so.  Effectively, it admits that the documents are authentic and say precisely what Plaintiffs claim they say.

Defendants' characterization of this evidence as a "freewheeling soapbox rant of strung together conspiracies," Defendants' Response to Plaintiffs' Supplemental Motion for Judicial Notice ("SMJN Opp.") at 1, does nothing to delegitimize these documents.  Although Defendants assert in passing that these statements "are not readily determinable from reliable sources," they do not dispute the accuracy of any SMJN exhibit, nor could they reasonably do so.  Twitter's lawyers can hardly deny the fact of the Twitter Files' release or disavow

4

the authenticity or accuracy of Twitter's own records or the tweets by Elon Musk. The congressional testimony was given under oath at a formal House hearing and reported on an official congressional website.[4] There is no real dispute that the "accuracy of sources" prerequisite to taking judicial notice is satisfied.

### B. Plaintiffs Ask the Court to Take Notice That Copious Evidence Exists Supporting an Inference of State Action.

Defendants seemingly forget that this appeal arises from the District Court's Rule 12(b)(6) dismissal, not from a summary judgment ruling or trial verdict. The SMJN materials are cited as additional support for Plaintiffs' *allegations*, not to enable the Court to make factual determinations. In the typical appeal from an order granting a motion to dismiss, this Court is limited to speculating whether the fair inferences from the facts alleged in the complaint are likely to lead to discovery of sufficient evidence to support an eventual jury verdict. In this unusual—one might say unique—case, no speculation is necessary because defendant has published evidence that certainly would have come to light had the case proceeded to discovery. As Plaintiffs suspected and alleged, Twitter's files contain a mother lode of evidence showing countless interactions where federal

---

[4] Courts may take judicial notice of the content of testimony before the congressional committees. *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1051 n.1 (9th Cir. 2019); *Adarand Constructors, Inc. v. SlaterEyeglasses*, 228 F.3d 1147, 1168 n.12 (10th Cir. 2000).

authorities encouraged, cajoled, hectored, and sometimes coerced Twitter to engage in viewpoint censorship. At this stage of the proceedings, it matters not whether the facts asserted in those documents are true; it is enough that a jury might judge them to be truthful. And had Twitter been forthright about their existence in its files before the district court rendered its judgment, they would surely be part of this record.

Take one example highlighted in the SMJN brief: Musk's agreement that "Twitter was basically an FBI subsidiary." MOOT_SMJN-151. Plaintiffs are asking the Court to notice that Musk made the statement and its content—not to decide whether Twitter actually functioned as an FBI subsidiary; *that* is a matter for the jury to decide. Had the District Court applied the correct legal standard and allowed Plaintiffs' case to proceed, Plaintiffs would have been able to obtain this information and present it to the jury, which might have believed it or not. To paraphrase Justice Frankfurter, truth too often never comes, and so one ought not to reject it merely because it comes late.[5] In this case, Twitter managed to hide evidence within its own files until after the District Court ruled. Now that the evidence has come to light, this Court must reject Twitter's invitation to pretend this evidence does not exist.

---

[5] *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

6

Moreover, a significant portion of the statements comprise verbal acts; as such, their veracity is not at issue, and they are not noticed for the truth. A threat does not assert anything; rather, threats are considered verbal acts and are not hearsay.[6] The mere fact that Defendants and government officials met regularly and exchanged hundreds of communications about censoring specific content shows encouragement and joint action, whether or not the participants in these exchanges were truthful.

## C.   Musk's Tweets May Be Noticed for Their Truth.

Plaintiffs are not seeking judicial notice of Musk's tweets based on the fact they are party admissions under Rule 801(d)(2). As explained above, the tweets satisfy the conditions for judicial notice independent of the hearsay rules. *See* SMJN at 11-12. But, being party admissions, they may be noticed for their truth as well as for their content. "[P]arty admissions may be judicially noticed for the truth of the matter if requested by the opposing party." *Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, *5 (N.D. Cal. Jul. 10, 2019). *See also O'Neal v. Donahoe*, 802 F.Supp.2d 709, 715 n.7 (E.D. Va. 2011) ("It is well established that a court may take judicial notice, pursuant to Rule 201 … [of] parties'

---

[6] *See United States v. Feliz*, 794 F.3d 123, 132 (1st Cir. 2015) (threats are verbal acts); *Tompkins v. Cyr*, 202 F.3d 770, 779 n.3 (5th Cir. 2000) (same); *United States v. Pate*, 543 F.2d 1148, 1148 (5th Cir. 1976) (same).

admissions."); *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 205 (3rd Cir. 1995) (court may take judicial notice that a party made admissions).

Depending on the circumstances, courts take different positions on this issue. Here, the circumstances militate strongly in favor of noticing Musk's statements for the truth. This is not a "gotcha" situation where one party tries to take advantage of an opponent's inadvertent statement. Musk's tweets manifest a high degree of intentionality; he released them specifically to bring Twitter's censorship practices to light. In his own words, "[t]he Twitter Files on free speech suppression soon to be published on Twitter itself. The public deserves to know what really happened…." MOOT_SMJN-2. Musk's statements are not "subject to reasonable dispute," as was the case in Defendants' cited authorities. *See, e.g., Supriyanto v. Bank of New York Mellon*, 2022 WL 1843132, at *3 (C.D. Cal. Apr. 4, 2022) (declining to notice discovery responses for the truth "because they are subject to reasonable dispute"). Defendants have not challenged the authenticity or truth of Musk's tweets; they *still* have presented no declaration from Musk denying their authenticity or contradicting their content. So we have here the curious spectacle of Musk's lawyers furiously trying to disappear information that their client wants to make public. The Court should not be taken in by this cognitive dissonance.

## III.  The Bulk of Defendants' Arguments Are Improper and Irrelevant.

### A.  Most of the Opposition Brief Constitutes an Unauthorized Merits Sur-Reply.

Some two-thirds of Defendants' brief responds directly to Plaintiffs' merits Reply Brief, flagrantly violating Rule 28(c).  Defendants attempt to rebut Plaintiffs' arguments regarding application of *Lugar*'s two-prong state action test, SMJN Opp. at 9-11; the required elements for pleading coercion, encouragement, or joint action, *id*. at 12-21; whether a private entity can be sued on a coercion claim, *id*. at 16-17; the relevance of Section 230, *id*. at 19; and the dispositive distinctions between *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), and the facts presented here, *id*. at 21-22.  These arguments were neither raised nor referenced in the SMJN, as demonstrated by the fact that this section cites to the Reply Brief more than a dozen times and not once to the SMJN to which Defendants are purportedly responding.

Defendants' stratagem is egregiously improper to the point of being sanctionable.  As one Court of Appeals observed,

> **The filing of improper sur-reply arguments is unfair to appellants who bear the burden of demonstrating prejudicial error in the decision being appealed and, therefore, are entitled to the last word in both the briefs and at oral argument on their appeal.**  We caution all counsel for cross-appellants who file improper sur-reply arguments that they may be subject to sanctions under Fed. R. App. P. 46(c), which provides that "[a] court of appeals may discipline an attorney who practices before it ... for failure to comply with any court rule."

9

*Princess Cruises, Inc. v. U.S.*, 397 F.3d 1358, 1361 (Fed. Cir. 2005) (emphasis added). *See also USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 201-02 (3d Cir. 2006) (striking portions of appellee's cross-appeal reply brief addressing issues related to appellant's principal opening brief); *Casas v. American Airlines, Inc.*, 304 F.3d 517, 526 (5th Cir. 2002) (same); *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1092 (10th Cir. 2001) (same).

Because the merits briefing is closed, Plaintiffs will forego writing a substantive response to these contentions. Instead, fairness and this Court's rules require that these portions of Defendants' brief be stricken or disregarded.

## B. Defendants' Arguments Regarding the Sufficiency of the Evidence Are Irrelevant.

In this same section, defendants try to spin the SMJN exhibits as factually insufficient to support Plaintiffs' claims, an argument that has no relevance on this appeal. It is axiomatic that a court may not resolve disputed fact issues going to the merits on a Rule 12(b)(6) motion, let alone on appeal from a dismissal order. *See, e.g., Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139-40 (9th Cir. 1983).

Rather than burdening the Court with a point-by-point refutation, Plaintiffs simply observe that the SMJN exhibits contain an abundance of evidence from which a trier of fact could find state action, to wit:

10

- Twitter and government officials developed a formal system for coordinating and processing censorship requests, including weekly meetings between Twitter executives and federal law enforcement and intelligence agents, MOOT_SMJN-12, -55, -88, -204;

- Twitter itself described its interactions with the FBI and DHS as "partnerships," MOOT_SMJN-106;

- Designated FBI teams performed keyword searches for users' "violations" of Twitter's policies and fed those results to Twitter, MOOT_SMJN-175;

- Government agencies identified hundreds of accounts that "warrant further action"; Twitter regularly deleted these accounts and reported its compliance to its government overseers, MOOT_SMJN-22, -57-58, -74, -86-90, -100-01;

- The White House also regularly provided Twitter its censorship requests; at one such meeting, "[t]he Biden team was not satisfied with Twitter's enforcement approach as they wanted Twitter to do more and to deplatform several accounts. … They were very angry in nature." MOOT_SMJN-183;

11

- Twitter's General Counsel's office was "happy to report" that the FBI paid the company $3.4 million for its cooperation in a single 16-month period, MOOT_SMJN-38;

- Tweets were targeted regardless of whether they contained misinformation; for example, one email recommended deleting "true content which could promote vaccine hesitancy" and "stories of true [COVID] vaccine side effects," MOOT_SMJN-96-97, 129; and

- These censorship efforts were targeted specifically at Plaintiff Trump's account, among others, MOOT_SMJN-99, -167, -185-196.

Spin as they might, Defendants could not credibly argue that this evidence was insufficient as a matter of law to go to a jury. But that is a question for another day. It is more than enough to surmount a 12(b)(6) challenge.

## CONCLUSION

Plaintiffs respectfully request that their motion be granted.

Date: June 1, 2023                    Law Office of Andrei D. Popovici, P.C.

_s/ Marie L. Fiala_____
Marie L. Fiala
*Attorneys for Appellants*
*Donald J. Trump, American Conservative*
*Union, Rafael Barbosa, Linda Cuadros,*
*Dominick Latella, and Wayne Allyn Root*

12

JOHN P. COALE
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

RICHARD POLK LAWSON
GARDNER BREWER HUDSON
400 North Ashley Drive
Suite 1100
Tampa, FL 33602
Telephone: (813) 221-9600
Facsimile: (813) 221-9611
Email: rlawson@gardnerbrewer.com

MICHAEL J. JONES
RYAN TOUGIAS
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

ALEX KOZINSKI
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Email: alex@kozinski.com

FRANK C. DUDENHEFER, JR.
THE DUDENHEFER LAW FIRM
L.L.C.
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

JOHN Q. KELLY
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Telephone: (203) 896-4504
Email: jqkelly@fercolaw.com

13

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number(s): No. 22-15961**

I am the attorney for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root.

**This brief contains 2,522 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Fed. R. App. P. 27(d)(2) and the page limit of Cir. R. 27-1(1).

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Marie L. Fiala*         **Date:** June 1, 2023

# EXHIBIT A

No. 22-15961

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, et al.,

*Plaintiffs-Appellants*,

*v.*

TWITTER, INC. AND JACK DORSEY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 3:21-cv-08378-JD (Donato, J.)

## DEFENDANTS-APPELLEES' RESPONSE TO CERTAIN APPELLANTS' SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

FELICIA H. ELLSWORTH
ZAKI ANWAR
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02190
(617) 526-6000

RISHITA APSANI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

ARI HOLTZBLATT
ALLISON M. SCHULTZ
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue
Washington, DC 20037
(202) 663-6000

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, California 94306
(650) 858-6000

May 22, 2023

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................2

   I.    PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER ............................2

   II.   PLAINTIFFS IMPROPERLY SEEK JUDICIAL NOTICE OF THE
      TRUTH OF MATTERS ASSERTED ..............................................2

      A.    The "Twitter Files" And Congressional Testimony ..................3

      B.    Statements By Elon Musk........................................7

   III.  THE NEWLY SUBMITTED DOCUMENTS ARE IMMATERIAL
      TO THIS APPEAL ................................................8

      A.    Several Plaintiffs' Claims Are Moot ............................8

      B.    The New Materials Do Not Support Plaintiffs'
          Claim That Suspension Of Their Accounts Was
          State Action ................................................9

          1.    The New Materials Fail To Satisfy *Lugar*'s
             First Prong ............................................10

          2.    The New Materials Fail To Satisfy *Lugar*'s
             Second Prong..........................................11

             a.    The New Materials Do Not Concern
                 Plaintiffs ......................................11

             b.    The New Materials Do Not Evince
                 Coercion ......................................12

             c.    The New Materials Do Not Evince
                 Encouragement................................17

             d.    The New Materials Do Not Evince
                 Joint Action ....................................19

CONCLUSION ..................................................................22

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999)..........................................................................................18

*Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020)...........................................11

*Blum v. Yaretsky*, 457 U.S. 991 (1982)......................................................11

*Cramer v. Target Corp.*, 2010 WL 2465338 (E.D. Cal. June 9, 2010)....................8

*Doe v. Google LLC*, 2022 WL 17077497 (9th Cir. Nov. 18, 2022)................15, 17

*Farrell v. Boeing Employees Credit Union*, 761 F. App'x 682 (9th Cir. 2019).............................................................................................3

*Heineke v. Santa Clara University*, 965 F.3d 1009 (9th Cir. 2020).................11, 19

*Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657 (N.D. Cal. July 10, 2019)............................................................................................7

*Johnson v. Knowles*, 113 F.3d 1114 (9th Cir. 1997) ................................11

*Kennedy v. Warren*, __ F.4th __, 2023 WL 3239620, at *5, 8 (9th Cir. May 4, 2023)..........................................................................................15

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)..................3, 4

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......................3, 4

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ...........................9, 11

*Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996)..................9, 20

*Mathis v. Pacific Gas & Electric Co.*, 891 F.2d 1429 (9th Cir. 1989)...................11

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ...... 6, 13, 14, 17, 18, 19, 20, 21

*Ochoa v. Public Consulting Group, Inc.*, 48 F.4th 1102 (9th Cir. 2022)............................................................................................17

*Rashid v. BMW of North America, LLC*, 2020 WL 5640734 (S.D. Cal. Sept. 22, 2020) ................................................................8

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020) ....................17

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011) ...........................2

*Stuart v. UNUM Life Insurance Co. of America*, 217 F.3d 1145 (9th Cir. 2000) ................................................................6

*Supriyanto v. Bank of New York Mellon*, 2022 WL 1843132 (C.D. Cal. Apr. 4, 2022) ................................................8

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999) ....................................................10, 11, 16, 17

*United States v. Pang*, 362 F.3d 1187 (9th Cir. 2004) ................................6

*Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir. 1987) ................................................................22

# DOCKETED CASES

*Missouri v. Biden*, No. 3:22-cv-01213 (W.D. La.) ....................................4

*Trump v. Twitter*, No. 21-cv-08378 (N.D. Cal.) ......................................2

# STATUTES AND RULES

18 U.S.C.
    § 2703 ................................................................5
    § 2706 ................................................................5

47 U.S.C. § 230 ................................................................4, 19

Fed. R. Civ. P.
    Rule 11 ................................................................22
    Rule 60 ................................................................2

Fed. R. Evid.
    Rule 201 ................................................................3, 7, 8
    Rule 801 ................................................................7, 8

# INTRODUCTION

Plaintiffs Donald Trump, Linda Cuadros, American Conservative Union, Rafael Barbosa, Dominick Latella, and Wayne Allyn Root's ("Plaintiffs") supplemental motion for judicial notice is an improper attempt to expand the record on appeal based on facts that are neither susceptible to judicial notice nor relevant to the claims at issue. The new materials submitted are voluminous—spanning from Hunter Biden's laptop to the identification of Russian bot farms to attempts to address election crimes involving misinformation regarding the time, place, and manner of voting. Conspicuously absent, however, is any communication between any governmental actor and Twitter coercing, participating in, or even simply discussing any action with respect to Plaintiffs' Twitter accounts. The new materials are thus irrelevant to Plaintiffs' state-action claims, and this Court should deny Plaintiffs' attempt to convert this litigation into a freewheeling soapbox rant of strung together conspiracies.

Relevance aside, Plaintiffs' motion is an improper use of judicial notice. First, judicial notice on appeal is improper as Plaintiffs have already filed a motion for indicative ruling in the district court seeking relief from judgment based on the same new materials. This Court should permit the district court to resolve in the first instance the relevance of these materials to Plaintiffs' claims. Second, Plaintiffs impermissibly seek judicial notice of statements not for the fact that they were made,

but rather for the truth of matters not readily determinable by reference to reliable sources.[1]

## ARGUMENT

### I.  PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER

This Court "rarely take[s] judicial notice of facts presented for the first time on appeal." *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011). New materials should instead be filed in the district court through a motion for an indicative ruling regarding whether the district court would grant a motion for relief from judgment under Federal Rule of Civil Procedure 60(b).  Plaintiffs have, in fact, already done just that.  *See* Pls.' Mot. for Indicative Ruling, *Trump v. Twitter*, No. 21-cv-08378 (N.D. Cal. May 3, 2023).  This Court should allow the district court to resolve that motion in the first instance and not permit Plaintiffs to end-run around established procedures by effectively amending their complaint on appeal.

### II.  PLAINTIFFS IMPROPERLY SEEK JUDICIAL NOTICE OF THE TRUTH OF MATTERS ASSERTED

Plaintiffs' motion is additionally improper because it seeks judicial notice of subjective and unverifiable assertions for their truth.  Judicial notice is permissible only of facts that are either "generally known" or "can be accurately and readily

---

[1] As indicated in the recently filed supplemental corporate disclosure statement, Twitter, Inc. has been merged into X Corp. and no longer exists.  For purposes of this litigation, however, Defendants will continue to refer to the corporate entity as "Twitter."

2

determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The truth of statements made in the so-called "Twitter Files," congressional testimony, and by Elon Musk are neither generally known nor readily determinable from reliable sources, thus they may not be established by judicial notice.

### A. The "Twitter Files" And Congressional Testimony

Public records, including websites and congressional testimony, may sometimes be judicially noticed, but such notice is limited to facts that can be "readily determined" by reference to the record itself, Fed. R. Evid. 201, such as the "fact of [a] hearing" or that a particular statement was made. *Lee v. City of L.A.*, 250 F.3d 668, 689-690 (9th Cir. 2001) (emphasis omitted); *accord Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1000 (9th Cir. 2018) (call transcript can establish the fact of a call); *Farrell v. Boeing Emps. Credit Union*, 761 F. App'x 682, 684 n.1 (9th Cir. 2019) ("'existence of [a] website in the public realm'"). Judicial notice is generally inappropriate, however, of the "truth of the facts recited" in such records. *Lee*, 250 F.3d at 690; *accord Khoja*, 899 F.3d at 999 ("Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

Here, Plaintiffs seek judicial notice not merely of the fact that certain statements were made, but of the truth of the matters asserted. Regarding the

congressional testimony, for example, Plaintiffs seek judicial notice of testimony from John Sauer (litigation counsel for Louisiana in *Missouri v. Biden*, No. 3:22-cv-01213 (W.D. La.), *see* MOOT_SMJN-212), to establish the truth of his opinion, based on his own assessment of evidence produced in the *Missouri* litigation, that federal actors used the threat of Section 230 reform to coerce social-media platforms. *See* Appellants Trump et al.'s Reply Br. ("Reply Br.) 16 (citing Sauer testimony to show that "[p]rominent federal actors waged a relentless coercive campaign"). Similarly, Plaintiffs rely on testimony from journalist Matt Taibbi to establish the truth of his opinion, based on his own assessment of underlying documents, that Twitter worked with "taxpayer-funded" "quasi-private entities" to identify "misinformation, disinformation, or malinformation." Reply Br. 7 (quoting Taibbi's testimony to establish that "government officials worked closely through taxpayer-funded intermediaries to facilitate Twitter's censorship"). Judicial notice of the truth of such statements, which cannot readily be determined by reference to reliable sources, is inappropriate. *Lee*, 250 F.3d at 690; *accord Khoja*, 899 F.3d at 1000 (denying motion to judicially notice truth of matters asserted in publicly filed transcript).

Similarly, Plaintiffs improperly seek judicial notice of the truth of matters asserted in the "Twitter Files." Though Plaintiffs contend (Mot. 13) they seek notice of the "Twitter Files' content for the fact that it exists, not for the truth of the matters

stated," that is squarely belied by their own concomitant filings. For example, their reply brief relies on journalist Michael Shellenberger's Tweet, based on his assessment of internal Twitter communications, that "[t]he FBI's influence campaign may have been helped by the fact that it was paying Twitter millions of dollars for its staff time," MOOT_SMJN-38, to establish the truth of the fact that the FBI "facilitate[d] processing … requests" to remove misinformation by "pa[ying] Twitter millions for its staff time," Reply Br. 3.[2] Similarly, Plaintiffs rely on a Tweet from journalist Matt Taibbi—again, based on his subjective interpretation of Twitter documents—stating that accounts flagged by government agencies for review "[o]ften … would be deleted soon after," MOOT_SMJN-101, to establish the truth of the assertion that "Twitter regularly deleted these accounts after receiving the government's blacklists," Reply Br. 4. Such purported "facts" are not determinable by reference to reliable sources and thus may not be established by means of judicial notice.

---

[2] The "fact" Plaintiffs seek to judicially notice also ignores that Twitter was "reimburse[d]" pursuant to a *statutory right* of reimbursement for time spent responding to "legal process response [requests] from the FBI," as noted in the underlying Twitter communication identified by Shellenberger. MOOT_SMJN-38 (emphasis added). The "statutory right" at issue is that created under the Stored Communications Act ("SCA") for costs "incurred in searching for, assembling, reproducing, or otherwise providing" information requested by the government under the SCA. 18 U.S.C. § 2706(a); *see also id.* § 2703(a) (permitting government to request electronic communications "pursuant to a warrant").

Plaintiffs' reliance on the verbal-acts doctrine is misplaced.  That doctrine provides that "legally operative verbal conduct" that "create[s] legal rights and obligations"—such as a contract—is not hearsay because its significance lies not in its truth but in the fact that it exists.  *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004); *accord Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000).  Plaintiffs appear to contend that the verbal-acts doctrine is relevant insofar as it supports their contention that they rely on certain federal officials' statements for their existence rather than their truth; they argue (Mot. 13) that "Federal officials' instructions to censor speech … carry legal significance independent of the truth of any matters asserted."  That, however, is inconsistent with this Court's state-action precedent.  ~~Though not clearly articulated, the thrust of Plaintiffs' argument is that when a governmental actor identifies content as possibly violating Twitter's rules, that alone makes Twitter a state actor or, at the very least, means that Twitter cannot then remove the identified content without becoming a state actor; otherwise, the governmental actor's communication would not create any legal right or obligation.  But this Court's precedent is clear that the government is free to "request that a private intermediary not carry a third party's speech" and the private party is free to "make its own independent judgment about whether to comply with the government's request."  O'Handley v. Weber, 62 F.4th 1145, 1158 (9th Cir. 2023).  The government's communications identifying certain~~

6

content for Twitter's review thus do not create any legal rights or obligations and do not fall within the legal-acts doctrine.

## B. Statements By Elon Musk

Plaintiffs are also wrong that party admissions are judicially noticeable for their truth. Party admissions are not hearsay under Federal Rule of Evidence 801(d)(2), but that does not mean they are subject to judicial notice. As discussed, judicial notice of a fact is permissible only if that fact is either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs avowedly seek judicial notice of certain Tweets from Mr. Musk "for their truth" (Mot. 14)—including, for example, the truth of the assertions that the "Government paid Twitter millions of dollars to censor info from the public," Reply Br. 2, and that Twitter "act[ed] under orders from the government to suppress free speech," *id.* at 17 & n.9 (emphasis omitted). But the truth of those assertions is neither "generally known" nor readily determinable "from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and thus they are not properly subject to judicial notice.

The two district court opinions on which Plaintiffs rely (Mot. 14) are poorly reasoned and unpersuasive. Each concludes that party admissions may be judicially noticed for their truth simply because they are admissible under the hearsay rules. *See Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, at *5 (N.D. Cal. July 10,

2019) (citing Federal Rule of Evidence 801(d)(2) to support judicial notice); *Rashid v. BMW or N. Am., LLC*, 2020 WL 5640734, at *2 (S.D. Cal. Sept. 22, 2020) (same). But the requirements of Rule 801(d)(2) are not coterminous with Rule 201(b); whether a statement is admissible under the hearsay rules says nothing about whether it is subject to judicial notice. Reasoned lower court decisions recognize this. *See Cramer v. Target Corp.*, 2010 WL 2465338, at *2 (E.D. Cal. June 9, 2010) (facts stated in a party's declaration are not subject to judicial notice); *accord Supriyanto v. Bank of New York Mellon*, 2022 WL 1843132, at *3 (C.D. Cal. Apr. 4, 2022) (a party's responses to requests for admission are not subject to judicial notice).

Rule 201(d), not the hearsay rules, governs Plaintiffs' request for judicial notice, and because Plaintiffs seek judicial notice of the truth of facts asserted in certain Tweets from Mr. Musk that are neither generally known nor readily determinable by reference to reliable sources, their request should be denied.

## III. ~~THE NEWLY SUBMITTED DOCUMENTS ARE IMMATERIAL TO THIS APPEAL~~

### A. ~~Several Plaintiffs' Claims Are Moot~~

~~As a threshold matter, for the reasons stated in Defendants' Suggestion of Mootness (Dkt. 65), Plaintiff Donald J. Trump, Linda Cuadros, Wayne Alan Root, and Naomi Wolf's claims are moot. Nothing in the new materials provides a basis to alter that conclusion. To the contrary, as discussed in Twitter's reply in support of its suggestion of mootness (Dkt. 104), the Twitter Files support, rather than~~

8

undermine, the fact that Twitter's change in ownership resulted in a shift in internal content-moderation policy such that the specific harms alleged here are unlikely to recur.

**B.  The New Materials Do Not Support Plaintiffs' Claim That Suspension Of Their Accounts Was State Action**

The new materials do nothing to aid Plaintiffs in plausibly demonstrating Twitter's suspension of their accounts was state action.  As Twitter explained (Br. 24), state action exists only where, first, "'the deprivation [alleged was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible'" and  second, "'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The new materials do not aid Plaintiffs in satisfying either prong.[3]

---

[3] None of Plaintiffs' efforts (Reply Br. 10-12) to dispense with *Lugar*'s first prong are availing.  At the outset, Plaintiffs offer no response to Twitter's argument (Br. 32) that the Ninth Circuit has continued to apply *Lugar*'s first prong after *Brentwood*, including to foreclose claims that fail to meet it.  Nor do they explain why the Ninth Circuit would continue to refer to *Lugar*'s first prong as the "state policy" requirement if it could be satisfied, as Plaintiffs contend, by demonstrating that the deprivation was caused by "a person for whom the State is responsible."  And they offer no rebuttal to Twitter's argument (Br. 24) that Twitter and Mr. Dorsey are not persons "for whom the State is responsible."  Plaintiffs make much of the observation in *O'Handley* that this Court has not applied the first prong "rigidly." However, as Twitter explained, the *O'Handley* court cited to *Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996) ("*Mathis II*") in making that observation, a case in which plaintiffs had failed to satisfy any of the prong-two tests; *Mathis II*

## 1. The New Materials Fail To Satisfy *Lugar*'s First Prong

The new materials fail to alter Plaintiffs' inability to satisfy *Lugar*'s first prong because none of the communications relied on plausibly shows Twitter suspended Plaintiffs' accounts pursuant to any state-created right or rule of conduct. This is reason alone to reject the new materials as irrelevant.

Far from a state-imposed rule, the new materials show that Twitter made content-moderation decisions regarding Plaintiffs' accounts pursuant to its own rules and policies. And Plaintiffs make no attempt to argue otherwise in their Reply. The materials show that governmental actors reported to Twitter content that they believed might "potentially constitute violations of *Twitter's* Terms of Service," specifying that Twitter should review for "any action or inaction deemed appropriate within *Twitter policy*." MOOT_SMJN-26 (emphases added); *accord* MOOT_SMJN-24; MOOT_SMJN-58-60; MOOT_SMJN-101.

Nor do the new materials suggest that Twitter's rules were themselves government imposed. Plaintiffs concede this point too, failing to raise it in their Reply. This Court has found state-imposed rules only where a private actor's conduct is dictated by a government standard backed by the force of law, such as a statute or regulation. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826,

---

thus had no need to—and did not—discuss whether a plaintiff must also satisfy *Lugar*'s first prong.

835 (9th Cir. 1999); *Mathis v. Pacific Gas & Elec. Co.*, 891 F.2d 1429, 1434 (9th Cir. 1989) ("*Mathis I*"). Here, the materials show merely that government agencies shared with Twitter information—"for intelligence purposes" only—regarding foreign disinformation campaigns, MOOT_SMJN-64-71 (capitalization altered); *accord* MOOT_SMJN-40, and cybersecurity risks (such as ransomware techniques) to be aware of, *see* MOOT_SMJN-92. Such information sharing is not a state-imposed rule, and is thus insufficient to satisfy *Lugar*'s first prong.

### 2. The New Materials Fail To Satisfy *Lugar*'s Second Prong

The new materials also do not aid Plaintiffs in satisfying *Lugar*'s second prong because they do not plausibly demonstrate that Twitter "could be described in all fairness as a state actor." *Belgau v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020).

#### a. The New Materials Do Not Concern Plaintiffs

Plaintiffs' reliance on the new materials betrays a broader defect at the heart of their state action theory: general public-private communications about a topic do not suggest governmental participation in specific private decisions. As this Court has made clear, alleging state action requires a plausible allegation that the "government commanded a particular result in, or otherwise participated in, his specific case." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020); *see also Sutton*, 192 F.3d at 843; *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997); *accord Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982) (no state action where

government regulations did "not dictate the [challenged] decision … in a particular case").

The new materials do not help Plaintiffs satisfy this threshold requirement. While some communications in the new materials flagged specific Tweets or users, MOOT_SMJN-21-26, 57-58, conspicuously missing is any governmental request to remove Plaintiffs' content or accounts. The only reference to any of the Plaintiffs are internal Twitter communications regarding different Twitter employees' own assessments of whether Trump's January 2021 Tweets (for which his account was ultimately suspended) violated Twitter's policies. *See* MOOT_SMJN-185-195, 245. But Twitter's internal deliberations and disagreements show no governmental participation with respect to Plaintiffs' accounts. Because they are silent as to Plaintiffs, the new materials do not save Plaintiffs' First Amendment claim.

### b. The New Materials Do Not Evince Coercion

The new materials do not help Plaintiffs establish coercion for at least two reasons: (1) they contain no threat of retaliatory sanctions by government actors if Twitter did not suspend Plaintiffs' accounts and (2), in any event, Plaintiffs sued the wrong party.

*No Threatened Sanction.* The new materials do not evince coercion because they contain no threat of government sanction premised on Twitter's failure to suspend Plaintiffs' accounts. As Twitter explained (Br. 41-42), this Court held in

*O'Handley* that "government officials do not violate the First Amendment when they request that a private intermediary not carry a third party's speech so long as the officials do not threaten adverse consequences if the intermediary refuses to comply." 62 F.4th at 1158. Like the previously submitted materials, the new materials show, at most, attempts by government actors to persuade and not any threat of punitive action.

*FBI Officials.* None of the FBI's communications with Twitter cited by Plaintiffs evince coercion because they do not contain a specific government demand to remove content—let alone one backed by the threat of government sanction. Instead, the new materials show that the agency issued general updates about their efforts to combat foreign interference in the 2020 election. For example, one FBI email notified Twitter that the agency issued a "joint advisory" on recent ransomware tactics, and another explained that the Treasury department seized domains used by foreign actors to orchestrate a "disinformation campaign." MOOT_SMJN-92; *see also* MOOT_SMJN-40; MOOT_SMJN-64-71. These informational updates cannot be coercive because they merely convey information; there is no specific government demand to do *anything*—let alone one backed by government sanction.

So too with respect to the cited emails from the FBI flagging specific Tweets. Plaintiffs claim that these emails were "demands" or "orders," but the exchanges

belie that characterization. The FBI's emails were phrased in advisory terms, merely flagging accounts they "believe are violating [Twitter's] terms of service." MOOT_SMJN-24; *see also* MOOT_SMJN-26 (flagging Tweets "for any action or inaction deemed appropriate within Twitter policy"). None even requested—let alone commanded—Twitter to take down any content. And none threatened retaliatory action if Twitter did not remove the flagged Tweets. As in *O'Handley,* therefore, the FBI's "specific request" to remove certain Tweets cannot amount to coercion because there was "no intimation that Twitter would suffer adverse consequences if it refused the request." 62 F.4th at 1158. What is more, unlike *O'Handley*, not one of the cited communications contains a request to take any action whatsoever with respect to any of Plaintiffs' accounts.[4]

*Congress.* Nor do the new materials contain any actionable threat by Congress tied to Twitter's suspension of Plaintiffs' accounts. First, Plaintiffs place much stock in a single FBI agent's opinion that Twitter employees may have felt "pressured" by Members of Congress to adopt a more proactive approach to content moderation. MOOT_SMJN-216. But a government employee's opinion as to what

---

[4] Any inference from the new materials that the FBI's alleged requests may have encompassed Plaintiffs is all the more implausible given that, in the lead-up to the 2020 election—when Plaintiffs contend the FBI's "censorship reached a fever pitch," (Reply Br. 4)—the FBI was an executive agency in Mr. Trump's own administration. The speculation that his own government conspired to "tilt the election" against him (*id.*) is nothing but conspiracy theory.

14

Twitter's employees felt is not a proper subject of judicial notice, *see supra* pp.3-7, nor is it probative of coercion. And in any event, "[g]enerating public pressure to motivate others to change their behavior is a core part of public discourse," and "legislators [need not] refrain from such speech or advocacy," only from threatening "adverse consequences that will follow if the recipient does not accede to the request." *Kennedy v. Warren*, __ F.4th __, 2023 WL 3239620, at *5, 8 (9th Cir. May 4, 2023). Here, the agent's comment intimates no such threat. And Representative Schiff's email requesting that Twitter take action on certain accounts is not coercive for the same reason. He did not threaten or even suggest regulatory action would follow if Twitter did not accede to his request (which, indeed, Twitter often did not). MOOT_SMJN-94.

The new materials fail to show Congressional coercion for yet another reason: "[L]ack[ing] force of law," statements made by individual legislators are "incapable of coercing Defendants to do much of anything." *Doe v. Google LLC*, 2022 WL 17077497, at *2 (9th Cir. Nov. 18, 2022); *accord Kennedy*, 2023 WL 3239620 at *7. Plaintiffs are wrong (Reply Br. 20) that any threats by individual Congressmembers were actionable because Democrats had "control of Congress." Even where one political party controls Congress, "[t]here is no way to allege with any degree of plausibility when, if ever, the comments voiced by a handful of members of Congress might become a law." 1-ER-15. And in any event, one-off

15

requests from a single Congressman, or advocacy by a few, falls short of demonstrating any party-wide consensus to pass adverse regulation—let alone one that takes retaliatory aim at Twitter's failure to suspend Plaintiffs' accounts.

*White House Officials.* The new materials do not evince any actionable threat by White House officials either. Plaintiffs rely on a single statement by a Twitter employee that "[t]he Biden team was not satisfied with Twitter's enforcement approach as they wanted Twitter to do more and to deplatform several accounts." MOOT_SMJN-183. But those exchanges took place well after Plaintiffs' suspensions (December 2022), and so could not have compelled Twitter to suspend their accounts. *Id.*; Mot. 5. Furthermore, the new materials fail to identify any threat of government sanction arising from the officials' "dissatisfaction"; indeed, Twitter was only asked to join "other calls" to continue the dialogue. MOOT_SMJN-183.

Plaintiffs attempt to distinguish *O'Handley* (Reply Br. 21) by claiming that the government agency in that case made no actionable threat, but as discussed, the same is true here. *O'Handley*, therefore, is directly on point and compels a finding of no coercion.

***Wrong Party.*** The new materials are irrelevant for yet another reason: as Twitter explained (Br. 41-42), "'something more' than state compulsion" is required "to hold a private defendant liable" on a coercion theory. *Sutton*, 192 F.3d at 838.

16

The new materials, like the Amended Complaint, fail to allege that "something more." Therefore, even if the new materials evinced coercion, that would allow Plaintiffs to bring a First Amendment claim only against the government, not against a private party like Twitter.

*Ochoa v. Public Consulting Group., Inc.*, 48 F.4th 1102, 1109-110 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 783 (2023), and *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753-756 (9th Cir. 2020), relied on by Plaintiffs (Reply Br. 30), underscore what is lacking here. In each case, there was "something more" than coercion—leasing property from the state and acting pursuant to statute (*Rawson*), or a complete delegation of state functions to a private actor (*Ochoa*)—that justified holding a private actor liable for the government's alleged coercion. Nothing in the new materials suggests anything similar here. Thus, as this Court held in *Doe v. Google*, "precedent precludes" holding Twitter liable for any purported governmental attempt to interfere in Twitter's content-moderation decisions. 2022 WL 17077497, at *2 (citing *Sutton*, 192 F.3d at 838).

### c. The New Materials Do Not Evince Encouragement

As this Court recently held, for significant encouragement to transform a private party into a state actor, the government's "use of positive incentives" must "overwhelm the private party and essentially compel the party to act in a certain way." *O'Handley*, 62 F.4th at 1158. "Action taken by private entities with the mere

17

approval or acquiescence of the State" do not meet that high bar. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Plaintiffs' focus on "threats" and general communications (Reply Br. 24), evinces nothing like the "overwhelm[ing]" positive incentives required to establish encouragement. *O'Handley*, 62 F.4th at 1158.

Contrary to Plaintiffs' assertion (Reply Br. 24), neither the FBI flagging potentially violative content nor the White House calling on social media platforms to take action against misinformation generally suggests encouragement where the relevant statements were made "with no strings attached." *O'Handley*, 62 F.4th at 1158. And here, none of the FBI or White House communications offered *any* "positive incentives" for Twitter to take any particular action, let alone any incentives that could overwhelm Twitter, and thus do not suggest encouragement. *O'Handley*, 62 F.4th at 1158. *See* MOOT_SMJN-24–26, 179, 183.

The purported benefits Plaintiffs claim (Reply Br. 24) Twitter received from public officials cannot plausibly be construed as "incentives" to take down content. The new materials show that Twitter and the FBI understood the issuance of security clearances to facilitate information sharing, and not as a gift for removing certain content. MOOT_SMJN-36. And the purported "millions" Twitter received was not compensation for removing content but statutorily authorized reimbursement under the SCA. *See supra* n.2. In any event, this Court has made clear that "receipt of

18

government funds is insufficient to convert a private [actor] into a state actor, even where "virtually all of the [the party's] income is derived from government funding." *Heineke*, 965 F.3d at 1013.

Section 230 does not save Plaintiffs' significant encouragement theory. On Reply, Plaintiffs concede (at 25-26) that the mere existence of Section 230 cannot provide the kind of "significant encouragement" required to turn Twitter's suspension of their accounts into state action, relying instead on public official "exhortations, occurring in an environment where Defendants' invaluable Section 230 immunity could be stripped away." But nothing in the new materials demonstrates that Section 230 was about to be "stripped away." Indeed, public officials do not discuss Section 230 immunity at all in the new materials—let alone intimate its future was predicated on Twitter's removal of specific content.

### d. The New Materials Do Not Evince Joint Action

Nor do the new materials bolster Plaintiffs' joint-action theory. The joint-action test is "intentionally demanding," requiring "complex and deeply intertwined" government participation in the particular "private parties' actions and decisionmaking" being challenged. *O'Handley*, 62 F.4th at 1159-1160 (quotation marks omitted). As discussed, *supra* pp.11-12, the new materials contain no communications between Twitter and any governmental actor concerning any of the Plaintiffs or their Twitter accounts, and thus fail to support a joint-action theory for

19

that reason alone.  Moreover, this Court's precedent forecloses Plaintiffs' argument (Reply Br. 28) that evidence of recurring meetings and "reporting channels" suggests joint action.

Information sharing is not joint action.  This Court has long held that joint action requires active participation in the challenged decision; participation, even "close cooperation," in matters that "facilitated the [challenged] decision" is insufficient. *Mathis II*, 75 F.3d at 504.  Thus, as this Court recently held, there is no inference of joint action where governmental actors "flag[] for Twitter's review posts that potentially violated the company's content-moderation policy" where it is ultimately "the company's employee's [who] decide how to utilize this information based on their own reading of the flagged posts and their own understanding of the Twitter Rules."  *O'Handley*, 62 F.4th at 1160.  Indeed, "core First Amendment principles" protect the rights of private parties to receive information, including from the government, and decide for themselves whether the "government's stated reasons for making a request [are] persuasive." *Id.* at 1158.

Here, the new materials show only the kind of information sharing this Court has rejected as a basis for joint action.  For example, when FBI agents notified Twitter of accounts that might "potentially constitute violations of Twitter's Terms of Service," they made it clear that it was for Twitter to determine whether to take "any action or inaction deemed appropriate within Twitter policy."  MOOT_SMJN-

26; *accord* MOOT_SMJN-24; MOOT_SMJN-58. And Twitter employees would then independently assess the Tweets, rejecting some requests on the ground that "we don't do this,"— meaning Twitter did not as a matter of policy take action against the kinds of information reported. MOOT_SMJN-94; *see also* MOOT_SMJN-102. Thus, just as in *O'Handley*, the new materials do not support joint action. 62 F.4th at 1160.

Plaintiffs' attempt (Reply Br. 27-28) to distinguish *O'Handley* is unpersuasive. Plaintiffs contend (Reply Br. 28) that this case is unlike the "'arms-length' relationship" alleged in *O'Handley* because here "[f]ederal officials set up a schedule of formal meetings, created privileged reporting channels, and established and funded a federal-private partnership to procure censorship of disfavored viewpoints." But *O'Handley* also concerned allegations that governmental actors had access to a "priority pathway … to supply Twitter with information" for "expedited review" which they used "on a repeated basis." 62 F.4th at 1154, 1160. And, as discussed, *supra* n.2, the new materials do not suggest any government-funded partnership to removing content; they show only that Twitter received money through a statutory program created to reimburse private parties for time spent responding to governmental requests for information under the SCA. Moreover, even if the government did pay Twitter for time spent processing the government's reports of possible violations, a financial relationship only gives rise to state action

~~where there is "financial indispensability" between the government and private actor. *Vincent v. Trend Western Tech. Corp.*, 828 F.2d 563, 569 (9th Cir. 1987). A $3 million payment would not make Twitter financially dependent on the government. *O'Handley* is thus squarely on point and forecloses Plaintiffs' joint-action arguments.[5]~~

## CONCLUSION

This Court should deny Plaintiffs' Supplemental Motion for Judicial Notice.

Respectfully submitted,

/s/ *Ari Holtzblatt*

<table>
<tr><td>

FELICIA H. ELLSWORTH
ZAKI ANWAR
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02190
(617) 526-6000

</td><td>

ARI HOLTZBLATT
ALLISON M. SCHULTZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue
Washington, DC 20037
(202) 663-6000

</td></tr>
</table>

---

[5] Plaintiffs' contention (Mot. 4 n.3) that counsel for Twitter violated Rule 11 by representing that Twitter makes content-moderation decisions, including the decision to suspend Trump's account, pursuant to its own rules is utterly baseless. As argued throughout this response, the new materials show precisely what Twitter has argued throughout this litigation—governmental actors shared information with Twitter and Twitter decided whether and what action to take based on its own rules and policies. And the existence of internal disagreement within Twitter regarding whether Trump's January 2021 Tweets violated Twitter's policies does not undermine Twitter's representations in this case. Nothing in the new materials shows that those who made the ultimate decision in January 2021 to suspend Trump's account did not believe that his actions, in the context of the events of January 6, violated Twitter's policies.

RISHITA APSANI
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, California 94306
(650) 858-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1. Exclusive of the exempted portions of the response, as provided in Fed. R. App. P. 27(d)(2) and 32(f), the response contains 5,193 words.

2. The response has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


*/s/  Ari Holtzblatt*
ARI HOLTZBLATT

May 22, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Ari Holtzblatt

ARI HOLTZBLATT