Case No. 22-15961

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———•———

DONALD J. TRUMP, the Forty-Fifth President of the United States;
LINDA CUADROS; AMERICAN CONSERVATIVE UNION; RAFAEL BARBOSA;
DOMINICK LATELLA; WAYNE ALLYN ROOT; NAOMI WOLF,
*Plaintiffs-Appellants,*

v.

TWITTER, INC.; JACK DORSEY,
*Defendants-Appellees,*

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

———————————————

*Appeal from the United States District Court for the Northern District of California (San Francisco),
Case No. 3:21-cv-08378-JD · The Honorable James Donato, District Judge*

## APPELLANTS' SECOND SUPPLEMENTAL
## MOTION FOR JUDICIAL NOTICE

JOHN P. COALE
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
alex@kozinski.com

ANDREI POPOVICI
MARIE L. FIALA
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Facsimile: (650) 530-9990
andrei@apatent.com
marie@apatent.com

*Attorneys for Plaintiffs-Appellants,
Donald J. Trump, the Forty-fifth President of the United States;
Linda Cuadros; American Conservative Union; Rafael Barbosa;
Dominick Latella; Wayne Allyn Root*

**Additional Counsel Listed on Signature Page**



## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................3

    I.      The Evidence Submitted for Judicial Notice ........................................3

    II.     The Submitted Exhibit Is Judicially Noticeable ...................................4

          A.      Legal Standards for Judicial Notice .............................................4

          B.      Ms. Yaccarino's Statements Are Judicially Noticeable ..............4

          C.      Ms. Yaccarino's Statements Are Party Admissions ....................5

    III.    The Exhibit Is Highly Relevant to Defendants' Suggestion of Mootness ................................................................................................6

CONCLUSION ..........................................................................................................7

DECLARATION OF MARIE L. FIALA IN SUPPORT OF APPELLANTS' SECOND SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE .......................9

CERTIFICATE OF COMPLIANCE......................................................................12

EXHIBIT 1:  Transcript of portions of Linda Yaccarino's August 10, 2023 interview in which she discusses Twitter's current content moderation policy ......................................................................Add.1

## TABLE OF AUTHORITIES

**CASES**                                                 **Page(s)**

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019)..................................................................2

*Bryant v. Carleson*,
    444 F.2d 353 (9th Cir. 1971)....................................................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000),.................................................................................1

*Hernandez v. Wells Fargo & Co.*,
    2019 WL 3017657 (N.D. Cal. Jul. 10, 2019) ...........................................6

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    906 F.2d 432 (9th Cir. 1990)....................................................................5

*Rashid v. BMW of North America, LLC*,
    2020 WL 5640734 (S.D. Cal. Sept. 22, 2020)..........................................6

*United States v. Lowell*,
    649 F.2d 950 (3d Cir. 1981).....................................................................4

*Vitt v. Apple Computer, Inc.*,
    2007 WL 9662403 (C.D. Cal. Mar. 12, 2007)..........................................5

**RULES**

Circuit Rule 27-1..............................................................................................1

Fed. R. Evid. 201 ....................................................................................1, 4, 5

## INTRODUCTION

Pursuant to Federal Rule of Evidence 201 and Circuit Rule 27-1, Plaintiffs seek judicial notice of recent public statements by Linda Yaccarino, Defendant Twitter, Inc.'s Chief Executive Officer.[1] This motion is filed in support of Plaintiffs' Opposition to Defendants' Suggestion of Mootness, currently pending before this Court. Plaintiff Naomi Wolf and Defendants take no position on this motion. As of the time this brief was finalized, counsel for Intervenor United States had not responded with their position on the motion.

Defendants have argued that certain Plaintiffs' claims are moot because their access to the Twitter platform has been reinstated. The gist of Defendants' argument is that Twitter voluntarily reinstated these Plaintiffs' Twitter accounts pursuant to "a new [content moderation] policy by new management." Brief for Appellees Twitter, Inc. and Jack Dorsey ("Def. Br.") at 22. Therefore, Defendants say, there is no possibility that the challenged conduct will recur.

Twitter has made no evidentiary showing that its previous censorship could not "reasonably be expected to recur," let alone making it "absolutely clear," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), that "the change in its behavior is 'entrenched' or 'permanent.'"

---

[1] The Twitter platform recently was renamed "X." Plaintiffs will continue to refer to Defendant as "Twitter" for the sake of consistency with prior pleadings.

*Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1102 (9th Cir. 2019).  To the contrary, recent public statements by Twitter's new CEO, Linda Yaccarino, compel the opposite conclusion.  According to Ms. Yaccarino, **"If you are going to post something [on the Twitter platform] that is lawful, but it's awful, you get labeled.  You get labeled, you get de-amplified, which means it cannot be shared and it is certainly demonetized."**  This new evidence demonstrates that the policy on which Twitter relied in suggesting mootness is not, in fact, permanent.  Moreover, the new policy's vague terms make it peculiarly susceptible to governmental pressure of the type amply demonstrated in the Twitter Files, which are the subject of Appellants' first Supplemental Motion for Judicial Notice.  "Awful" means vastly different things to different people; the term has frequently been applied to the content of Plaintiffs' speech.  If the White House or the FBI or powerful Members of Congress were to label President Trump's 2024 campaign tweets as "awful," Twitter would no longer have even its previous (now rescinded) free speech policy to hide behind.  The watery new policy is practically an engraved invitation for powerful government actors to pressure or coordinate with Twitter in censoring Plaintiffs' tweets.  The new evidence conclusively establishes that Plaintiffs' appeal cannot possibly be deemed moot.

# ARGUMENT

I.    **The Evidence Submitted for Judicial Notice**

On May 1, 2023, Elon Musk announced that Linda Yaccarino would become Twitter's next CEO. On August 10, 2023, Ms. Yaccarino was interviewed on CNBC's "Squawk on the Street" program where she was asked, among other things, about Twitter's current content moderation policies. Ms. Yaccarino made the following statements in the course of the interview:

> **Linda Yaccarino:** Since acquisitions we have built brand safety and content moderation tools that have never existed before at this company. And we've introduced a new policy. So, your specific point about hate speech is called freedom of speech, not reach. So, if you're going to post something that's illegal or against the law, you're gone, zero tolerance. **But more importantly, if you are going to post something that is lawful, but it's awful, you get labeled. You get labeled, you get de-amplified, which means it cannot be shared and it is certainly demonetized,** back to your direct point about brands, brand safety. So, they are protected from the risk of being next to that content. And it's also why it's really important to note that once a post is labeled and can't be shared, and the user sees that, 30% of the time they take it down themselves. Staggeringly, they take it down, and that reducing that hateful content from being seen is one of the best examples of how X is committed to encouraging healthy behavior online. And today, I can confidently sit in front of you and say that 99.9% of all posted impressions are healthy.
>
> **Interviewer:** How do you define healthy, though? Is porn healthy? Are conspiracy theories healthy?
>
> **Linda Yaccarino:** You know, it goes back to my point about our success with freedom of speech, not reach. **And if it is lawful, but it's awful, it's extraordinarily difficult for you to see it.**

Declaration of Marie L. Fiala in Support of Appellants' Second Supplemental Motion for Judicial Notice ("Fiala Decl."), Exh. 1 (emphasis added).

**II. The Submitted Exhibit Is Judicially Noticeable**

**A. Legal Standards for Judicial Notice**

A court may judicially notice information that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Judicial notice of properly presented materials is mandatory. A court "***must*** take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added). New developments in a case are especially appropriate for appellate judicial notice. *See, e.g., United States v. Lowell*, 649 F.2d 950, 966 n.26 (3d Cir. 1981) (normal rule limiting appeal to existing record "is subject to the right of an appellate court in a proper case to take judicial notice of new developments not considered by the lower court."); *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) ("[W]e take judicial notice of a number of developments since the taking of this appeal … since such circumstances may affect our consideration of the various issues presented.").

**B. Ms. Yaccarino's Statements Are Judicially Noticeable**

Rule 201(b)'s conditions for taking judicial notice of Ms. Yaccarino's statements are satisfied. The authenticity of this information "can be accurately and readily determined from sources whose accuracy cannot reasonably be

4

questioned." Ms. Yaccarino herself posted the interview in a "Twitter Spaces" meeting. Fiala Decl. ¶ 6. Video and a transcript of the interview also were posted online by news media outlets. Id. ¶¶ 5, 7. Its existence and content can be readily ascertained by checking the Twitter website at the link provided in the Fiala Declaration. It is inconceivable that Twitter's lawyers would contradict its CEO's public statements by disputing the statements' authenticity. *See, e.g., Vitt v. Apple Computer, Inc.*, 2007 WL 9662403, at *2 (C.D. Cal. Mar. 12, 2007) (taking judicial notice of statements on defendant's website; "As such, it is difficult to believe that Defendant intends to argue any of the alleged statements was not made."). Because this information can be readily ascertained from sources whose accuracy cannot be reasonably questioned, the judicial notice standards are satisfied. Fed. R. Evid. 201(b)(2).

### C. Ms. Yaccarino's Statements Are Party Admissions

Ms. Yaccarino's statements are judicially noticeable for their content. In addition, the fact that she is Twitter's CEO makes her statements party admissions. "[A] statement made by a party's agent or servant may be introduced against that party if it concerns a matter within the scope of the agency or employment and was made during the existence of the relationship." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458 (9th Cir. 1990). As such, Ms. Yaccarino's statements are noticeable for their truth. "[P]arty

5

admissions may be judicially noticed for the truth of the matter if requested by the opposing party." *Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, at *5 (N.D. Cal. Jul. 10, 2019); *see also Rashid v. BMW of North America, LLC*, 2020 WL 5640734, at *2 (S.D. Cal. Sept. 22, 2020) (taking judicial notice of statements in auto leasing application as party admissions).

**III. The Exhibit Is Highly Relevant to Defendants' Suggestion of Mootness**

The judicial notice exhibit provides compelling evidence that Defendants' Suggestion of Mootness must be denied. Ms. Yaccarino's admission that Twitter henceforth will censor "lawful but awful" postings directly undermines Defendants' argument that their previous censorship of disfavored content, particularly posts made by President Trump, will not recur under Twitter's new management. "Lawful but awful" is an entirely subjective standard that can be applied at the whim of the Twitter censors. It is indisputable that many liberals and progressives reflexively consider virtually any utterance by Mr. Trump as "awful," if not worse. If Twitter were to receive angry messages from the White House or repeated visits from FBI agents or a barrage of emails from Capitol Hill committee staffers, all insisting that everything Mr. Trump and his supporters say is awful and should be blocked, what would Twitter do? Nothing in the new, new policy would preclude Twitter from complying. Now, more than ever, Twitter needs the protection of a federal court injunction so it can tell meddlesome

government agents to buzz off. With the 2024 election season heating up, and the serious risk that Democrats in the government will make every effort to keep Mr. Trump from reaching his followers, this Court's immediate intervention is indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their second supplemental motion for judicial notice.

Date: September 5, 2023          LAW OFFICE OF ANDREI D. POPOVICI, P.C.

*s/ Marie L. Fiala*
Marie L. Fiala
*Attorneys for Appellants*
*Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root*

JOHN P. COALE
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

RICHARD POLK LAWSON
GARDNER BREWER HUDSON
400 North Ashley Drive
Suite 1100
Tampa, FL 33602
Telephone: (813) 221-9600
Facsimile: (813) 221-9611
Email: rlawson@gardnerbrewer.com

JOHN Q. KELLY
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Telephone: (203) 896-4504
Email: jqkelly@fercolaw.com

ALEX KOZINSKI
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Email: alex@kozinski.com

FRANK C. DUDENHEFER, JR.
THE DUDENHEFER LAW FIRM, LLC
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

MICHAEL J. JONES
RYAN TOUGIAS
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

**DECLARATION OF MARIE L. FIALA IN SUPPORT OF APPELLANTS' SECOND SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE**

I, Marie L. Fiala, hereby declare as follows:

1. I am an attorney at law, duly licensed to practice in the State of California and a member in good standing of the Bar of this Court. I am one of the counsel of record for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root in this matter. Except as otherwise noted, I make this declaration based on my personal knowledge of the facts set forth herein.

2. On Wednesday evening, August 30, I advised all counsel in this matter by email of Plaintiffs' intention to file this motion. Counsel for Plaintiff Naomi Wolf and for Defendants responded that they take no position on this motion. As of the time this motion was finalized, counsel for Intervenor United States had not responded with their position on the motion.

3. The attached Exhibit is filed in support of Plaintiffs' Opposition to Defendants' Suggestion of Mootness, currently pending before this Court.

4. On May 12, 2023, Elon Musk announced that Linda Yaccarino would become Twitter's next Chief Executive Officer. (The Twitter platform recently was renamed "X." Plaintiffs will continue to refer to Defendant as "Twitter" for the sake of consistency with prior pleadings.)

9

5. On August 10, 2023, Ms. Yaccarino was interviewed on CNBC's "Squawk on the Street" program. The original CNBC interview appears at https://www.cnbc.com/video/2023/08/10/watch-cnbcs-full-interview-with-x-corp-ceo-linda-yaccarino-on-twitter-rebrand-and-more.html. However, that interview is behind a paywall and therefore not generally available.

6. On August 10, 2023, Ms. Yaccarino posted the CNBC interview in a "Twitter Spaces" meeting, which appears at https://twitter.com/lindayaX/status/1689637368998010881. That posting is visible to anyone logged into Twitter.

7. On August 18, 2023, the journalist Glenn Greenwald reposted portions of Ms. Yaccarino's interview on his "System Update" news podcast. The full episode of that show appears at https://rumble.com/v38k5vc-system-update-132.html. A transcript of Mr. Greenwald's podcast, including segments from Ms. Yaccarino's interview, appears at https://greenwald.locals.com/post/4451585/twitter-faltering-on-free-speech-promise-new-ceo-pushes-strict-content-moderation-civic-integr. However, that transcript is behind a paywall and therefore is not publicly available.

8. For the Court's convenience, a true and correct transcript of portions of Ms. Yaccarino's August 10, 2023 interview in which she discusses Twitter's current content moderation policy is attached hereto as Exhibit 1.

I hereby declare under the laws of the State of California and the United States of America that the foregoing is true and accurate and that this declaration was executed on September 5, 2023, in Orinda, California.

        *s/ Marie L. Fiala*
        Marie L. Fiala

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### Certificate of Compliance

**9th Cir. Case Number(s): No. 22-15961**

I am the attorney for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root.

**This motion contains 2,112 words, and includes 0 words manually counted in any visual images.** This motion is less than the twenty-page maximum, excluding the items exempted by Fed. R. App. P. 32(f). The motion's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Fed. R. App. P. 27(d)(2) and the page limit of Cir. R. 27-1(1).

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Marie L. Fiala*          **Date:** September 5, 2023

# EXHIBIT 1

**Linda Yaccarino:** Since acquisitions we have built brand safety and content moderation tools that have never existed before at this company. And we've introduced a new policy. So, your specific point about hate speech is called freedom of speech, not reach. So, if you're going to post something that's illegal or against the law, you're gone, zero tolerance. But more importantly, if you are going to post something that is lawful, but it's awful, you get labeled. You get labeled, you get de-amplified, which means it cannot be shared and it is certainly demonetized, back to your direct point about brands, brand safety. So, they are protected from the risk of being next to that content. And it's also why it's really important to note that once a post is labeled and can't be shared, and the user sees that, 30% of the time they take it down themselves. Staggeringly, they take it down, and that reducing that hateful content from being seen is one of the best examples of how X is committed to encouraging healthy behavior online. And today, I can confidently sit in front of you and say that 99.9% of all posted impressions are healthy.

**Interviewer:** How do you define healthy, though? Is porn healthy? Are conspiracy theories healthy?

**Linda Yaccarino:** You know, it goes back to my point about our success with freedom of speech, not reach. And if it is lawful, but it's awful, it's extraordinarily difficult for you to see it.

Linda Yaccarino (@lindayaX), Twitter (Aug. 10, 2023, 9:58 AM), https://twitter.com/lindayaX/status/1689637368998010881 (quoted text beginning at time stamp 26:37).