**No. 22-15961**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, et al.,
*Plaintiffs-Appellants*,

v.

TWITTER, INC. AND JACK DORSEY,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California, No. 3:21-cv-08378-JD (Donato, J.)

## APPELLEES' RESPONSE TO CERTAIN APPELLANTS' SECOND SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

FELICIA H. ELLSWORTH
ZAKI ANWAR
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

RISHITA APSANI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

ARI HOLTZBLATT
ALLISON M. SCHULTZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue
Washington, DC 20037
(202) 663-6000

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, California 94306
(650) 858-6000

September 15, 2023

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.    Plaintiffs' Motion Is Procedurally Improper..........................................2

    II.    Ms. Yaccarino's Statements Are Not Relevant To Mootness ..............4

CERTIFICATE OF COMPLIANCE .....................................................................10

CERTIFICATE OF SERVICE ...............................................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) ............................................................. 8

*Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Co.*, 827 F.2d 1291 (9th Cir. 1987) ................................................. 6

*Clementine Co. LLC. v. Adams*, No. 21-CV-7779, 2022 WL 4096162 (S.D.N.Y. Sept. 7, 2022) .............................................................................. 9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ....................... 3

*X Corp. v. Bonta*, 2:23-cv-01939 (E.D. Cal. Sept. 8. 2023) ...................................... 5

## OTHER AUTHORITIES

Freedom of Speech, Not Reach
https://tinyurl.com/4uw6abpt (Apr. 17, 2023) ............................................ 2, 8

Twitter, Inc., Amendment No. 13 to Schedule 13D (Form SC 13D/A)
https://tinyurl.com/mr4aspek (Oct. 27, 2022) ................................................ 5

## INTRODUCTION

Plaintiffs contend that a new approach to content moderation, adopted under Twitter's new management to achieve Twitter's new strategic vision of open online communication, somehow revives their state-action claims despite Plaintiffs having obtained the relief they sought. They seek judicial notice of an interview from Twitter's new CEO, Linda Yaccarino, which they claim establishes that the new enforcement approach *could theoretically* be applied to them at the government's behest. Their motion is procedurally improper. It is an unauthorized second response to Twitter's suggestion of mootness and improperly seeks notice of their subjective interpretation of the interview. But in any event, the new evidence does not support the existence of a live controversy. Mere speculation of the theoretical possibility of a recurring injury is not enough to prevent mootness. And here, that speculation is unfounded because the new enforcement philosophy reflects a decisive break with Twitter's prior approach to content moderation. It therefore supports the conclusion that the reinstatement of plaintiffs' accounts pursuant to Twitter's new strategic vision moots their challenges to Twitter's prior enforcement actions.[1]

---

[1] As previously noted, Twitter, Inc. has merged into X Corp. and no longer exists. Additionally, the Twitter platform has been renamed "X." For continuity with prior briefing and the convenience of the Court, however, defendant-appellee will continue to refer to the company and platform as "Twitter."

# ARGUMENT

## I. PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER

Plaintiffs' motion should be denied because it is procedurally improper for two reasons.

*First*, although framed as a motion for judicial notice, Plaintiffs' motion in fact is an unauthorized second opposition to Twitter's suggestion of mootness. As Plaintiffs concede, the motion "is filed in support of Plaintiffs' Opposition to Defendants' Suggestion of Mootness." Mot. 1. But they provide no basis for filing another brief in support of that opposition and there is none. Plaintiffs' latest filing addresses a new approach to content moderation that Twitter announced in April, before Plaintiffs filed their opposition and accompanying motion for judicial notice. *See* Dkts. 89, 90 (May 5, 2023). In her interview, Ms. Yaccarino explains that "we've introduced a new policy … called freedom of speech, not reach." Mot. 3. That content-moderation philosophy was publicly announced on Twitter's website in April. *See* Freedom of Speech, Not Reach: An update on our enforcement philosophy, https://tinyurl.com/4uw6abpt (Apr. 17, 2023). Plaintiffs do not explain why they could not have addressed this policy in their first opposition.

*Second*, Plaintiffs seek notice of statements made during the interview when only the fact that Ms. Yaccarino gave an interview on August 10, 2023, is judicially noticeable. Plaintiffs seek to establish by judicial notice "that Twitter henceforth

2

will censor 'lawful but awful' postings," and to draw from that the inferences that the new enforcement philosophy is subject to government intervention and will be applied against "Mr. Trump and his supporters" at the government's behest. Mot. 6. But "[i]t is improper to judicially notice a transcript when the substance of the transcript is subject to varying interpretations," because "[i]n that scenario" the fact purportedly established by the transcript "does not qualify for judicial notice under Rule 201(b)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) (quotation marks omitted). Here, plaintiffs themselves argue (Mot. 2, 6) that the phrase "lawful but awful" "means vastly different things to different people" and is "entirely subjective." Thus, as in *Khoja*, the purported "fact" plaintiffs seek to establish does not qualify for judicial notice.

Nor, contrary to plaintiffs' argument (Mot. 5-6), may the Court take judicial notice of the truth of Ms. Yaccarino's statements as party admissions. As previously explained (Dkt. 105 at 7-8), the cases on which plaintiffs have relied for this position are poorly reasoned, concluding that party admissions are judicially noticeable simply because they are not hearsay. Plaintiffs' only response (Dkt. 106 at 8) has been that "courts take different positions on this issue"; they have offered no support for the flawed reasoning of the cases relied upon. Plaintiffs now reprise that same faulty argument, again relying exclusively on cases that either deal exclusively with the hearsay rules or conclude that party admissions are judicially noticeable simply

3

because they are not hearsay. Because whether or not a statement is hearsay has no bearing on its noticeability, Ms. Yaccarino's statements may not be judicially noticed as party admissions.

## II. MS. YACCARINO'S STATEMENTS ARE NOT RELEVANT TO MOOTNESS

In any event, the statements that plaintiffs point to do not evince any live case or controversy between the parties. Plaintiffs claim that Ms. Yaccarino's comments provide "compelling evidence that Defendants' Suggestion of Mootness must be denied." Mot. 6. That sweeping conclusion in no way follows from what is in fact a narrow and unpersuasive argument: The mere fact that Twitter, under *new* management, has announced a *new* content-moderation approach that government officials could theoretically insist applies to plaintiffs' Twitter content is sufficient to preserve jurisdiction over plaintiffs' challenge to Twitter's *prior* enforcement actions, which were made under *prior management*, and have already been reversed. Such argument lacks any basis in law or common sense and should be rejected.

Despite plaintiffs' contested conclusion, there is substantial common ground between the parties. All agree on the following: Plaintiffs Donald Trump, Linda Cuadros, Wayne Root, and Naomi Wolf filed this lawsuit principally challenging the suspension of their accounts—allegedly as a result of government coercion or collusion—due to posting election- and COVID-19 related information. *See* 3-ER-356-361 ¶¶ 114 (Trump: incitement of election-related violence), 124 (Cuadros:

4

vaccine misinformation), 152 (Root: COVID-19 and 2020 election results misinformation), 162 (Wolf, vaccine misinformation).[2] Plaintiffs' lawsuit sought, above all else, an "injunction … ordering Twitter to immediately reinstate the[ir] Twitter accounts." 3-ER-380.

Then, Twitter was acquired by X Holdings I, Inc., a corporation majority-owned and controlled by Elon R. Musk. *See* Twitter, Inc., Amendment No. 13 to Schedule 13D (Form SC 13D/A), (Oct. 27, 2022), https://tinyurl.com/mr4aspek. Mr. Musk changed the strategic vision and trajectory of Twitter. Under new leadership, Twitter has publicly challenged governmental attempts to influence social media companies' private content-moderation decisions. *See, e.g.*, Complaint, *X Corp. v. Bonta*, 2:23-cv-01939 (E.D. Cal. Sept. 8. 2023). Additionally, Twitter decided to "no longer enforc[e] the COVID-19 misleading information policy." *See* Holtzblatt Decl. Ex. C.[3] Another new policy is the "general amnesty," Holtzblatt Decl. Ex. D, that led Twitter to reinstate Cuadros, Wolf, and Root's accounts. Sebhatu Decl. ¶¶5, 7, 9. And Mr. Trump's account was reinstated

---

[2] Twitter's mootness argument remains limited to the First Amendment claims of Plaintiffs Trump, Cuadros, Root, and Wolf, all of whom have been reinstated to the platform and remain active on the platform. Plaintiff Wolf did not join in this motion. And because Twitter has not argued that the First Amendment claims of Plaintiffs Barbosa and Latella are moot, the proposed materials have no relevance to their claims.

[3] All declarations are attached to Twitter's original suggestion of mootness, available at Docket Entry 65.

pursuant to Twitter's business judgment that Twitter's users should collectively be permitted to determine the account's current status. Sebhatu Decl. ¶3; Holtzblatt Decl. Exs. A, B. As the District Court recognized, these "changes happened only after a new owner acquired Twitter and publicly announced new policies for users and content." SER191.

As to this motion, both parties further agree that Twitter's new CEO, Linda Yaccarino, in the CNBC interview excerpted by plaintiffs, discussed another of Twitter's "new polic[ies]." Mot. 2. In the interview, Ms. Yaccarino stated that "[s]ince acquisitions we have built brand safety and content moderation tools that have never existed before at this company," including Freedom of Speech, Not Reach. *Id.* Ex. 1. The adoption of that new approach to content moderation is not enough to resurrect a live controversy. Plaintiffs' lawsuit did not—and could not— seek to prevent Twitter from ever taking any action with respect to their accounts. Instead, they sought to reverse specific decisions under specific content-moderation policies that they claimed had been prompted by government interference and to prevent Twitter from succumbing to such government interference in moderating their accounts in the future. Thus, to avoid mootness, plaintiffs must show that whatever Twitter is now doing with respect to their accounts is traceable to the government. *See Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1293, 1295-1297 (9th Cir. 1987) (noting that once the prosecutor's

6

threats had been removed a private party may "thereafter decide independently" to make its own decisions, even if similar to those taken previously).

But, on that point, plaintiffs' motion is most notable for what it does not say. Plaintiffs do not claim that Twitter has applied the new Freedom of Speech, Not Reach policy to any of their Tweets. And plaintiffs do not suggest (let alone show) that the government played any role in either designing Freedom of Speech, Not Reach or in enforcing it. Instead, plaintiffs merely ask: "[i]f Twitter were to receive angry messages from the White House or repeated visits from FBI agents or a barrage of emails from Capitol Hill committee staffers, all insisting that everything Mr. Trump and his supporters say is awful and should be blocked, what would Twitter do?" Mot. 6. Plaintiffs identify nothing suggesting any concrete threat either that any governmental actor will determine that plaintiffs' content should be restricted under the new approach and "insist[]" that Twitter moderate it, Mot. 6, or that Twitter would respond by restricting their content without first making an independent assessment in connection with its own policies. Instead, plaintiffs suggest only that "[n]othing in the new, new policy would *preclude* Twitter from complying." *Id.* (emphasis added).

Such speculation cannot preserve jurisdiction over their challenge to enforcement actions taken *under prior management* that have been undone. The mere "theoretical possibility" of recurrence is insufficient to preserve a live

7

controversy, *Brach v. Newsom*, 38 F.4th 6, 14 (9th Cir. 2022), yet that is all plaintiffs can muster here. As Twitter has explained, plaintiffs have not adequately alleged cognizable government coercion, collusion, or joint action at any point in time, as the district court correctly concluded. But regardless, plaintiffs certainly provide no explanation, and no authority, for their conclusion that any alleged coercion "will recur under Twitter's new management," Mot. 6, merely because the terms the new CEO used to describe Twitter's new content-moderation philosophy in an interview were allegedly "vague." Mot. 2. Plaintiffs' argument is entirely speculative and insufficient to preserve a live controversy.

Indeed, the adoption of Freedom of Speech, Not Reach provides *even more evidence* of mootness. The new approach to content moderation confirms that new management has swiftly and definitively reoriented Twitter's strategic vision, moving away from the policies and practices plaintiffs challenge. As reflected in the new content-moderation approach, new management believes that "Twitter users have the right to express their opinions and ideas without fear of censorship" and that "[r]estricting the reach of Tweets" is a more nuanced and more fair content-moderation approach that "allows [Twitter] to move beyond the binary 'leave up versus take down' approach" of prior management. Freedom of Speech, Not Reach: https://tinyurl.com/4uw6abpt. Much like the Twitter Files, the new approach to content moderation proves yet again that the reinstatement of plaintiffs' accounts

8

pursuant to the company's new vision moots plaintiffs' claims. *See, e.g.*, *Clementine Co. LLC. v. Adams*, No. 21-CV-7779, 2022 WL 4096162, at *3 (S.D.N.Y. Sept. 7, 2022), *aff'd sub nom. Clementine Co., LLC v. Adams*, 74 F.4th 77 (2d Cir. 2023) (finding mootness where a "change in administration" made the discontinued government policy unlikely to recur). Thus, far from resurrecting their claims, the new approach to content moderation further confirms the absence of any evidence that plaintiffs' alleged injuries are likely to recur.

## CONCLUSION

This Court should deny plaintiffs' Second Supplemental Motion for Judicial Notice.

Respectfully submitted,

/s/ *Ari Holtzblatt*

| | |
|---|---|
| FELICIA H. ELLSWORTH<br>ZAKI ANWAR<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000 | ARI HOLTZBLATT<br>ALLISON M. SCHULTZ<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2100 Pennsylvania Avenue<br>Washington, DC 20037<br>(202) 663-6000 |
| RISHITA APSANI<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>(212) 230-8800 | THOMAS G. SPRANKLING<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2600 El Camino Real<br>Suite 400<br>Palo Alto, California 94306<br>(650) 858-6000 |

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1. Exclusive of the exempted portions of the response, as provided in Fed. R. App. P. 27(d)(2) and 32(f), the response contains 1,952 words.

2. The response has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Ari Holtzblatt*
ARI HOLTZBLATT

September 15, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Ari Holtzblatt*
ARI HOLTZBLATT

11