**Case No. 22-15961**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD J. TRUMP, the Forty-Fifth President of the United States;
LINDA CUADROS; AMERICAN CONSERVATIVE UNION; RAFAEL BARBOSA;
DOMINICK LATELLA; WAYNE ALLYN ROOT; NAOMI WOLF,
*Plaintiffs-Appellants,*

v.

TWITTER, INC.; JACK DORSEY,
*Defendants-Appellees,*

and

UNITED STATES OF AMERICA,
*Intervenor-Appellee.*

_____

*Appeal from the United States District Court for the Northern District of California (San Francisco),
Case No. 3:21-cv-08378-JD · The Honorable James Donato, District Judge*

## APPELLANTS' REPLY IN SUPPORT OF SECOND
## SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

JOHN P. COALE
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
johnpcoale@aol.com

ALEX KOZINSKI
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
alex@kozinski.com

ANDREI POPOVICI
MARIE L. FIALA
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Facsimile: (650) 530-9990
andrei@apatent.com
marie@apatent.com

*Attorneys for Plaintiffs-Appellants,
Donald J. Trump, the Forty-fifth President of the United States;
Linda Cuadros; American Conservative Union; Rafael Barbosa;
Dominick Latella; Wayne Allyn Root*

**Additional Counsel Listed on Signature Page**


COUNSEL PRESS · (213) 680-2300           PRINTED ON RECYCLED PAPER  

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.      This Motion Is Procedurally Proper .......................................................2

    II.     The SSMJN Exhibit Is Judicially Noticeable.........................................3

             A.     Defendants Do Not Question the Accuracy of
                   Ms. Yaccarino's Statement ............................................................3

             B.     Ms. Yaccarino's Statement May Be Noticed for Its Truth ..........3

    III.    Ms. Yaccarino's Statement Is Probative of Mootness ..........................5

             A.     Defendants Again Misstate the Burden of Proof on
                   This Issue .......................................................................................5

             B.     Ms. Yaccarino's Statement That Twitter Will Censor
                   "Lawful but Awful" Content Undermines Defendants'
                   Assertion of Mootness ..................................................................6

CONCLUSION ........................................................................................................10

## TABLE OF AUTHORITIES

**CASES**          **Page(s)**

*Aldini AG v. Silvaco, Inc.*,
     2022 WL 20208930 (N.D. Cal. May 17, 2022)..................................................3

*Already, LLC v. Nike, Inc.*,
     568 U.S. 85 (2013)...........................................................................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
     528 U.S. 167 (2000).........................................................................................5

*Hernandez v. Wells Fargo & Co.*,
     2019 WL 3017657 (N.D. Cal. Jul. 10, 2019) ..................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
     899 F.3d 988 (9th Cir. 2018)........................................................................4, 5

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
     567 U.S. 298 (2012).........................................................................................6

*Lutge v. Harrington*,
     2022 WL 18401351 (N.D. Cal. Aug. 2, 2022) ................................................4

*Missouri v. Biden*,
     No. 23-30445, 2023 WL 5821788 (5th Cir. Sept. 8, 2023).........................2, 9

*Nantucket Investors II v. Cal. Fed. Bank*,
     61 F.3d 197 (3rd Cir. 1995) ............................................................................4

*O'Neal v. Donahoe*,
     802 F.Supp.2d 709 (E.D. Va. 2011) ...............................................................4

*Porter v. Clarke*,
     852 F.3d 358 (4th Cir. 2017)...........................................................................6

*Rosemere Neighborhood Ass'n v. U.S. Env. Protection Agency*,
     581 F.3d 1169 (9th Cir. 2009).........................................................................5

*Wall v. Wade*,
     741 F.3d 492 (4th Cir. 2014)...........................................................................6

**RULES**

Fed. R. Evid. 201(b) ................................................................................................. 3

Fed. R. Evid. 801(d)(2) ............................................................................................. 3

**OTHER AUTHORITIES**

*Against Donald Trump*, THE ATLANTIC (Nov. 2016) ................................................. 7

*Donald Trump, a Retrospective: A Look Back at the 1,462 Worst Days
    in Presidential History*, VANITY FAIR (Jan. 20, 2021) ....................................... 7

Phillip Hamburger, *Is Social-Media Censorship a Crime?*, WALL ST. J.,
    Dec. 14, 2022 ..................................................................................................... 9

*Read the worst things Manhattanites said about Trump in jury selection for
    the Trump Org tax-fraud trial*, BUSINESS INSIDER (Oct. 29, 2022) ................. 6

*That Old Twitter Feeling*, THE WASHINGTON FREE BEACON (Sept. 14, 2023) .......... 8

## INTRODUCTION

On August 10, 2023, Twitter's CEO, Linda Yaccarino, announced a new interpretation of the platform's content moderation policy: Henceforth, Twitter would censor content it deemed "lawful but awful." That new standard was nowhere contained in the content moderation philosophy announced in April 2023, *see* Appellees' Response ("Response") at 2, and thus could not have been submitted for judicial notice earlier.

Far from reforming Defendants' well-documented government-driven censorship practices, *see* Appellants' Supplemental Motion for Judicial Notice (Dkt. 89), the new policy is rife with potential for government interference and abuse. "Awfulness" is a very low bar. The "lawful but awful" standard gives former President Trump and other conservative speakers virtually no protection against government pressure to censor politically disfavored content. That is especially true because, as the Fifth Circuit found in a recent landmark state action opinion based largely on the same facts present here, the government agencies in question have admitted they continue to be in regular contact with social media platforms ("SMPs") concerning content moderation issues today.[1] *See Missouri v.*

---

[1] It takes little "speculation," Response at 1, 7, 8, to see the Democratic establishment's shadowy hand behind Twitter's recent application of this new policy to block a news organization's reporting on the pornography scandal *(footnote continues on next page)*

1

*Biden*, No. 23-30445, 2023 WL 5821788 (5th Cir. Sept. 8, 2023), at *8.[2] And the fact that certain Plaintiffs' Twitter accounts have been reinstated gives them no protection at all against future First-Amendment violations by government officials working in tandem with Defendants. Only injunctive relief can provide that assurance.

Ms. Yaccarino's recent public embellishment of Defendants' content moderation policy is doubtless relevant to mootness and militates strongly against dismissing Plaintiffs' claims.

## ARGUMENT

### I. This Motion Is Procedurally Proper.

Defendants' argument that this motion is procedurally improper, Response at 2, is just silly. Defendants base that assertion on an introductory sentence in Plaintiffs' motion, which reads: "This motion is filed in support of Plaintiffs' Opposition to Defendants' Suggestion of Mootness, currently pending before this Court." Second Supplemental Motion for Judicial Notice ("SSMJN") at 1. The only and obvious purpose that sentence serves is to identify the pleading to which the SSMJN is relevant. Any other reading is sophistry. The SSMJN is limited to

---

engulfing the Democratic candidate for a key seat in Virginia's House of Delegates. *See infra* at 8-9.

[2] On September 18, 2023, Plaintiffs submitted the Fifth Circuit's opinion in *Missouri v. Biden* as supplemental authority. *See* Dkt. 119.

2

arguing that the submitted material is judicially noticeable and relevant to the mootness issue, and thus colors well within the lines.

## II. The SSMJN Exhibit Is Judicially Noticeable.

### A. Defendants Do Not Question the Accuracy of Ms. Yaccarino's Statement.

Rule 201 requires judicial notice to be taken of a fact that can be "readily determined from **sources** whose accuracy cannot **reasonably** be questioned." Fed. R. Evid. 201(b) (emphasis added). That condition is met. As Twitter's CEO, Ms. Yaccarino is uniquely positioned to speak authoritatively regarding Defendants' evolving content moderation policies and practices. Defendants do not dispute that she said what she said or that it was reported accurately, nor have they submitted any evidence contradicting her statements. The "accuracy of sources" prerequisite to taking judicial notice is therefore satisfied.

### B. Ms. Yaccarino's Statement May Be Noticed for Its Truth.

Plaintiffs are not seeking judicial notice of the proffered exhibit based on the fact it is a party admission under Federal Rule of Evidence 801(d)(2). As explained in the motion, Ms. Yaccarino's statement satisfies the conditions for judicial notice independent of the hearsay rules. *See* SSMJN at 4-5. But, as a party admission, her statement may be noticed for its truth as well as for the fact of its existence. "Judicially noticeable facts include … party admissions." *Aldini AG v. Silvaco, Inc.*, 2022 WL 20208930, at *2 (N.D. Cal. May 17, 2022); *see also*

3

*Lutge v. Harrington*, 2022 WL 18401351 (N.D. Cal. Aug. 2, 2022) (same); *Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, *5 (N.D. Cal. Jul. 10, 2019) ("[P]arty admissions may be judicially noticed for the truth of the matter if requested by the opposing party."); *O'Neal v. Donahoe*, 802 F.Supp.2d 709, 715 n.7 (E.D. Va. 2011) ("It is well established that a court may take judicial notice, pursuant to Rule 201 … [of] parties' admissions."); *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 205 (3rd Cir. 1995) (court may take judicial notice that party made admissions).

This Court is entitled to consider Ms. Yaccarino's statement for its truth. This is not a situation where one party tries to take advantage of an opponent's inadvertent statement or a muddled transcript of impromptu remarks. Ms. Yaccarino's statement manifests a high degree of intentionality; she described Twitter's new "lawful but awful" approach several times during the course of an interview specifically discussing Twitter's content moderation policy. Her statement is not "subject to reasonable dispute," as was true in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), which Defendants cite. The proffered statements in *Khoja* were made by a company officer in the course of an investors' call. This Court determined that this material was not subject to judicial notice because the officer had made inconsistent statements during the call and "reasonable people could debate what exactly this conference call disclosed." *Id.*

at 1000. Here, Defendants have not disputed whether Ms. Yaccarino spoke accurately or whether she meant what she said.

### III. Ms. Yaccarino's Statement Is Probative of Mootness.

#### A. Defendants Again Misstate the Burden of Proof on This Issue.

Defendants repeatedly argue that Plaintiffs have failed to establish that Defendants' challenged practices are likely to reoccur and thus failed to dispute mootness. *See* Response at 1 ("Mere speculation of the theoretical possibility of a recurring injury is not enough to prevent mootness."); *id*. at 7 ("Such speculation cannot preserve jurisdiction over [Plaintiffs'] challenge to [Twitter's] enforcement actions …."); *id*. at 8 ("Plaintiffs' argument is entirely speculative and insufficient to preserve a live controversy."). But it is Defendants' "formidable burden" to prove that the conduct will *not* reoccur, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000), not Plaintiffs' burden to prove the opposite. As explained in *Rosemere Neighborhood Ass'n v. U.S. Env. Protection Agency*, 581 F.3d 1169 (9th Cir. 2009), a defendant's argument that the prospect of reoccurrence is "speculative"

> impermissibly shifts the burden to [plaintiff] to defeat mootness. As we have stated, it is the EPA that bears the "heavy burden" in this case. The EPA cannot meet this burden solely by claiming that [plaintiff] has not done enough to show likelihood of [reoccurrence]. Rather, the EPA must demonstrate why repetition of the wrongful conduct is highly unlikely. … The EPA's attempt to reverse this burden is insufficient to show mootness.

*Id*. at 1173-74 (citations omitted).

5

### B. Ms. Yaccarino's Statement That Twitter Will Censor "Lawful but Awful" Content Undermines Defendants' Assertion of Mootness.

To recap the legal standard against which Defendants' Suggestion of Mootness must be measured, the mere fact that a defendant may have voluntarily ceased the challenged conduct does not render a case moot because "a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). Cessation of the disputed activity need only be "somewhat related to the pending litigation for the voluntary cessation exception to apply." *Porter v. Clarke*, 852 F.3d 358, 364 n.3 (4th Cir. 2017). The fact that, as here, a defendant made the change after a complaint challenging the conduct was filed "strongly indicates that the change was at least somewhat related to the … pending lawsuit." *Wall v. Wade*, 741 F.3d 492, 498 n.8 (4th Cir. 2014).

Ms. Yaccarino's announcement that Defendants now utilize a "lawful but awful" content moderation standard not only is directly relevant to the mootness inquiry but heightens the risk that the challenged practices are likely to reoccur, for several reasons.

*First*, the new policy is entirely subjective, and all too easily invoked against those with whom left-leaning public officials and Twitter employees disagree. It is beyond cavil that "awful" is the least pejorative appellation applied to Plaintiff

6

Trump and his "basket of deplorables" supporters by those on the Democratic side of the body politic.[3] Twitter's new standard gives conservative speakers no protection against politically motivated censorship.

*Second*, the fact that Defendants' content moderation policies continue to evolve in an ever-squishier direction makes it impossible to repose any confidence in Defendants' assertion that Elon Musk's acquisition "changed the strategic vision and trajectory of Twitter," Response at 5, in such a way that this Court should ignore concerns about future First Amendment violations and dismiss Plaintiffs' claims as moot. Today it's "lawful but awful"; tomorrow, perhaps, "insufficiently woke." Defendants' unsupported assurances that Twitter has changed its ways for the better are very far from the "unconditional and irrevocable" agreement

---

[3] *See, e.g.*, *Read the worst things Manhattanites said about Trump in jury selection for the Trump Org tax-fraud trial*, BUSINESS INSIDER (Oct. 29, 2022) (potential jurors described the former President as a "racist," "scam artist," "danger to our society," and "fundamentally guided by a diagnosable personality disorder"), https://www.businessinsider.nl/read-the-worst-things-manhattanites-said-about-trump-in-jury-selection-for-the-trump-org-tax-fraud-trial/; *Donald Trump, a Retrospective: A Look Back at the 1,462 Worst Days in Presidential History*, VANITY FAIR (Jan. 20, 2021) ("[T]he president of the United States is a crook, or trying to get [people] killed, or a friend of neo-Nazis, or an ugly racist, or paying off porn stars, or putting his idiot children in charge of national emergencies …."), https://www.vanityfair.com/news/2021/01/donald-trump-worst-president-ever; *Against Donald Trump*, THE ATLANTIC (Nov. 2016) ("He is a demagogue, a xenophobe, a sexist, a know-nothing, and a liar."), https://www.theatlantic.com/magazine/archive/2016/11/the-case-for-hillary-clinton-and-against-donald-trump/501161/.

precluding Defendants from returning to the challenged conduct that is needed to create mootness. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013).

*Third*, the "lawful but awful" rubric invites government actors to continue pressuring Twitter to take down or cabin disfavored content, especially where these officials' political interests are implicated. Defendants' censorship of the Hunter Biden laptop story on the eve of the 2020 election is one such proven instance of government-driven political censorship under Twitter's former content moderation policy. *See* Appellants' Response in Opposition to Defendants' Suggestion of Mootness at 15 (Dkt. 90). Contravening Defendants' assertion that the new policy is "more nuanced and more fair," Response at 8, nothing has changed under the new regime. Only one week before Plaintiffs filed this brief, Twitter locked the account of the WASHINGTON FREE BEACON, an established news organization, for reporting that Susanna Gibson, a candidate for a Virginia legislative seat that could determine which party controls the state's House of Delegates, regularly performed live sex acts for pay on a pornographic website.[4] Even though voters have a powerful interest in vetting political candidates before casting their ballots, Defendants apparently deemed the risk of losing the legislature too "awful" to allow the story to be reported. And, while no proof that

---

[4] *That Old Twitter Feeling*, THE WASHINGTON FREE BEACON (Sept. 14, 2023), https://www.powerlineblog.com/archives/2023/09/that-old-twitter-feeling.php.

8

Democratic officials incited this shocking instance of censorship has yet emerged, that inference would not be unwarranted, given the political interests at stake and the fact that the current administration continues to pursue "the most massive system of censorship in the nation's history."[5]  As the Fifth Circuit noted in its recent opinion,

> [T]here is no evidence to suggest that the government's meddling [in SMP content censorship] has ceased.  To the contrary, the officials' attorney conceded at oral argument that they continue to be in regular contact with social-media platforms concerning content-moderation issues today.

*Missouri et al. v. Biden*, 2023 WL 5821788, at *8.

*Finally*, that certain Plaintiffs' Twitter accounts have been reinstated does nothing to allay these concerns because they remain vulnerable to censorship at the whim and caprice of the government-Twitter enterprise.  The Executive Branch and law enforcement officials who drove the censorship campaign made the identical argument in *Missouri v. Biden*.  *Id.*, at *9.  The Court had no difficulty rejecting it, saying:

> If the Individual Plaintiffs did not currently have active social-media accounts, then there would be no risk of future government-coerced censorship of their speech on those accounts.  **But since the Individual Plaintiffs continue to be active speakers on social media, they continue to face the very real and imminent threat of government-coerced social-media censorship.**

---

[5] Phillip Hamburger, *Is Social-Media Censorship a Crime?*, WALL ST. J., Dec. 14, 2022, at A17.

*Id*. (emphasis added). The same is true here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Second Supplemental Motion for Judicial Notice be granted.

Date: September 22, 2023

Law Office of Andrei D. Popovici, P.C.

*s/ Marie L. Fiala*
Marie L. Fiala
*Attorneys for Appellants*
*Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root*

JOHN P. COALE
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

RICHARD POLK LAWSON
GARDNER BREWER HUDSON
400 North Ashley Drive
Suite 1100
Tampa, FL 33602
Telephone: (813) 221-9600
Facsimile: (813) 221-9611
Email: rlawson@gardnerbrewer.com

MICHAEL J. JONES
RYAN TOUGIAS
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

ALEX KOZINSKI
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Email: alex@kozinski.com

FRANK C. DUDENHEFER, JR.
THE DUDENHEFER LAW FIRM L.L.C.
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

JOHN Q. KELLY
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Telephone: (203) 896-4504
Email: jqkelly@fercolaw.com

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Certificate of Compliance

**9th Cir. Case Number(s): No. 22-15961**

I am the attorney for Plaintiffs-Appellants Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root.

**This motion contains 2,101 words, and includes 0 words manually counted in any visual images.** This motion is within the ten-page maximum, excluding the items exempted by Fed. R. App. P. 32(f). The motion's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Fed. R. App. P. 27(d)(2) and the page limit of Cir. R. 27-1(1).

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Marie L. Fiala*     **Date:** September 22, 2023